Debra I. Grassgreen (CA Bar No. 169978)
Maxim B. Litvak (CA Bar No. 215852)
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, California 94111-4500
Telephone: 415/263-7000
Facsimile: 415/263-7010
E-mail: dgrassgreen@pszjlaw.com
         mlitvak@pszjlaw.com

[Proposed] Attorneys for Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| In re:<br>**DOYLE D. HEATON and MARY K. HEATON,**<br>           Debtors. | Case No.: 10-40297<br>Chapter 11<br>**APPLICATION TO EMPLOY HUNTLEY, MULLANEY, SPARGO & SULLIVAN, LLC AS FINANCIAL ADVISORS TO THE DEBTORS**<br>[No Hearing Required] |

Doyle D. Heaton and Mary K. Heaton, a married couple (together, the "Debtors"), submit this application (the "Application") to employ Huntley, Mullaney, Spargo & Sullivan, LLC (the "HMSS") as the Debtors' financial advisors, effective as of the commencement of this case. HMSS is located at 3001 Douglas Boulevard, Suite 330, Roseville, California 95661. This Application is brought pursuant to sections 327(a), 328 and 330 of title 11 of the United States Code (the "Bankruptcy Code"), and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

# I.

# STATEMENT OF FACTS

A. **Description and History of the Debtors**

On January 11, 2010 (the "Petition Date"), the Debtors filed a joint voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Since the Petition Date, the Debtors have continued in possession of their properties and the management of their assets as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

Doyle Heaton has been involved in the development of residential housing in the San Francisco Bay Area for more than 40 years. At various times, he has been Chairman of the Building Industry Association of Northern California (the "BIA") and Chairman of the BIA Builders for Affordable Housing Committee. In 2001, Mr. Heaton was inducted into the Builders Hall of Fame by the BIA. Mr. Heaton is actively involved in a number of civic organizations, including the local Chamber of Commerce and the De La Salle High School Board of Regents.

Mr. Heaton founded Delco Builders and Developers, Inc. ("Delco Builders") as a California corporation in 1977 to develop land, build homes and market single-family residential developments located in Northern California. During the past 15 years, the Delco Builders' family of companies has developed or built over 1,000 new homes and residential lots throughout the Bay Area. Delco Builders is not a debtor in these proceedings.

Mary Heaton is a part-time aerobics instructor and occasionally works in an antiques market.

B. **Events Leading to Chapter 11 Filing**

1. **Downturn in the Homebuilding Industry**

The homebuilding industry in the United States has experienced a significant and sustained decrease in demand and an oversupply of new and existing homes available for sale. The negative impact of these demand and supply trends was compounded by recent difficulties in the mortgage and overall credit markets and the rising trend of mortgage defaults, especially in the subprime market. Those difficulties have harmed developers and homebuilders by further increasing the supply of housing inventory, negatively impacting pricing conditions, decreasing the demand for homes, and dampening customer confidence. Beginning around mid-2007, the majority of

residential homebuilders nationwide began to experience a significant decrease in their home sales and operating results. The market deterioration has been particularly sudden and steep in California.

### 2. Negative Impact on Delco Builders

Delco Builders has been adversely affected by the severe downturn in the residential housing market. The over-supply of new residential development, coupled with the national "sub-prime" problem, created a depressed market for residential housing assets. As a result, Delco Builders' core business of building and selling new homes became highly unprofitable. Access to traditional debt and equity markets for builders and developers also disappeared. This situation has left Delco Builders with no viable market to sell its considerable land inventory in order to generate cash flow and repay lenders, and no opportunities to refinance its existing loans to extend maturity dates and replenish interest reserves.

Mr. Heaton has used his personal resources to keep Delco Builders and its development projects afloat over the past few years and he now has limited liquidity. Mr. Heaton estimates that, as of December 31, 2007, his net worth was approximately $41 million. One year later, Mr. Heaton's December 31, 2008 statement of financial condition reflects that his net worth was approximately $11 million (based on a settlement agreement with Wells Fargo Bank that was then pending and actually executed in April 2009). As of the Petition Date, Mr. Heaton estimates that he has substantial negative net worth.

