# EXHIBIT B



**Huntley, Mullaney,
Spargo & Sullivan, LLC**

Financial Restructuring

3001 Douglas Blvd., Suite 330
Roseville, California 95661
Tel: 916.787.2020
Fax: 916.787.2010

CONFIDENTIAL

January 8, 2010

Mr. Doyle Heaton
3480 Buskirk Avenue, Suite 260
Pleasant Hill, CA 94523

    Re:    **Financial Advisory Services**

Dear Doyle:

Huntley, Mullaney, Spargo & Sullivan, LLC, a California Limited Liability Company, ("HMS") would be pleased to assist Doyle Heaton ("Client" or "Debtor") by rendering financial and real estate advisory services in connection with the planned Chapter 11 bankruptcy proceeding. In addition, HMS will assist the following entities controlled by Client in the liquidation of their assets: Corona Road Associates, LLC and DG&H Developers, LLC (together, the "Client Entities").

It is our understanding that Client would like HMS to perform, at the Client's sole and exclusive direction, some or all of the following services:

- Assist in identifying and evaluating candidates for a potential sale of selected assets;
- Provide financial advice and participate in meetings or negotiations with creditors, stakeholders and other appropriate parties in connections with the bankruptcy filing relative to Client's real property assets;
- Provide advice on potential sales or other disposition of Client's real property assets or business locations;
- Assist in communication and negotiations with Client constituents, including creditors, employees, vendors, shareholders and interested parties in connection with a fee sale plan, if any;
- Provide general fee sale advice.

In performing our services pursuant to this Agreement, HMS is not assuming any responsibility for Client's decision to pursue (or not to pursue) any particular business strategy or to affect (or not to affect) any particular transaction.

**ENGAGEMENT TERMS AND CONDITIONS**

1. **Monthly Fee** – Our fees consist of Monthly Fees payable by Client and Incentive Fees payable by the Client Entities. The Monthly Fee for this engagement is $15,000. A one-time retailer fee of $60,000 will be due and payable on the date the engagement begins.

   The Monthly Fee is due and payable, in advance, on the first day of each month. In the event of a partial month during the term of this letter agreement, the Monthly Fee will be prorated accordingly.

   In addition to the Monthly Fee, HMS will be paid an Incentive Fee by the Client Entities as described in Section 2 below.

2. **Incentive Fee**

   a. **Incentive Fee for Marketing and Selling American Way and Corona Road Fee-owned Properties (i.e. 100 and 300 American Way, Windsor, CA and 470 and 498 Corona Road, Petaluma, CA)**

      (1) **Fee Property Incentive Fee With Broker Involvement:** The Incentive Fee for the sale of the Client Entities' fee-owned properties ("Fee Sales") in the case where multiple brokers assisted in the transaction will be 7% of the contract price actually paid to the Client Entities (the "Sale Price"). In such case the Incentive Fee will be split among HMS, the listing broker and buyer's broker and payable to HMS as follows: 3% of the Sales Price to HMS unless the Client Entities are obligated to pay the buyer's broker a fee, in which case the Incentive Fee payable to HMS shall be 1% of the Sales Price. HMS will co-operate with brokers by sharing the Incentive Fee with such brokers in accordance with any listing agreement in, or put in place, with respect to such fee-owned property.

      (2) **Fee Property Incentive Fee Without Broker Involvement:** The Incentive Fee for Fee Sales in the case where a broker did not assist in the transaction will be 5% of the Sale Price.

      The Incentive Fee will be deemed earned during the term of this Agreement only if HMS contributed to or participated in substantive negotiations. HMS will exclusively represent the Client Entities in the above matters, and HMS may enlist the assistance of third parties or permit the participation of third parties in efforts to improve negotiations (e.g., appraisers); provided, however, that the Client Entities must approve in advance and in writing the retention of any third parties that the Client Entities will be obligated to pay for services and provided further that to the extent any documentation from such parties is necessary to secure their services, including in connection with a Chapter 11 bankruptcy proceeding, HMS

shall assist in procuring such documentation. The use or participation of third parties or members of the Client Entities' management team or management from its affiliates will not be grounds to reduce or disallow part or all of HMS's Incentive Fee. The Client Entities and HMS specifically agree that no Incentive Fee is earned or payable unless and until the transaction closes. The Client Entities agree not to terminate this Agreement to avoid paying Incentive Fees that may be earned or about to be earned by HMS.

HMS will be entitled to any Incentive Fees that would result from any fee sales by the Client Entities occurring within six (6) months following the termination or expiration of this Agreement (other than termination as a result of HMS's default), provided the purchaser was a party with whom HMS had had substantive negotiations involving the fee-owned property prior to the termination of this Agreement, as disclosed in a written schedule to be provided to the Client Entities by HMS within 10 days after the termination of this Agreement (which list may in no event exceed 10 prospective purchasers). The Client Entities may require, as a precondition to making payment to HMS for transactions within the six (6) month period following termination, that HMS provide reasonable evidence, beyond the aforementioned written schedule, that establishes that substantive negotiations took place with the purchaser prior to the termination of this Agreement.

3. **HMS' Responsibilities** - Subject to Client's sole and exclusive direction, HMS' responsibilities will consist of the following:

   a. Review pertinent documents and consult with Client and their counsel as appropriate;

   b. Assist Client in valuing assets;

   c. Develop and implement a marketing program;

   d. Communicate with potential buyers, replacement tenants, brokers, investors, landlords, etc;

   e. Negotiate with and solicit offers from prospective purchasers;

   f. Endeavor to locate additional parties who may have an interest in purchasing the properties.

   g. Attend any auctions and Court hearings with respect to the sale of the properties.

