Debra I. Grassgreen (CA Bar No. 169978)
Maxim B. Litvak (CA Bar No. 215852)
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, California 94111-4500
Telephone: 415/263-7000
Facsimile: 415/263-7010
E-mail: dgrassgreen@pszjlaw.com
mlitvak@pszjlaw.com

[Proposed] Attorneys for Debtors and Debtors in Possession

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| In re:<br>**DOYLE D. HEATON and**<br>**MARY K. HEATON,**<br>　　　　　　Debtors. | Case No.: 10-40297<br>Chapter 11<br>**DECLARATION OF STEVEN T. HUNTLEY IN SUPPORT OF APPLICATION TO EMPLOY HUNTLEY, MULLANEY, SPARGO & SULLIVAN, LLC AS FINANCIAL ADVISORS TO THE DEBTORS**<br>[No Hearing Required] |

I, Steven T. Huntley, declare and state as follows:

1. I am a member at Huntley, Mullaney, Spargo & Sullivan, LLC ("HMSS"). HMSS currently maintains an office at 3001 Douglas Boulevard, Suite 330, Roseville, California 95661. I have been the HMSS representative principally responsible for advising the Debtors since 2008.

2. I make this declaration in support of the *Application to Employ Huntley, Mullaney, Spargo & Sullivan, LLC as Financial Advisors to the Debtors* (the "Application"). The Application seeks entry of an order authorizing the above-captioned debtors (the "Debtors") to retain and employ HMSS in this chapter 11 case, pursuant to the terms and conditions set forth in that certain engagement letter dated as of January 8, 2010 (the "Engagement Letter"), entered into by HMSS and the Debtors, a copy of which is attached to the Application as Exhibit B. Except as otherwise indicated, I have personal knowledge of the matters set forth herein and, if called as a witness, would

testify competently thereto.

3. HMSS is experienced in advising clients on financial matters associated with Chapter 11. HMSS has served as financial advisors to, among others, Loews Cineplex, Garden Ridge, Buffets, and Fresh Choice. HMSS provides a wide range of services, including financial analysis of alternatives, pre-packaged bankruptcy filing, lease and debt restructuring, 502(b)(6) and other claims negotiations, and liquidation analysis. A copy of my qualifications is attached to the Application as Exhibit A.

4. The terms of HMSS' engagement are set forth in its current engagement letter with the Debtors attached to the Application as Exhibit B. Subject to further order of this Court, and without being exhaustive, HMSS proposes to render financial advisory services to the Debtors, including, but not limited to, the following:

(a) Assist in identifying and evaluating candidates for a potential sale of selected assets;

(b) Provide financial advice and participate in meetings or negotiations with creditors, stakeholders and other appropriate parties in connections with the bankruptcy filing relative to Client's real property assets;

(c) Provide advice on potential sales or other disposition of Client's real property assets or business locations;

(d) Assist in communication and negotiations with Client constituents, including creditors, employees, vendors, shareholders and interested parties in connection with a fee sale plan, if any;

(e) Provide general fee sale advice.

5. All services performed by HMSS will be at the Debtors' direction so as to avoid duplicative efforts among the professionals retained in these cases.

6. The terms of HMSS's engagement are set forth in detail in the Engagement Letter. As set forth therein, HMSS will charge the estate a flat fee of $15,000 per month (the "Monthly Fee") for its services. The Monthly Fee will be payable by the Debtors in advance on the first of each month. HMSS also will be reimbursed for its reasonable out-of-pocket expenses incurred in

connection with this assignment, such as travel, lodging, duplicating, computer research, messenger and telephone charges.

7. In addition, HMSS will be entitled to receive an incentive fee (the "Incentive Fee") payable by the following non-debtor entities controlled by the Debtors: Corona Road Associates, LLC and DG&H Developers, LLC (together, the "Client Entities").[1] The Incentive Fee is consideration for HMSS' marketing and sale efforts with respect to various real estate assets owned by the Client Entities, and will be payable only from the proceeds of sale. The Incentive Fee will be earned as follows:

> (1) **Fee Property Incentive Fee With Broker Involvement:** The Incentive Fee for the sale of the Client Entities' fee-owned properties ("Fee Sales") where multiple brokers assisted in the transaction will be 7% of the contract price actually paid to the Client Entities (the "Sale Price"). In such case the Incentive Fee will be split among HMSS, the listing broker and buyer's broker and payable to HMSS as follows: 3% of the Sales Price to HMSS unless the Client Entities are obligated to pay the buyer's broker a fee, in which case the Incentive Fee payable to HMSS shall be 1% of the Sales Price. HMSS will co-operate with brokers by sharing the Incentive Fee with such brokers in accordance with any listing agreement in, or put in place, with respect to such fee-owned property.
>
> (2) **Fee Property Incentive Fee Without Broker Involvement:** The Incentive Fee for Fee Sales where a broker did not assist in the transaction will be 5% of the Sale Price.

