1  Scott M. Phillips  [#113276]
   Steven A. Simontacchi [#138948]
2  PHILLIPS, DOWNS & SIMONTACCHI LLP
   55 Shaver Street, Suite 330
3  San Rafael, California  94901
   Telephone:  (415) 453-9999
4  Facsimile:  (415) 453-6999

5  Attorneys for Plaintiff
   CV ANTHONY II, LLC,
6  a California limited liability company

7  **PURSUANT TO CCP ¶482.050(a), PLAINTIFF REQUESTS THAT THE FILING OF**
   **THIS ACTION NOT BE MADE PUBLIC DURING THE PERIOD SPECIFIED IN CCP**
8  **§482.050(b)**

9

10                    SUPERIOR COURT OF CALIFORNIA

11                          COUNTY OF MARIN

12  CV ANTHONY II, LLC, a California limited )  Case No.:  C I V O9 5 3 6 7
    liability company,                       )
13                                           )  **COMPLAINT FOR DAMAGES FOR**
                                             )  **BREACH OF CONTRACT, FRAUD IN**
14              Plaintiff,                    )  **THE INDUCEMENT, RESCISSION,**
                                             )  **INTENTIONAL MISRESENTATION,**
15        vs.                                 )  **BREACH OF FIDUCIARY DUTY,**
                                             )  **CONVERSION, CONSTRUCTIVE**
16                                           )  **TRUST, AND ACCOUNTING**
    DOYLE HEATON, and DOES 1-50,             )
17  inclusive,                               )
                                             )
18              Defendants.                  )
                                             )
19                                           )

20

21        Plaintiff CV ANTHONY II, LLC, a California limited liability company, alleges as

22  follows:

23                        **INTRODUCTORY ALLEGATIONS**

24        1.      Plaintiff CV ANTHONY II, LLC (hereinafter "plaintiff") is, and at all times

25  relevant was, a limited liability company organized and existing in the State of California, with

26  their principal offices in Novato, Marin County, California.

27        2.      Plaintiff is informed and believes that defendant DOYLE HEATON

28  ("HEATON") is, and all at all times relevant times was, a resident of Contra Costa County in the

_____
COMPLAINT                               1
                                        COMPLAINT

EXHIBIT ___A___
___1___ OF ___22___

Case: 10-40297   Doc# 83-3   Filed: 03/05/10   Entered: 03/05/10 14:23:40   Page 1 of
                                                                            22

State of California. HEATON is the owner, principal and alter ego of several real estate development companies, including Delco Builders & Developers, Inc., a California corporation (hereafter "Delco") and Mardel, LLC, a California limited liability company (hereafter "Mardel LLC"), operating and doing business in several San Francisco Bay Area counties, including Marin County.

3.    Plaintiff is ignorant of the true names and capacities and/or potential liability of the defendants sued herein as Does 1 through 50, inclusive, and has therefore sued these defendants by such fictitious names.   Plaintiff will seek leave of court to amend this Complaint to allege their true names and capacities when the same have been ascertained.  Plaintiff is informed and believes, and thereon alleges, that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that plaintiff's damages as herein alleged were legally caused by such defendants.

4.    Plaintiff is informed and believes, and thereon alleges, that at all times mentioned herein, each of the defendants sued herein, including each defendant sued by a fictitious name, was the agent, servant and employee of each of the remaining defendants, and in doing the things hereinafter alleged, was acting in the scope of its authority as such agent, servant and employee, and with the permission and consent of the remaining defendants.

### FACTS COMMON TO ALL CAUSES OF ACTION

5.    In or about January 2000, HEATON and Centennial Homes, Inc., a California corporation (hereafter "Centennial"), as predecessor in interest to plaintiff, formed Atherton Ranch, LLC, a California limited liability company  (hereafter "Atherton Ranch LLC") to develop a residential subdivision project in Novato, Marin County, California (hereafter "Atherton Ranch Project").  HEATON, through his ownership and control of Mardel LLC, served as the managing member of Atherton Ranch LLC and was exclusively responsible for managing the financial affairs of Atherton Ranch LLC and the Atherton Ranch Project.  As the manager of the Atherton Ranch Project, HEATON owed plaintiff a fiduciary duty of utmost honesty and integrity in the management of the Atherton Ranch Project finances.

COMPLAINT                                                                 2

EXHIBIT   A

COMPLAINT

6.      In 2007, HEATON, in his fiduciary capacity as the manager of the Atherton Ranch Project, provided plaintiff with a purported final accounting for the Atherton Ranch Project costs and income due to the respective owners, HEATON and plaintiff. Plaintiff disputed HEATON's accounting methodology; particularly an unauthorized and improper management fee claimed by HEATON, interest charges to the Atherton Ranch LLC for HEATON's personal debt service, unauthorized cash payments to third parties, and the sale of a home within the Atherton Ranch Project to HEATON's son at a substantial discount.

7.      In October 2007, plaintiff provided HEATON with its own accounting recap for the project costs and the distribution due to HEATON and plaintiff. At that time, Plaintiff contended that HEATON was taking, or had taken, approximately $2.2 million more than he was due under the terms of the Atherton Ranch LLC Operating Agreement. Plaintiff has since discovered that this amount is approximately $2,347,912.

