```
 1              SUPERIOR COURT OF THE STATE OF CALIFORNIA
 2                   MARIN COUNTY JUDICIAL DISTRICT
 3    HON. JOHN A. SUTRO, JR., JUDGE              DEPARTMENT H
 4
 5                            --oOo--
 6
 7    CV ANTHONY II, LLC,            )
 8               Plaintiff,          )
 9      vs.                          )   No. CV 095267
10    DOYLE HEATON,                  )
11               Defendant.          )
12    _____ )
13
14
15            REPORTER'S TRANSCRIPT OF EX PARTE HEARING
16                     Tuesday, October 20, 2009
17
18
19    APPEARANCES:
20    For the Plaintiff:             STEVEN A. SIMONTACCHI, ESQ.
                                     PHILLIPS, DOWNS & SIMONTACCHI
21                                   55 Shaver Street, Suite 330
                                     San Rafael, CA 94901
22
23    For the Defendant:             MIR SAIED KASHANI, ESQ.
                                     800 W. 1st Street, Suite 400
24                                   Los Angeles, CA 90012
25
26    Reported by:  CHRISTINA GILSON, CSR NO. 9824
```

```
 1  TUESDAY, OCTOBER 20, 2009              9:10 O'CLOCK A.M.
 2
 3                        --oOo--
 4
 5       THE COURT:  CV Anthony versus Heaton.
 6       MR. SIMONTACCHI:  Good morning, your Honor.  Steve
 7  Simontacchi appearing on behalf of the plaintiffs,
 8  CV Anthony.
 9       MR. KASHANI:  Good morning, your Honor.  Saied
10  Kashani on behalf of defendant Doyle Heaton.
11       THE COURT:  This is awkward having somebody appear
12  ex parte on court call.
13       MR. KASHANI:  I'm sorry, your Honor.  I'm actually
14  in Reno this morning on a scheduled appointment.  I asked
15  counsel if he could move it a day or so so I could appear
16  in person and --
17       THE COURT:  There is an opposition.  I have not
18  even looked at the papers and I have a jury coming in at
19  9:30, so I'm going to have to take a look at the papers and
20  see what's here.
21       And, Mr. Kashani, you're just going to have to sit
22  on the phone until I've finished taking a look at the
23  papers here.
24       MR. KASHANI:  Very well, Your Honor.  Would it be
25  more convenient for the Court if I called back?
26       THE COURT:  No, I don't think so.  Since you're
```

```
 1  appearing here, you're just going to have to wait.
 2           MR. KASHANI:  No problem, your Honor.  I'm here.
 3           THE COURT:  All right.  So just have a seat.  I'll
 4  take a look at these as quickly as possible.
 5           MR. SIMONTACCHI:  Thank you, your Honor.
 6                (The Court retires to chambers to review
 7                 documents.)
 8           THE COURT:  All right, counsel, I've reviewed the
 9  papers.
10           I think a good place to start, Mr. Simontacchi,
11  would be for you to respond to the objections raised by
12  Mr. Kashani.
13           MR. SIMONTACCHI:  Sure, your Honor.
14           The first point made in counsel's opposition is he
15  claims that the complaint was premature and that the
16  default due date had not occurred yet.  And if you look
17  actually at the note, which is attached as Exhibit C --
18           THE COURT:  Wouldn't it be D?
19           MR. SIMONTACCHI:  Excuse me.  Going to the
20  declaration of Dan Morgan and Exhibit D, page 2 of 2, in
21  paragraph 5, which is entitled "Acceleration," it states
22  that, "In the event of a default in the payment of any of
23  the installment payments set forth herein when such
24  payments are due as herein provided --" and here is the
25  key.  In parentheses, it says, "-- which default is defined
26  as 15 days after the scheduled due date."  The scheduled
```