Given the precarious financial condition of Delco Builders, Mr. Heaton (along with other investors) created a new company, DRG Builders, Inc. ("DRG"), in November 2008 to manage various ongoing real estate developments. DRG is not a debtor in these proceedings.

### 3. The Debtors' Financial Status

Mr. Heaton has personally guaranteed a number of the loans owing on real estate projects owned through affiliated non-debtor development entities. A number of these loans are currently in default and Mr. Heaton's guarantee obligations thereunder have been triggered. The Debtors also have other outstanding borrowings that may be due and owing to third party creditors. In sum, the Debtors estimate that their outstanding debt could potentially total within the range of $100 million to $125 million. However, the Debtors expect this amount to be significantly reduced by the

proceeds of real estate assets owned by affiliated non-debtor entities that are the primary obligors on the Debtors' guarantee obligations. The Debtors' largest creditor by far is Wells Fargo Bank with a potential claim approaching $64 million.

The Debtors have limited liquid assets to satisfy outstanding claims. As of the Petition Date, the Debtors, either directly or through various self-settled trusts, have approximately $1.4 million in cash.[1] The Debtors also have interests in various real estate development entities and single-family residential rental properties. The Debtors believe that most of these interests are "underwater" in that the amount of the outstanding secured debt exceeds the present value of these assets. One exception is Mr. Heaton's interest in an entity called Clover DHDA, LLC, in which Mr. Heaton has a 29.958% membership interest. The Debtors expect that this interest could generate up to $4.0 million in distributions over a period of two to three years.

**4. <u>Attempts to Reorganize</u>**

The Debtors have been proactive over the past 15 months in an effort to reorganize outside of bankruptcy with the support of their creditor constituents. The Debtors have taken major steps to: (1) downsize and reduce overhead at Delco Builders and DRG, (2) renegotiate debt with lenders and vendors, and (3) develop a revised marketing program to sell standing inventory of completed homes.

Over the past twelve months, Delco Builders has sold nearly 40 of its 50 inventory homes and repaid a significant amount of secured debt on its active development projects. In addition, as mentioned above, Mr. Heaton entered into a settlement agreement with Wells Fargo Bank in April 2009 to address his exposure on various personal guarantees. By May 2009, Mr. Heaton had successfully restructured and modified over $100 million of secured and unsecured loans (including his debts to Wells Fargo Bank).

However, given the continuing decline of the California real estate market, the Debtors' equity deficiencies in various real estate projects increased significantly. In October 2009, the Debtors developed a collateral and asset liquidation plan in an effort to maximize recoveries for

---

[1] The trusts mentioned above and the assets of such trusts do not constitute property of the Debtors' estate, but are noted here for disclosure purposes only.

creditors informally outside of bankruptcy. The vast majority of the Debtors' creditors were in favor of the plan, but a few creditors were unwilling to participate and elected to pursue the litigation route.

### 5. The Debtors' Bankruptcy Filing

The Debtors' bankruptcy filing was necessitated by the filing of four lawsuits against Mr. Heaton, concurrent with an effort to attach his personal assets.

The Debtors commenced this bankruptcy case in order to prevent and avoid the potential attachment of their property to the detriment of the Debtors and their creditors, and to pursue a reorganization strategy that would maximize recoveries for all constituents.

The Debtors intend to file a plan of reorganization shortly that they expect will have the support of Wells Fargo Bank and the majority of their creditors.