4. **Expenses** – Subject to the terms hereof, Client authorizes HMS to incur expenses reasonably necessary to the proper handling of Client's representation, provided that Client must approve any individual item or expense in excess of five hundred ($500)

dollars prior to expenditure. HMS's expenses are billed to Client, in arrears, on a monthly basis. HMS will provide Client with whatever documentation Client reasonably deems necessary to verify the costs and expenses incurred by HMS. See Exhibit 1 for a schedule of expenses.

5. **Term** – The term of this Agreement is for 90 days from and after the date of full execution, and will continue on a month-to-month basis thereafter unless 14 days' written termination notice is given to HMS by Client.

6. **Confidentiality Agreements** - HMS acknowledges and agrees that HMS and each of HMS's employees performing services under this Agreement will adhere to the terms of the Confidentiality Agreement previously executed by HMS.

7. **Dispute Resolutions** – Any and all issues or disputes which arise from this Agreement shall be subject to the exclusive jurisdiction of the Bankruptcy Court, with venue vesting in that district before which debtor's proceeding is being heard.

8. **Indemnification** – HMS agrees to indemnify, defend, and hold Client harmless from and against any and all liability, loss, cost, damage or expense (including reasonable attorneys' fees) arising out of HMS's breach of this Agreement or any of its obligations, representations or warranties contained herein.

   Client agrees to indemnify, defend and hold HMS harmless from and against any and all liability, loss, cost, damage or expense (including reasonable attorneys' fees) in connection with any services properly performed by HMS hereunder; provided, however, that such indemnification shall not extend to claims, liability, loss, costs or expenses resulting from the gross negligence or willful misconduct of HMS or its employees.

9. **General Provisions** -

   a. This Agreement is effective upon mutual execution and shall be binding upon, and shall inure to the benefit of Client and HMS. In the event the Client files a Chapter 11 bankruptcy case, Client shall use its best efforts to obtain Court approval of this Agreement.

   b. Notwithstanding anything contained herein to the contrary, HMS shall only be entitled to payment of the Incentive Fee if the Client Entities have accepted and agreed to a proposed fee sale transaction, which shall be at the Client Entities' sole and exclusive discretion. HMS shall provide a good faith estimate of any fees to be earned relating to a proposed transaction at the time HMS presents the proposed transaction to the Client Entities.

   c. HMS agrees that the Client shall have and retain throughout the term of this Agreement, the sole and exclusive discretion and authority to (i) offer, accept

Mr. Doyle Heaton
January 8, 2010
Page 5

    and/or reject the terms and conditions of any fee sale, (ii) offer, accept and/or reject the terms and conditions of any agreement regarding the disposition of a fee-owned property, and (iii) withdraw any fee-owned property from HMS' services and/or marketing efforts under this Agreement.

d. In the event a bankruptcy proceeding is converted from Chapter 11 to Chapter 7, this Agreement shall remain in full force and effect.

e. This Agreement and any Confidentiality Agreement between HMS or its employees and Client sets forth the entire intent and understanding of the parties hereto on the subject matter hereof, and supersedes any other oral or written agreements or understandings between HMS and Client. This Agreement, and each section hereof, may be amended only in writing, signed by the party against whom enforcement of any such amended provision is sought.

f. This Agreement may be executed in several counterparts; each such counterpart shall be considered as an original agreement and all such executed counterparts shall constitute one Agreement.

g. Any notice, request, instruction, or other document required to be given under this Agreement by either party to the other will be in writing and delivered in person or by courier, or by facsimile transmission or mailed by certified mail, postage prepaid, return receipt requested (such mailed notice to be effective on the third business day after mailing) as follows:

    To Client:

    Mr. Doyle Heaton
    3480 Buskirk Avenue, Suite 260
    Pleasant Hill, CA 94523

    To HMS:

    Steve Huntley
    Huntley, Mullaney, Spargo & Sullivan, LLC
    3001 Douglas Boulevard, Suite 330
    Roseville, CA 95661

h. This Agreement will be governed by and interpreted in accordance with the laws of the State of California.

i. This Agreement supersedes that certain prior agreement dated August 22, 2008 titled Retainer Agreement between Huntley, Mullaney, Spargo & Sullivan, LLC, a California limited liability company ("HMS") and Delco Builders & Developers, Inc. its affiliated entities, and Doyle Heaton, an individual.

Mr. Doyle Heaton
January 8, 2010
Page 6

Please indicate Client's approval of the terms, conditions and limitations of our proposed representation by executing the Agreement below.

Sincerely,

HUNTLEY, MULLANEY, SPARGO & SULLIVAN, LLC
a CALIFORNIA LIMITED LIABILITY COMPANY

By: _____
Steven T. Huntley

Agreed and Accepted:

DOYLE HEATON

By: _____
DOYLE D. HEATON
Its: (Individual)
Date: 1/8/10

CORONA ROAD ASSOCIATES, LLC, a California Limited Liability Company:

By: Delco Builders and Developers, Inc.

_____
DOYLE D. HEATON, Member/President
Its: Manager
Date: 1/8/10

DG&H DEVELOPERS, LLC, a California Limited Liability Company:

By: Delco Builders and Developers, Inc.

_____
DOYLE D. HEATON, Member/President
Its: Manager
Date: 1/8/10

# EXHIBIT 1

## DOYLE HEATON AND MARY HEATON

## SCHEDULE OF EXPENSES

| | |
|---|---|
| Parking and Validations | At Cost |
| Travel – Airfare and Car Rental | At Cost (Coach Airfare and Mid-Sized Car) |
| Travel - Lodging and Meals | At Cost |
| Special Mail Handling (e.g., Certified, Overnight) | At Cost |
| Messenger Service | At Cost |
| Secretarial/Administrative Support | $35 Per Hour |
| Administrative Costs (e.g., Photocopying) | At Cost |
| Mileage | $0.485 Per Mile |