8. The Incentive Fee will be earned only if HMSS contributed to or participated in substantive negotiations in connection with any sale of the Client Entities' assets. HMSS will exclusively represent the Client Entities in such matters, and HMSS may enlist the assistance of third parties or permit the participation of third parties in efforts to improve negotiations.

9. HMSS expects that its Monthly Fee will be paid by the Debtors without the need for filing or approval of interim fee applications, provided that HMSS' fees and expenses payable by the Debtors (including those paid during the course of the case) will be subject to final Court approval subject to section 328(a). No further approval will be required of the Incentive Fee. HMSS shall maintain time records of its activities on behalf of the Debtors in the case.

10. In addition to the compensation structure described above, the Engagement Letter provides that the Debtors will indemnify HMSS for certain losses, claims or damages arising from

---

[1] Given that the Incentive Fee is payable by the non-debtor Client Entities, approval of the Court is not required. Out of an abundance of caution and in the interests of full disclosure, however, the Incentive Fee is described herein and the Debtors request authority to cause the Client Entities to pay the Incentive Fee to HMSS.

this engagement, except for such losses, claims or damages that arise out of the gross negligence or willful misconduct of HMSS. This provision is customary in HMSS's engagements involving restructurings and financial advisory services, both in an out of chapter 11, and is a standard provision used in the industry.

11. HMSS is currently holding a prepetition retainer in the amount of $60,000 for services rendered and/or to be rendered in connection with this case.

12. HMSS was originally retained by the Debtors on August 22, 2008. For the time period prior to the Petition Date, HMSS was paid $766,850.01 by the Debtors or their affiliated companies for financial advisory services. There were no amounts owed to HMSS as of the Petition Date.

13. There are no arrangements between HMSS and any other entity for the sharing of compensation received or to be received in connection with this case, except insofar as such compensation may be shared among the employees or principals of HMSS.

14. HMSS has made the following investigation prior to submitting this verified statement. HMSS has undertaken a thorough review of its computerized database, which contains the names of clients and other parties interested in particular matters. HMSS requires all of its professionals, before accepting the representation of a new client, or the representation of an existing client in a new matter, to perform a conflicts check through HMSS' database and to enter into that database pertinent information regarding new clients or new matters. Thus, a review of the database should reveal any and all actual or potential conflicts of interest with respect to a potential representation.

15. HMSS has run the following parties through its conflict system: (a) the Debtors; (b) the parties set forth in the list of the twenty largest creditors of the Debtors, and (c) parties asserting a lien on assets of the Debtors of which the Debtors and HMSS are aware. HMSS' investigation has not revealed any actual or potential conflicts of interest with respect to HMSS' proposed representation of the Debtors, but reflects the following connections:

    (a) HMSS previously represented Dan Morgan in a dispute with Bank of America unrelated to the Debtors or this bankruptcy case. Mr. Morgan is a principal of CV Anthony, a

creditor of Mr. Heaton.

    (b)    Mr. Heaton is co-owner of certain business entities with Clement Carinalli and/or his wife. Mr. and Mrs. Carinalli are the subject of a pending joint bankruptcy case in Santa Rosa, California. HMSS previously represented Mr. Carinalli prior to the commencement of his bankruptcy case. HMSS will not perform any services for Mr. Heaton in connection with any entities in which Mr. or Mrs. Carinalli assert an interest.

    (c)    Certain creditors in the Debtors' case may have been (and may continue to be) creditors or parties-in-interest in matters unrelated to the Debtors in which HMSS acted (or continues to act) as financial advisor.

16.     HMSS is not a creditor or an insider of the Debtors.

17.     Neither HMSS, nor employee or principal of HMSS, is or was, within two (2) years before the date of the filing of the petitions herein, an employee of the Debtors.

18.     Neither HMSS, nor any employee or principal of HMSS, has an interest materially adverse to the interests of the Debtors, their estate, or of any class of creditors, by reason of any direct or indirect relationship to, connection with, or interest in the Debtors or for any other reason.

19.     To the best of my knowledge, except as disclosed herein, no employee or principal of HMSS has any connection with the Debtors, creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, any person employed in the Office of the United States Trustee, or any insider of the Debtors except as described above.

20.     HMSS does not employ any person that is related to a judge of this Court or the United States Trustee for Region 17.

21.     To the best of my knowledge, after conducting or supervising the investigation described above, I believe that HMSS is eligible for employment by the Debtors pursuant to Bankruptcy Code section 327(a).

1  I declare under penalty of perjury that the foregoing is true and correct.
2  Executed this 12th day of January 2010, at San Ramon, California.

*/s/ Steven T. Huntley*
Steven T. Huntley