8.      Plaintiff, through its representative Daniel Morgan ("Morgan"), and HEATON met in November 2007 to review and discuss the disputed final accounting provided by HEATON. Morgan provided HEATON with the accounting reconciliation prepared by plaintiff's accounting staff and made demand upon HEATON that he adjust the final accounting to allocate the additional $2.2 million return to plaintiff. HEATON responded that he would make the adjustments.

9.      On or about November 25, 2007, a "Settlement Agreement and Mutual Release" (hereafter "Settlement Agreement") was entered into between HEATON, Mardel LLC, Delco, and plaintiff's predecessor in interest Centennial. A true and correct copy of the Settlement Agreement is attached hereto as Exhibit A and incorporated herein by reference.

10.     On or about December 5, 2007, as material consideration for the Settlement Agreement, a "Promissory Note Secured by Deed of Trust" ("Original Note") in the amount of $1,069,934 was executed by HEATON. A true and correct copy of the Original Note is attached hereto as Exhibit B and incorporated herein by reference. The terms and conditions of the Original Note were expressly incorporated by reference into the Settlement Agreement (see ¶2.4 of Settlement Agreement attached hereto as Exhibit A). The release of claims contained in ¶3.1

of the Settlement Agreement was expressly conditioned upon satisfaction of the terms and conditions set forth in the Original Note.

11.   In December 2008, HEATON approached Morgan and asked that Morgan agree to modify the terms of the Settlement Agreement and the Original Note. HEATON made certain representations and promises to Morgan including, without limitation, the following:

(a)   Commencing February 1, 2009, HEATON would make monthly payments on the first of each month in the amount of One Thousand Three Hundred Ninety Seven and 35/100 Dollars ($1,397.35) (which sums would be applied to interest accruing).

(b)   If the foregoing monthly payment was not made within 15 days from the first of each month, the entire principal sum then unpaid would be accelerated, without demand or notice, and would immediately be due and payable, plus accrued interest.

12.   Pursuant to the above referenced representations and promises, on January 19, 2009, HEATON and plaintiff executed a "Note Modification Agreement" which, among other things, reduced the principal balance of the Original Note to $827,612. A true and correct copy of the Note Modification Agreement is attached hereto as Exhibit C and incorporated herein by reference.

13.   On information and belief, plaintiff alleges that at all relevant times mentioned herein, a unity of interest and ownership existed between Mardel LLC and Delco, on the one hand, and HEATON, on the other hand, such that any individuality and separateness between Mardel LLC and Delco, on the one hand, and HEATON ceased, and Mardel LLC and Delco are the alter egos of HEATON. Adherence to the fiction of the separate existence of Mardel LLC and Delco as entities distinct from HEATON would permit an abuse of the corporate privilege, sanction fraud, promote injustice and result in an inequitable result.

## FIRST CAUSE OF ACTION

### (Breach of Contract – Note Modification Agreement)

14.   Plaintiff incorporates herein by reference each of the allegations contained in Paragraphs 1 through 13 above, as though fully set forth herein.

COMPLAINT                 EXHIBIT    A                    4
                                          COMPLAINT

15. On or about October 1, 2009, HEATON breached the terms of the Note Modification Agreement by, amongst other things, failing to pay an installment payment of $1,379.35 as required by ¶3 of the Note Modification Agreement. Pursuant to ¶5 of the Note Modification Agreement, on October 16, 2009, the entire principal balance then unpaid (plus accrued interest) was immediately due and payable. HEATON failed to make any payment.

16. Plaintiff has performed all conditions, covenants, and promises, required by it in accordance with the terms and conditions of the Note Modification Agreement, except those conditions and promises which have been prevented or otherwise excused by the conduct of HEATON.

17. Pursuant to ¶6 of the Note Modification Agreement, the Original Note remained unmodified except as otherwise set forth in the Note Modification Agreement. The Original Note allows for the recovery of attorney's fees incurred by the prevailing party.

18. As a direct and proximate result of HEATON's breach of the Note Modification Agreement, Plaintiff has been damaged in an amount according to proof at trial including, without limitation, $827,612 plus accrued interest, plus attorneys' fees.

## SECOND CAUSE OF ACTION

### (Breach of Contract – Settlement Agreement)

19. Plaintiff incorporates herein by reference each of the allegations contained in Paragraphs 1 through 18 above, as though fully set forth herein.

20. On or about October 1, 2009, HEATON breached the terms of the Settlement Agreement by, amongst other things, failing to satisfy the terms and conditions of the Original Note which were incorporated by reference into the Settlement Agreement. Specifically, among other things, (1) HEATON failed to pay an installment payment of $1,379.35 as required by ¶3 of the Note Modification Agreement, and (2) failed to wind up the affairs of the Atherton Ranch LLC by the end of 2008, file a 2008 tax return, and provide a K-1 as required by ¶2.3 of the Settlement Agreement.

COMPLAINT    EXHIBIT _A_    5

21. Plaintiff has performed all conditions, covenants, and promises, required by it in accordance with the terms and conditions of the Settlement Agreement, except those conditions and promises which have been prevented or otherwise excused by the conduct of HEATON.

22. Pursuant to ¶11 of the Settlement Agreement, the prevailing party is entitled to recover attorney's fees.

23. As a direct and proximate result of HEATON's breach of the Settlement Agreement, Plaintiff has been damaged in an amount according to proof at trial.