1  due date, undisputedly, was October 1st, so 15 days after
2  the scheduled due date is October 16th. By definition, a
3  default has occurred on October 16th.
4       The complaint was filed on October 16th. And,
5  regardless, even if counsel's argument had merit, which I
6  believe it does not for the foregoing reasons, the payment
7  was not made on October 16th. And the complaint was
8  subserved over the weekend.
9       So that would be my response to his first
10 argument, is that as of October 16th, there was a default
11 as defined.
12      THE COURT: Right. Okay.
13      MR. SIMONTACCHI: The second argument he makes is
14 that there -- a writ cannot attach when there is a deed of
15 trust. There is no deed of trust.
16      The note, itself, which this is Exhibit C to Dan
17 Morgan's declaration, as counsel has pointed out at the
18 bottom of Exhibit C, page 1 of 3, there is a paragraph
19 entitled "Lender's Election to Secure the Note."
20      Mr. Morgan has declared in his declaration under
21 penalty of perjury in paragraph 18C that this debt is not
22 secured by a deed of trust.
23      In fact, there is no deed of trust recorded.
24 There is no deed of trust executed and signed by
25 Mr. Heaton. And if there were such a deed of trust, I
26 would assume Mr. Heaton's counsel would have provided a

1  copy of that. So there is no deed of trust.
2          Thirdly, with respect to exigency -- there is no
3  exigency argument and it refers to boilerplate allegations
4  of insolvency. This is the strongest basis for the writ
5  because insolvency is defined by statute. And I have
6  quoted it in the points and authorities on page 7. At the
7  bottom of page 7, Code of Civil Procedure Section 485.010
8  Subdivision B, and it states, "Under the circumstances of
9  the case, it may be inferred that defendant has failed to
10 pay the debt underlying the requested attachment." There
11 is no issue there. "And the defendant is insolvent in the
12 sense that the defendant is generally not paying his or her
13 debts as those debts become due, unless the debts are
14 subject to a bona fide dispute."
15         Mr. Morgan's declaration points out and
16 establishes that there is undisputedly a restructuring of
17 debts going on. There is the existence of other debts, no
18 less than a dozen. Mr. Heaton is working with Mr. Huntly,
19 who is a financial consultant restructuring firm, so there
20 is undisputedly other debts that he is in the midst of a
21 plan and strategy to avoid those debts.
22         I believe clearly by the declaration and the
23 exhibits attached to Mr. Morgan's declaration, specifically
24 Exhibit E, which was his contemporaneous notes of his
25 conversation with Mr. Huntly, and Exhibit F, where
26 Mr. Huntly responded and acknowledged that he needs to

EXHIBIT C
5 OF 11
Case: 10-40297   Doc# 83-5   Filed: 03/05/10   Entered: 03/05/10 14:23:40   Page 5 of 11

```
 1   reach settlements with unsecured lenders on a discounted
 2   basis.
 3              Furthermore, his financial statement -- and that's
 4   detailed in the declaration -- lists approximately a dozen
 5   debts.
 6              So I believe the Subsection B of this 485.010
 7   regarding insolvency is clearly met by the declaration.
 8              And finally, the inconsistency and pleadings is
 9   not a viable argument because --
10              THE COURT:  I don't think you need to even address
11   that.  All right.
12              Okay, Mr. Kashani, anything more you want to say?
13              MR. KASHANI:  Yes, a couple of things.
14              First, I think this whole thing shows a problem
15   with the ex parte procedure.  I think the note is ambiguous
16   on the points that they raised and that's something that's
17   very difficult to resolve on an ex parte situation.
18              The note says, at the end, that the note shall be
19   secured by a deed of trust.  I mean, that's what the note
20   says.  If they didn't record a deed or something, I can't
21   address that.  Again, we only got these papers yesterday.
22              But I think the main thing is exigency.  If we
23   actually look at the declaration of Morgan, which I just
24   received this morning, the only evidence of exigency is
25   hearsay from the financial consultant who is not
26   established to be a representative and spokesman of
```

7

1  Mr. Heaton.

2  On the other hand, if we look at the actual
3  financial statement attached as Exhibit 8 to Mr. Morgan's
4  declaration, it shows a net worth of $12 million of
5  Mr. Heaton, the defendant. So there is a lot of ambiguity
6  here.

7  The hearsay under the Code will not support a ex
8  parte attachment. At best, his support for exigency is
9  hearsay from a financial consultant.