## II.

## THE COURT SHOULD AUTHORIZE THE DEBTORS TO RETAIN HMSS AS FINANCIAL ADVISORS

### A. HMSS is Well-Qualified to Represent the Debtors

The Debtors seek authority to retain HMSS, at the expense of the estate, to provide the financial advisory services that will be required in this chapter 11 case. The Debtors desire to retain HMSS because of its expertise in advising clients on financial matters associated with Chapter 11. HMSS has served as financial advisors to, among others, Loews Cineplex, Garden Ridge, Buffets, and Fresh Choice. HMSS provides a wide range of services, including financial analysis of alternatives, pre-packaged bankruptcy filing, lease and debt restructuring, 502(b)(6) and other claims negotiations, and liquidation analysis. A copy of the qualifications of Steven T. Huntley of HMSS is attached hereto as **Exhibit A**. HMSS' depth of experience makes it qualified to represent the Debtors. Therefore, the Debtors believe that the retention of HMSS as financial advisors is in the best interests of their bankruptcy estate.

### B. The Services to be Provided by HMSS for the Debtors

The terms of HMSS' engagement are set forth in its current engagement letter with the Debtors attached hereto as **Exhibit B**. Subject to further order of this Court, and without being

exhaustive, HMSS proposes to render financial advisory services to the Debtors, including, but not limited to, the following:

 (a) Assist in identifying and evaluating candidates for a potential sale of selected assets;

 (b) Provide financial advice and participate in meetings or negotiations with creditors, stakeholders and other appropriate parties in connections with the bankruptcy filing relative to Client's real property assets;

 (c) Provide advice on potential sales or other disposition of Client's real property assets or business locations;

 (d) Assist in communication and negotiations with Client constituents, including creditors, employees, vendors, shareholders and interested parties in connection with a fee sale plan, if any;

 (e) Provide general fee sale advice.

All services performed by HMSS will be at the Debtors' direction so as to avoid duplicative efforts among the professionals retained in this case.

**C. Compensation of HMSS by the Debtors and Other Disclosures**

The terms of HMSS's engagement are set forth in detail in the Engagement Letter. As set forth therein, HMSS will charge the estate a flat fee of $15,000 per month (the "Monthly Fee") for its services. The Monthly Fee will be payable by the Debtors in advance on the first of each month. HMSS also will be reimbursed for its reasonable out-of-pocket expenses incurred in connection with this assignment, such as travel, lodging, duplicating, computer research, messenger and telephone charges.

In addition, HMSS will be entitled to receive an incentive fee (the "Incentive Fee") payable by the following non-debtor entities controlled by the Debtors: Corona Road Associates, LLC and DG&H Developers, LLC (together, the "Client Entities").[2] The Incentive Fee is consideration for HMSS' marketing and sale efforts with respect to various real estate assets owned by the Client

---

[2] Given that the Incentive Fee is payable by the non-debtor Client Entities, approval of the Court is not required. Out of an abundance of caution and in the interests of full disclosure, however, the Incentive Fee is described herein and the Debtors request authority to cause the Client Entities to pay the Incentive Fee to HMSS.

Entities, and will be payable only from the proceeds of sale. The Incentive Fee will be earned as follows:

(1) **Fee Property Incentive Fee With Broker Involvement:** The Incentive Fee for the sale of the Client Entities' fee-owned properties ("Fee Sales") where multiple brokers assisted in the transaction will be 7% of the contract price actually paid to the Client Entities (the "Sale Price"). In such case the Incentive Fee will be split among HMSS, the listing broker and buyer's broker and payable to HMSS as follows: 3% of the Sales Price to HMSS unless the Client Entities are obligated to pay the buyer's broker a fee, in which case the Incentive Fee payable to HMSS shall be 1% of the Sales Price. HMSS will co-operate with brokers by sharing the Incentive Fee with such brokers in accordance with any listing agreement in, or put in place, with respect to such fee-owned property.

(2) **Fee Property Incentive Fee Without Broker Involvement:** The Incentive Fee for Fee Sales where a broker did not assist in the transaction will be 5% of the Sale Price.