### THIRD CAUSE OF ACTION
### (Fraud in the Inducement)

24. Plaintiff incorporates herein by reference each of the allegations contained in Paragraphs 1 through 23 above, as though fully set forth herein.

25. When HEATON made the representations and promises to Morgan that he would pay plaintiff the agreed sums, as alleged hereinabove, and as reflected in the Settlement Agreement, the Original Note and the Note Modification Agreement (sometimes refereed to collectively as the "Notes"), HEATON knew that those representations and promises were false. The true facts were that HEATON's undisclosed agenda was to dissuade plaintiff from suing him to collect the then calculated $2.2 million debt (such amount is now calculated at $2,347,912), to position himself to pay plaintiff as little as possible while forestalling a formal suit by plaintiff, to later default on the Notes once he had reorganized his broader financial affairs, and then, if necessary, seek to discharge the obligations owed to plaintiff through bankruptcy.

26. When HEATON made the false representations as alleged hereinabove, he was acting in a fiduciary capacity, he did so with the intention to deceive and defraud plaintiff and to induce plaintiff to act in reliance on these representations in the manner hereinafter alleged, and with the expectation that plaintiff would so act.

27. Plaintiff was ignorant of the falsity of HEATON's representations and believed them to be true. In reliance on the HEATON's false representations, plaintiff was induced to and did agree to forego legal action against HEATON for his mismanagement of the Atherton Ranch LLC and the Atherton Ranch Project (and funds relating thereto) and to enter into the Settlement

COMPLAINT                   EXHIBIT  *A*              6
                                        COMPLAINT

Case: 10-40297   Doc# 83-3   Filed 03/05/10   Entered: 03/05/10 14:23:40   Page 6 of 22

Agreement which included the resolution of the accounting and diversion issues with the creation of the Original Note. In further reliance on HEATON's further false representations, and HEATON's concealment of the true facts and his intentions, plaintiff was induced to and did agree to replace the Original Note with the Note Modification Agreement. Had plaintiff known the actual facts and HEATON's true intentions, plaintiff would not have agreed to enter into the Settlement Agreement, the Original Note and the Note Modification Agreement to further reduce HEATON's obligation to plaintiff.

28.     As a proximate result of HEATON's fraudulent conduct as herein alleged, plaintiff was damaged by the approximate sum of $2,347,912, plus interest on said sum, which is the unpaid balance of what HEATON owes plaintiff from the Atherton Ranch Project. The aforementioned conduct of HEATON constituted an intentional misrepresentation, deceit, and concealment of facts known only to HEATON, with the intention on his part of depriving plaintiff of its financial return on the Atherton Ranch Project and otherwise causing injury to plaintiff.

29.     In doing the things alleged hereinabove, HEATON has acted with oppression, fraud and/or malice. HEATON's conduct was despicable, depriving plaintiff of property or legal rights or otherwise causing plaintiff's injury and damages, and subjecting plaintiff to a cruel and unjust hardship in conscious disregard of plaintiff's rights. HEATON's actions were willful, wanton, malicious and oppressive, and justify the award of exemplary and punitive damages in a sum according to proof at trial.

FOURTH CAUSE OF ACTION

(Rescission: Based upon Fraud)

30.     Plaintiff incorporates herein by reference each of the allegations contained in Paragraphs 1 through 29 above, as though fully set forth herein.

31.     As is alleged above, plaintiff was fraudulently induced to enter into the Original Note and to later enter into the Note Modification Agreement.

32.     In October 2009, plaintiff became aware of HEATON's fraud and the existence of the grounds for rescission of the Original Note and Note Modification Agreement.

COMPLAINT                    EXHIBIT   A              7

COMPLAINT

1     33.    Plaintiff intends the service of this complaint to serve as notice of rescission of the
2 Original Note and Note Modification Agreement.
3     34.    Plaintiff offers to restore to defendant all consideration that has passed from
4 HEATON to plaintiff on the condition that HEATON tender to plaintiff all sums that are due and
5 owing plaintiff from the Atherton Ranch Project.
6     35.    As a legal and proximate result of the events described hereinabove, pla7intiff has
7 suffered consequential damages in an amount according to proof at trial.

8                              **FIFTH CAUSE OF ACTION**
9                          **(Fraud: Intentional Misrepresentation)**

10     36.    Plaintiff incorporates herein by reference each of the allegations contained in
11 Paragraphs 1 through 35 above, as though fully set forth herein.
12     37.    As alleged further hereinabove, HEATON, in his fiduciary capacity as the
13 manager of the Atherton Ranch Project, engaged in fraudulent conduct as the manager of the
14 Atherton Ranch Project which included, among other things, intentionally providing plaintiff
15 with a knowingly false final accounting for the Atherton Ranch Project costs and income due to
16 the respective owners, HEATON and plaintiff. The foregoing fraudulent conduct involved,
17 among other things, improper and unauthorized management fees claimed by HEATON, interest
18 charges to the Atherton Ranch LLC for HEATON's personal debt service, unauthorized cash
19 payments to third parties, and the sale of a home within the Atherton Ranch Project to
20 HEATON's son at a substantial discount.
21     38.    When HEATON provided the foregoing referenced accounting, HEATON knew
22 that the accounting was false. The true facts were that HEATON intentionally and knowingly
23 embezzled and/or converted approximately $2,347,912.
24     39.    Plaintiff was initially ignorant of the falsity of HEATON's final accounting and
25 believed them to be true, until plaintiff did its own accounting resulting in the Settlement
26 Agreement. Based upon rescission of the Settlement Agreement as alleged above, plaintiff now
27 sues HEATON for damages arising out of the Atherton Ranch Project in the approximate sum of
28

COMPLAINT                    EXHIBIT    A        8
                                              COMPLAINT

1    $2,347.912, plus interest on said sum, which is the unpaid balance of what HEATON owes

2    plaintiff from the Atherton Ranch Project.