10  And I point out, too, that in paragraph 23 of his
11  declaration, Mr. Morgan says that he sent an email to
12  Mr. Huntly with a copy of his notes and he wrote back that
13  most points are accurate but some were incomplete and
14  incorrect. So even as to the hearsay presented, there is
15  doubt as to the situation, but most importantly, the only
16  basis of exigency is hearsay. Hearsay will not support a
17  writ of attachment on an ex parte basis. That's in the
18  Code.

19  THE COURT: All right. Go ahead.

20  MR. SIMONTACCHI: May I briefly respond? The deed
21  of trust -- there is no deed of trust.

22  THE COURT: That's correct.

23  MR. SIMONTACCHI: CCP Section 486.010 and Section
24  482.040, for purposes of a temporary protective order, does
25  allow hearsay in a declaration.

26  THE COURT: All right. With regard to that point,

particularly, I think that the showing that the plaintiff has made, just based on its dealings with Mr. Heaton, is sufficient to show, I think, some dishonesty and lack of candor in business dealings because that's the whole basis for the parties' having entered into a settlement agreement to start off with.

And so it appears to me that the plaintiff has met the requirements of the Code of Civil Procedure and specifically that the claim upon which the attachment is based is one upon which an attachment may be issued; that plaintiff has established the probable validity of the claim upon which the attachment is based; that the attachment is not sought for a purpose other than the recovery on the claim upon which the attachment is based; that the amounts to be secured by the attachment is greater than zero.

Further, with respect to the ex parte aspect of the matter, that it may be inferred that there is a danger the property sought to be attached be concealed, substantially impaired in value or otherwise made unavailable to levy if issuance of the order is delayed.

And that it also may further be inferred that Mr. Heaton has failed to pay the debt underlying the requested attachment and is insolvent in the sense that he's generally not paying his or her debts as those debts become due.

1   And there is no showing that any of those debts is
2   subject to a bone filed dispute.
3   So I think, under the circumstances, the Court is
4   mandated to issue the attachment and order, so I'm going to
5   do that.
6   It is denominated a temporary protective order
7   which -
8   MR. SIMONTACCHI: Rather than a right to attach
9   order?
10  THE COURT: Excuse me.
11  MR. SIMONTACCHI: The temporary was in the
12  alternative.
13  THE COURT: In the alternative. Okay.
14  MR. KASHANI: Your Honor, if I could be heard on
15  that point?
16  THE COURT: No, I don't think there is any
17  necessity for further argument here. I'm going to sign the
18  right to attach order.
19  MR. SIMONTACCHI: Thank you, your Honor.
20  And I do have a bond and undertaking as required
21  by the Code which I will forthwith go up and file.
22  THE COURT: All right. And that's provided for in
23  the order here. I think the order is in the appropriate
24  form.
25  MR. SIMONTACCHI: Yes.
26  THE COURT: All right. Okay. I think that's it,

1  at this point.
2       So thank you, counsel, both of you, for bearing
3  with me --
4       MR. SIMONTACCHI:  Thank you, your Honor.
5       THE COURT:  -- while I reviewed the papers.
6       Mr. Kashani, I appreciate your patience in the
7  matter, as well.
8       MR. KASHANI:  No problem, your Honor.
9       THE COURT:  Okay.  Thank you both.
10      MR. KASHANI:  Thank you.
11      (Whereupon, the proceedings were concluded.)
12                      - - -

```
 1   STATE OF CALIFORNIA    )
 2                          ) ss.
 3   COUNTY OF MARIN        )
 4
 5
 6        I, CHRISTINA GILSON, an Official Shorthand
 7   Reporter for Marin County Superior Court, in and for the
 8   County of Marin, do hereby certify that the foregoing
 9   Reporter's Transcript is a full, true and correct
10   transcription of my shorthand notes taken of the
11   aforementioned proceedings at the time and place therein
12   indicated.
13        IN WITNESS WHEREOF, I have hereunto set forth my
14   hand this 2nd day of November, 2009.
15
16
17
18                              _____
19                              CHRISTINA GILSON, CSR NO. 9824
20
21
22
23
24
25
26
```