The Incentive Fee will be earned only if HMSS contributed to or participated in substantive negotiations in connection with any sale of the Client Entities' assets. HMSS will exclusively represent the Client Entities in such matters, and HMSS may enlist the assistance of third parties or permit the participation of third parties in efforts to improve negotiations.

Pursuant to section 328(a) of the Bankruptcy Code, the Debtors request authority to pay HMSS its Monthly Fee, and to cause the Client Entities to pay the Incentive Fee, without the need for filing or approval of interim fee applications, provided that HMSS' fees and expenses payable by the Debtors (including those paid during the course of the case) will be subject to final Court approval subject to section 328(a). No further approval will be required of the Incentive Fee. HMSS shall maintain time records of its activities on behalf of the Debtors in the case.

Section 328(a) of the Bankruptcy Code specifically contemplates professional engagements on a fixed fee or contingency fee basis as highlighted below:

> The trustee, or a committee appointed under § 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under §§ 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, **on a fixed or percentage fee basis, or on a contingent fee basis**.

11 U.S.C. § 328(a) (emphasis added).

Section 328(a) of the Bankruptcy Code further contemplates that the court may only alter the terms of a professional's engagement after the conclusion of the engagement "if such terms and

conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." Here, HMSS' final fee application will be approved unless it fails to meet this standard.

In addition to the compensation structure described above, the Engagement Letter provides that the Debtors will indemnify HMSS for certain losses, claims or damages arising from this engagement, except for such losses, claims or damages that arise out of the gross negligence or willful misconduct of HMSS. This provision is customary in HMSS' engagements involving restructurings and financial advisory services, both in and out of chapter 11, and is a standard provision used in the industry.

HMSS is currently holding a prepetition retainer in the amount of $60,000 for services rendered and/or to be rendered in connection with this case.

HMSS was originally retained by the Debtors on August 22, 2008. For the time period prior to the Petition Date, HMSS was paid $766,850.01 by the Debtors or their affiliated companies for financial advisory services. There were no amounts owed to HMSS as of the Petition Date.

There are no arrangements between HMSS and any other entity for the sharing of compensation received or to be received in connection with this case, except insofar as such compensation may be shared among the employees or principals of HMSS.

To the best of the Debtors' knowledge, and based upon and except as set forth in the *Declaration of Steven T. Huntley in Support of Application to Employ Huntley, Mullaney, Spargo & Sullivan, LLC as Financial Advisors to the Debtor* (the "Huntley Declaration"), filed concurrently herewith, neither HMSS, nor any of its employees or principals has any connection with the Debtors, their creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, any person employed in the office of the United States Trustee, or any insider of the Debtors. In addition, HMSS does not employ any person that is related to a judge of this Court or the United States Trustee for Region 17.

To the best of the Debtors' knowledge and based on the Grassgreen Declaration, neither HMSS, nor any of its employees or principals represent any interest adverse to the Debtors or the estate, except as described in the Huntley Declaration.

1     To the best of the Debtors' knowledge and based on the Huntley Declaration, HMSS is a disinterested person under applicable sections of the Bankruptcy Code.

**WHEREFORE**, the Debtors respectfully request that this Court approve the employment of HMSS as their financial advisors, effective as of the Petition Date, under sections 327(a) and 328(a) of the Bankruptcy Code to render the services described above and with compensation to be paid in accordance with Bankruptcy Code section 328 as an expense of administration pursuant to sections 507(a) and 503(b) of the Bankruptcy Code.

[signature page follows]

Dated: January 12, 2010

By  /s/ Doyle D. Heaton
    Doyle D. Heaton

Dated: January 12, 2010

By  /s/ Mary K. Heaton
    Mary K. Heaton

Respectfully submitted by:

PACHULSKI STANG ZIEHL & JONES LLP

By  /s/ Maxim B. Litvak
    Debra I. Grassgreen
    Maxim B. Litvak
    [Proposed] Attorneys for Debtors
    and Debtors in Possession