3        40.     The aforementioned conduct of HEATON constituted an intentional

4    misrepresentation, deceit, and concealment of facts known only to HEATON, with the intention

5    on his part of depriving plaintiff of its financial return on the Atherton Ranch Project and

6    otherwise causing injury to plaintiff.

7        41.     In doing the things alleged hereinabove, HEATON has acted with oppression,

8    fraud and/or malice. HEATON's conduct was despicable, depriving plaintiff of property or legal

9    rights or otherwise causing plaintiff's injury and damages, and subjecting plaintiff to a cruel and

10    unjust hardship in conscious disregard of plaintiff's rights. HEATON's actions were willful,

11    wanton, malicious and oppressive, and justify the award of exemplary and punitive damages in a

12    sum according to proof at trial.

13                         **SIXTH CAUSE OF ACTION**

14                         **(Breach of Fiduciary Duty)**

15        42.     Plaintiff incorporates herein by reference each of the allegations contained in

16    Paragraphs 1 through 41 above, as though fully set forth herein.

17        43.     HEATON, as the manager of the Atherton Ranch Project, owed a fiduciary duty

18    to plaintiff (and/or its predecessor in interest) and Morgan. The fiduciary duty owed by

19    HEATON is the highest duty imposed by law and includes the highest duty of loyalty, utmost

20    honesty, good faith and integrity in the management of the Atherton Ranch Project finances.

21        44.     HEATON breached his fiduciary duty based upon his conduct, acts and omissions

22    as set forth hereinabove.

23        45.     As a proximate result of HEATON's breach of fiduciary duty as herein alleged,

24    plaintiff was damaged by the approximate sum of $2,347,912, plus interest on said sum, which is

25    the unpaid balance of what HEATON owes plaintiff from the Atherton Ranch Project.

26

27

28

COMPLAINT                                9

## SEVENTH CAUSE OF ACTION

### (Conversion)

46. Plaintiff incorporates herein by reference each of the allegations contained in Paragraphs 1 through 45 above, as though fully set forth herein.

47. At all relevant times throughout the Atherton Ranch Project, and particularly, without limitation, in January 2007, HEATON intentionally took certain allocations of profit and monies that plaintiff's predecessor in interest was entitled to receive pursuant to the terms of the Operating Agreement for the Atherton Ranch LLC, and converted the monies and allocation of profits to HEATON's own use and the beneficial use of third parties including, without limitation, unauthorized cash payments to himself and to third parties, and payment of interest charges for HEATON's personal debt service.

48. As a proximate result of HEATON's conversion as herein alleged, plaintiff was damaged by the approximate sum of $2,347,912, plus interest on said sum, which is the unpaid balance of what HEATON owes plaintiff from the Atherton Ranch Project.

49. In doing the things alleged hereinabove, HEATON has acted with oppression, fraud and/or malice. HEATON's conduct was despicable, depriving plaintiff of property or legal rights or otherwise causing plaintiff's injury and damages, and subjecting plaintiff to a cruel and unjust hardship in conscious disregard of plaintiff's rights. HEATON's actions were willful, wanton, malicious and oppressive, and justify the award of exemplary and punitive damages in a sum according to proof at trial.

## EIGHTH CAUSE OF ACTION

### (Constructive Trust: Based upon Fraud and Breach of Fiduciary Duty)

50. Plaintiff incorporates herein by reference each of the allegations contained in Paragraphs 1 through 49 above, as though fully set forth herein.

51. Plaintiff is informed and believes and thereupon alleges that HEATON improperly, and without authorization in violation of the Operating Agreement of Atherton Ranch LLC, used the Atherton Ranch LLC line of credit to purchase interests in other real property and/or pay for entitlements on other real property, Plaintiff is investigating to

Case: 10-40297   Doc# 83-3   Filed: 03/05/10   Entered: 03/05/10 14:23:40   Page 10 of 22

1 determine the specific identification of these real properties, and shall amend this Complaint

2 accordingly to seek a constructive trust against those properties.

3     52.    By virtue of HEATON's wrongful acts, HEATON holds said interests in real

4 property as a constructive trustee for plaintiff.

5 **NINTH CAUSE OF ACTION**

6 **(Accounting)**

7     53.    Plaintiff incorporates herein by reference each of the allegations contained in

8 Paragraphs 1 through 52 above, as though fully set forth herein.

9     54.    As further alleged further hereinabove, HEATON owed a fiduciary duty to

10 plaintiff's predecessor and to Morgan in connection with the management of the Atherton Ranch

11 LLC and the Atherton Ranch Project. HEATON's fiduciary duty and obligations under the

12 Atherton Ranch LLC Operating Agreement included, without limitation, a duty of utmost care

13 and loyalty to plaintiff's predecessor and to Morgan and a duty to protect their financial interests

14 and property in connection with the Atherton Ranch Project.

15     55.    As alleged further hereinabove, HEATON breached his fiduciary duty in the

16 course of the management of the Atherton Ranch Project by embezzling and/or converting

17 monies owed to plaintiff for HEATON's own use.

18     56.    Plaintiff alleges that the amount of money due to plaintiff is approximately

19 $2,347,912. However, in order to determine the exact amount of money owed to plaintiff,

20 plaintiff is entitled to an accounting from HEATON in connection with his management of the

21 Atherton Ranch LLC and the Atherton Ranch Project.

22 **PRAYER FOR RELIEF**

23 WHEREFORE: Plaintiff prays for relief as follows:

24     1.    For past and future general, economic and consequential damages in excess of

25 $2,347,912, and according to proof at trial;

26     2.    For rescission of the Original Note and Note Modification Agreement

27     3.    For an accounting of the finances of Atherton Ranch LLC and the Atherton Ranch

28 Project

COMPLAINT 11 COMPLAINT

EXHIBIT____A____

1   4.   For pre-judgment interest in accordance with California law;

2   5.   For costs of suit, including attorneys fees, according to proof;

3   6.   For exemplary damages in an amount according to proof at trial; and

4   7.   For such other and further relief as the court may deem appropriate.

5

6   DATED: October 16, 2009                    PHILLIPS, DOWNS & SIMONTACCHI LLP

7

8                                              By: _____

9                                              Steven A. Simontacchi
                                               Attorneys for Plaintiff CV ANTHONY II, LLC,
10                                             a California limited liability company

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT                                        12
                                              COMPLAINT

EXHIBIT _____A_____

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement ("Settlement Agreement") is effective November 25, 2007 and is entered into by and between Centennial Homes, Inc. ("CHI"); Delco Builders & Developers, Inc. ("Delco"); Mardel, LLC ("Mardel") and Doyle Heaton ("Heaton") (hereafter referred to collectively as the "Parties") who agree as set forth below.

1.  **Recitals**. This Settlement Agreement is made with reference to the following recital of facts:

    1.1   CHI and Mardel formed Atherton Ranch, LLC to develop a residential subdivision project in Novato, Marin County, California. CHI and Mardel were the sole members of Atherton Ranch, LLC.

    1.2   The management and administration of the Atherton Ranch LLC is governed by the Operating Agreement. The Operating Agreement specifies, among other things, the methodology for calculating, allocating and distributing any return of capital and distributions of profits due the members.

    1.3   Mardel is the managing member of the LLC and in that capacity it is responsible for the project accounting. Mardel manages the accounting for the project. During 2007, CHI disputed certain cost items, expenses and charges to the project ("Disputed Items").

    1.7   On November 15, 2007, the Parties met to discuss the Disputed Items. The Parties entered into a Confidentiality Agreement in order to facilitate a candid discussion of the Disputed Items. A copy of the Confidentiality Agreement is attached hereto as Exhibit "A." The parties reached a settlement of all issues relating to the Disputed Items and this Settlement Agreement is intended to memorialize the terms and conditions of their settlement.

2.  **Terms of Settlement**.

    2.1   In consideration for this Settlement Agreement and the terms and conditions set forth herein and after January 1, 2008, Mardel shall make adjustments to the books of the LLC which will have the effect of increasing the profit to the LLC in the amount of $2,389,863.

    2.2   Mardel shall make the adjustments after January 1, 2008 which shall result in an increase in each partners' capital account of $1,194,934 so that each partner will receive a K-1 in that same amount in 2009. Mardel shall cause the partnership affairs to be wound up at the end of 2008 and file a final return.

    2.3   Currently there is approximately $854,000 partnership cash in the bank. By December 1, 2008, Mardel shall distribute the cash in the partnership account in the approximate amount of $427,000 to Centennial. This distribution will equal the approximate capital account balance of Centennial.

450670`

1

2.4    Heaton, on behalf of Mardel, Inc., Delco Builder's & Developers, Inc., Atherton Ranch, LLC and himself individually, shall execute a Promissory Note in favor of CHI, a copy of which is attached hereto as Exhibit "B" and the terms and conditions of which are incorporated herein by this reference.

2.5    CHI shall pay for one-half the cost of Atherton Ranchs' obligation for a traffic signal on Redwood Boulevard as required by the City of Novato and estimated to cost $250,000. Payment will be made by CHI through a $125,000 reduction in the Promissory Note referenced in 2.4. Upon execution of the Promissory Note, CHI shall have no further obligation for traffic control requirements imposed by the City of Novato. Any variation in actual cost of the traffic signal from the $250,000 estimate will be will be adjusted in cash (the difference plus any accrued interest on the amount as if the adjustment to the note had not taken place) at the time of notice from the City of Novato.

For example, if it is determined that the Atherton Ranch portion of the signal is $100,000, then CHI shall be entitled to the payment of $75,000 plus accrued interest at the rate indicated in the attached promissory note ($250,000 - $100,000 = $150,000 divided by 2 for CHI's portion, plus interest from January 1, 2008 to the date of payment). This amount shall be paid in cash upon the award of the contract for the work

2.6    Each of the Parties to this Settlement Agreement will bear its own attorneys' fees and costs incurred to date and through the process of executing the settlement documents.

3.    **Mutual Release of Claims**.

3.1    Upon the satisfaction of the conditions set forth in Paragraph 2 above, the Parties shall be deemed to have fully and forever released, discharged, and dismissed all claims, demands, actions, causes of action and rights, in law or in equity, in the nature of an administrative proceeding or otherwise (known, unknown, contingent, accrued, inchoate or otherwise), which they had or may have now or in the future against the other Parties, and all of their present and former agents, assigns, affiliated entities, successors, employees, officers and directors, related to or arising out of the Atherton Ranch LLC.

4.    **Waiver of Statutory Rights**. Except for the obligations set forth in, created by, arising out of or reserved by this Settlement Agreement, each of the Parties hereby acknowledge that they are familiar with California Civil Code section 1542, which provides as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which, if known by him, must have materially affected his settlement with the debtor.

Except as provided for under the terms of this Settlement Agreement, each of the Parties waives and relinquishes any and all rights and benefits which it may have under, or which may be conferred upon it, by the provisions of Section 1542 of the California Civil Code, to the fullest extent that it may lawfully waive such rights or benefits pertaining to the subject matter of this Settlement Agreement. In connection with such waiver and relinquishment, each of the

450670`

2

Parties hereto acknowledges that it is aware that it or its attorneys may hereafter discover claims or facts in addition to or different from those which each of them now knows or believes to exist with respect to the subject matter of, or any part to, this Settlement Agreement but that it is the intention of each of the Parties hereto to hereby fully, finally and forever waive said claims, whether known or unknown, suspected or unsuspected.

5. **Representation and Warranties**.

5.1     Each of the Parties hereby represent and warrant that the person executing this Settlement Agreement on its behalf is duly authorized to do so, and that he/she is authorized to bind the party to the terms set forth herein.

6. **No Admission of Liability**. Nothing in this Settlement Agreement shall be construed as an admission of liability by any of the Parties to this Settlement Agreement.

7. **Governing Law**. This Settlement Agreement shall be governed by and interpreted in accordance with the laws of the State of California.

8. **Further Assurances**. Each party to this Settlement Agreement shall execute all instruments and documents and take all actions as may be reasonably required to effectuate this Settlement Agreement.

9. **Venue and Jurisdiction**. For purposes of venue and jurisdiction, this Settlement Agreement shall be deemed made and to be performed in Marin County, California.

10. **Time of Essence**. Time is of the essence with respect to each provision of this Settlement Agreement.

11. **Attorneys' Fees**. If any party shall bring an action or proceeding against another party to enforce any of the terms of this Settlement Agreement, the prevailing party shall be entitled to an award of reasonable attorneys' fees and costs.

12. **Modification**. This Settlement Agreement may be modified only by a contract in writing executed by the Parties to this Settlement Agreement against whom enforcement of such modification is sought.

13. **Prior Understandings**. This Settlement Agreement contains the entire agreement between the Parties with respect to the subject matter of this Settlement Agreement, is intended as a final expression of such Parties' agreement with respect to such terms as are included in this Settlement Agreement, is intended as a complete and exclusive statement of the terms of such agreement, and supersedes all negotiations, stipulations, understandings, agreements, representations and warranties, if any, with respect to such subject matter, which precede or accompany the execution of this Settlement Agreement. All Exhibits and Attachments to this Settlement Agreement shall be deemed to be incorporated within the body of this Settlement Agreement and shall be a material part of this integrated Settlement Agreement.

450670·

3

EXHIBIT___A___

EXHIBIT___A to Complaint___
3 OF 5

Case: 10-40297    Doc# 83-5    Filed: 03/05/10    Entered: 03/05/10 14:23:40    Page 15
of 22

14. **Interpretation**. Whenever the context so requires in this Settlement Agreement, all words used in the singular shall be construed to have been used in the plural (and vice versa), each gender shall be construed to include any other genders, and the word "person" shall be construed to include a natural person, a corporation, a firm, a joint venture, a trust, an estate, or any other entity.

15. **Partial Invalidity**. Each provision of this Settlement Agreement shall be valid and enforceable to the fullest extent permitted by law. If any provision of this Settlement Agreement or the application of such provision to any person or circumstance is, to any extent, deemed to be invalid or unenforceable, the remainder of this Settlement Agreement, or the application of such provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected by such invalidity or unenforceability, unless such provision or such application of such provision is essential to this Settlement Agreement.

16. **Successors-in-Interest and Assigns**. Except as otherwise set forth in this Settlement Agreement, the Parties hereto, and each of them, shall not assign or delegate to any other person this Settlement Agreement or any rights or obligations under this Settlement Agreement. Subject to any restriction on transferability contained in this Settlement Agreement, this Settlement Agreement shall be binding upon and shall inure to the benefit of the successors-in-interest and assigns of the parties hereto, and each of them. Nothing in this Paragraph shall create any rights enforceable by any person other than the Parties hereto, except for the rights of the successor-in-interest and assigns of the Parties hereto, unless such rights are expressly granted in this Settlement Agreement to other specifically identified persons.

17. **Drafting Ambiguities**. Each of the Parties to this Settlement Agreement and their respective legal counsel have reviewed and approved this Settlement Agreement. The rule of construction that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Settlement Agreement.

18. **Confidentiality**. The parties hereto agree that the terms of this agreement shall remain confidential except for disclosure to partners and affiliates of Atherton Ranch LLC. The limit of the disclosure to those affiliates shall be limited to the fact that a dispute arose and that it was settled amicably.

19. **Counterparts & Facsimile Signatures**. This Settlement Agreement may be executed in whole or in counterparts together which shall make up the entire Settlement Agreement. Facsimile signatures to this Settlement Agreement shall be accepted by the Parties the same as original wet signatures.

Dated: ~~November~~ 5, 2007
December

CENTENNIAL HOMES, INC.

By: _____
Daniel H. Morgan
President

450670'

4

Dated: November ___, 2007                MARDEL, INC.

                                         By: _Doyle Heaton_
                                         Print: _Doyle Heaton_
                                         Its: _Member_

Dated: November 12/5, 2007               ATHERTON RANCH, LLC

                                         By: _Doyle Heaton_
                                         Print: _Doyle Heaton_
                                         Its: _Member_

Dated: November 12/5, 2007               DELCO BUILDERS & DEVELOPERS, INC.

                                         By: _Doyle Heaton_
                                         Print: _Doyle Heaton_
                                         Its: _Pres._

Dated: November 12/5 ___, 2007           _Doyle Heaton_
                                         DOYLE HEATON, Individually

450670`                                  5

EXHIBIT ___A to complaint___
___5___ OF ___5___

EXHIBIT ___A___

Case: 10-40297    Doc# 83-7    Filed: 03/05/10    Entered: 03/05/10 14:23:40    Page 17 of 22

Exhibit B

# PROMISSORY NOTE SECURED BY DEED OF TRUST

$1,069,934.00 - November 15, 2007, Novato, California

**FOR VALUE RECEIVED**, I, Doyle Heaton, an individual, ("Promissor"), promises to pay, in the event that the following amount is not paid pursuant to the Settlement Agreement and Mutual Release, to the order of Centennial Homes, Inc. (Promissee) or order, the principal sum of One Million Sixty Nine Thousand, Nine Hundred Thirty Four and no/100 Dollars ($1,069,934.00) (the "Note Amount").

This Note may be secured by a Deed of Trust of even date herewith (the "Deed of Trust") covering certain real and personal property, as therein described (the "Property").

**Interest Start Date** – The note shall bear interest at the rate stated herein beginning on January 1, 2008 and shall be based on a 360 day year.

**Interest Rate** – The interest rate for months 1 through 12 (January 1, 2008 through December 31, 2008) shall be 8% per annum; The interest rate for months 13 through 24 (January 1, 2009 through December 31, 2009) shall be 10% per annum; The interest rate for months 25 through 36 (January 1, 2010 through December 31, 2010) shall be 12% per annum.

**Term** – The Term of the loan shall be 3 years.

**Payment Dates** – Beginning on March 31, 2008 and for each and every quarter thereafter, Promissor shall make a principal reduction of $89,161 or more plus pay the accrued interest to date on the outstanding loan balance. Attached hereto and incorporated herein is Exhibit A which sets forth the payments, their due date and the amounts.

**Prepayment** – This loan may be prepaid at any time without penalty.

**Late Charges** – a 10% late charge shall be due on any and all payments received after the 10th day of the month that they are due.

**Lenders election to secure the note** – Promissee, at promissee's sole and absolute discretion, shall have the right to secure this note with a deed of trust on the real property set forth in Exhibit B hereto. However, Promissee shall not secure the note unless and until one or more of the following events: a default in the scheduled payment of any installment when due (which is defined as 15 days from the scheduled due date), the insolvency of the Promissor, the appointment of a receiver, the voluntary or involuntary filing of a petition in U.S. Bankruptcy Court, or after December 31, 2009.

450670'

7

EXHIBIT ___A___

EXHIBIT __B__ to Complaint
__3__

**Attorneys Fees** – Should Promissee need to sue to collect under this note, Promissee shall be entitled to recover all attorneys fees and court costs whether the dispute is settled prior to trial or is adjudicated.

**Venue** – The parties agree that the venue shall be Marin County should a dispute arise.

**Broker** – The parties acknowledge that this promissory note was arranged by Daniel H. Morgan who is a licensed real estate broker in the state of California and the obligation hereunder shall be secured by a deed of trust.

_____        _12/5/07_____
Doyle D. Heaton                       Date

450670'                                    8

Exhibit C

# Note Payment Summary

| | | |
|---|---|---|
| Principal | $ 1,069,934 | 2264868 |
| Quarterly Principal Reduction | $ 89,161 | |

| | |
|---|---|
| Interest Year 1 | 8.0% |
| Interest Year 2 | 10.0% |
| Interest Year 3 | 12.0% |

| Year | Quarter | Principal Reduction | | Principal Balance | | Interest | | Total | |
|---|---|---|---|---|---|---|---|---|---|
| Year 1 | Q1 | $ | 89,161 | $ | 980,773 | $ | 21,399 | $ | 110,560 |
| | Q2 | $ | 89,161 | $ | 891,612 | $ | 19,615 | $ | 108,777 |
| | Q3 | $ | 89,161 | $ | 802,451 | $ | 17,832 | $ | 106,993 |
| | Q4 | $ | 89,161 | $ | 713,289 | $ | 16,049 | $ | 105,210 |
| Year 2 | Q1 | $ | 89,161 | $ | 624,128 | $ | 17,832 | $ | 106,993 |
| | Q2 | $ | 89,161 | $ | 534,967 | $ | 15,603 | $ | 104,764 |
| | Q3 | $ | 89,161 | $ | 445,806 | $ | 13,374 | $ | 102,535 |
| | Q4 | $ | 89,161 | $ | 356,645 | $ | 11,145 | $ | 100,306 |
| Year 3 | Q1 | $ | 89,161 | $ | 267,484 | $ | 10,699 | $ | 99,861 |
| | Q2 | $ | 89,161 | $ | 178,322 | $ | 8,025 | $ | 97,186 |
| | Q3 | $ | 89,161 | $ | 89,161 | $ | 5,350 | $ | 94,511 |
| | Q4 | $ | 89,161 | $ | 0 | $ | 2,675 | $ | 91,836 |
| | | $ | 1,069,934 | | | $ | 159,598 | $ | 1,229,532 |

Initial _____

EXHIBIT _____A_____

EXHIBIT _____B_____ to Complaint
3 OF 3

# NOTE MODIFICATION AGREEMENT

This Note Modification Agreement ("Agreement") is entered into as of the 19th day of January, 2009, by and between DOYLE HEATON ("Promissor") and CV ANTHONY II, LLC, successor-in-interest to CENTENNIAL HOMES, INC. ("Promissee").

## RECITALS

A.    Promissor previously executed a Promissory Note dated November 15, 2007, in the principal amount of One Million Six-Nine Thousand Nine Hundred Thirty-Four and 00/100 Dollars ($1,069,934.00) in favor of Promissee's predecessor, Centennial Homes, Inc. ("Note").

B.    Centennial Homes, Inc., assigned all of its right, title and interest in the Note to Promissee.

C.    The parties desire to modify the terms of the Note on the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the covenants and agreements set forth herein, and for other good and valuable consideration, the parties agree as follows:

## AGREEMENT

1.    <u>Outstanding Balance of Note</u>.  Promissee agrees to waive all accrued and unpaid interest for 2008.  The parties agree that the outstanding principal balance of the Note as of January 1, 2009 is Eight Hundred Ninety-One Thousand Six Hundred Twelve and 00/100 Dollars ($891,612.00).

2.    <u>Interest Rate</u>.  The original interest rate provisions set forth in the paragraph entitled "Interest Rate" of the Note are modified as follows:  Commencing January 1, 2009 and continuing to December 31, 2010 ("Maturity Date"), the Interest Rate shall be ten percent (10%) per annum.

3.    <u>Payment Dates.</u>  The original payment provisions set forth in the paragraph entitled "Payment Dates" of the Note are replaced with the following:  Commencing February 1, 2009, and on the first day of each month thereafter until the Maturity Date, Promissor shall make monthly payments of One Thousand Three Hundred Seventy-Nine and 35/100 Dollars ($1,379.35) per month, (based upon the Adjusted Principal Balance defined in paragraph 4 below) which shall be applied to the interest accruing on the Note.  On the Maturity Date, the outstanding principal balance of the Note plus all accrued and unpaid interest shall be due and payable.

4.    <u>Credit Against Principal Balance of Note</u>.  Promissor shall deliver to Promissee, a 2005 Aston Martin vehicle on or before January 30, 2009, and the sum of Sixty-Four Thousand Dollars ($64,000) will be deducted from the outstanding principal balance of the Note, effective as of January 30, 2009.  Accordingly, the outstanding principal balance of the Note effective as

6676.000/400244.2        EXHIBIT __A__        1

EXHIBIT __C__ to Complaint
__1__ OF __2__

Case: 10-40297    Doc# 23-3    Filed: 03/05/10    Entered: 03/05/10 14:23:40    Page 21
__21__ OF __22__
of 22

of January 30, 2009 will be Eight Hundred Twenty-Seven Thousand Six Hundred Twelve Dollars ($827,612.00) (the "Adjusted Principal Balance").

5.   Acceleration.  In the event of a default in the payment of any of the installment payments set forth herein when such payments are due as herein provided (which default is defined as 15 days after the scheduled due date), time being of the essence hereof, the holder of the Note may, without notice or demand, declare the entire principal sum then unpaid, plus accrued interest pursuant to the terms of the Note, immediately due and payable.

6.   Note Remains in Effect.  Except as modified above, the Note remains unmodified and in full force and effect.

7.   Representation.  Promissee represents and warrants to Promissor that Promissee is the legal holder of the Note and has the full right and authority to enter into this Note Modification Agreement with Promissee.

IN WITNESS WHEREOF, the parties have executed this Note Modification Agreement as of the date written above.

PROMISSOR:

_____
DOYLE HEATON, an individual

PROMISSEE:

CV ANTHONY II, LLC,
a limited liability company

_____
Daniel H. Morgan, Manager

EXHIBIT ___C___ to Complaint
___2___ OF ___2___

6676.000/400244.2                EXHIBIT ___A___        2