SAIED KASHANI, State Bar No. 144805
800 West First Street Suite 400
Los Angeles, California 90012
tel. (213) 625-4320

Attorneys for Doyle Heaton

SUPERIOR COURT FOR THE STATE OF CALIFORNIA

COUNTY OF MARIN

| | |
|---|---|
| CV ANTHONY II LLC | CASE NO. **CIV 095267** |
| Plaintiff, | |
| v. | **NOTICE OF DEMURRERS AND DEMURRERS TO COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES; REQUEST TO TAKE JUDICIAL NOTICE** |
| DOYLE HEATON, et al. | |
| Defendants. | |
| | Date: February 8, 2010 |
| | Time: 8:30 am |
| | Dept.: H |

EXHIBIT E

## TABLE OF CONTENTS

NOTICE OF DEMURRERS AND DEMURRERS............................... 1

DEMURRERS AND SUMMARY OF ARGUMENT .............................. 1

MEMORANDUM OF POINTS AND AUTHORITIES............................ 4

STATEMENT OF THE CASE........................................... 4

    A.    Background ............................................ 4

    B.    The Settlement Agreement and the Note ................. 4

    C.    The Release and Waiver ................................ 5

    D.    The modification agreement ............................ 7

    E.    Mr. Heaton made all payments through October 2009 ..... 7

    F.    The Complaint ......................................... 7

    G.    CVA sought and obtained an ex parte writ of attachment against Mr. Heaton and his assets. ......................... 9

ANALYSIS........................................................ 9

I.   CVA RELEASED AND WAIVED THE THIRD THROUGH NINTH CAUSES OF ACTION IN THE SETTLEMENT AGREEMENT............................. 10

II.  THE CLAIM OF FALSE PROMISE OR PROMISSORY FRAUD IS NOT AND CANNOT BE SUFFICIENTLY PLED BECAUSE MR. HEATON PERFORMED AND PAID FOR TWO YEARS............................................ 11

III. THE THIRD THROUGH NINTH CAUSES OF ACTION ARE ALSO BARRED BY THE DOCTRINE OF ELECTION OF REMEDIES BECAUSE CVA SUED ON THE CONTRACT AND ALSO SOUGHT, OBTAINED AND SERVED A WRIT OF ATTACHMENT BASED ON THE CONTRACT.............................. 12

IV.  AMENDMENT IS NOT POSSIBLE................................. 15

CONCLUSION..................................................... 15

EXHIBIT  E          i

```
 1                      TABLE OF AUTHORITIES
 2
      Bancroft v. Woodward, 183 Cal. 99 (1920).                  13
 3
      Bank of America v. Salinas Nissan,
 4        207 Cal. App. 3d 260 (1989).                           13

 5    Robinson Helicopter Co. v. Dana Corp.,
          34 Cal. 4th 979 (2004).                                11
 6
      Steiner v. Rowley, 35 Cal. 2d 713 (1950)                   13,14
 7
      Tenzer v. Superscope Inc., 39 Cal. 3d 18 (1985).           11,12
 8
      CCP § 483.010                                              13
 9
10
...
28
```

**NOTICE OF DEMURRERS AND DEMURRERS**

TO PLAINTIFF CV ANTHONY II LLC ("CVA") AND ITS COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on February 8, 2010 at 8:30 am in Dept. H of the above-referenced court, defendant Doyle Heaton will demur to the above complaint. The demurrer is based on the memorandum of points and authorities, and Request to Take Judicial Notice, following.

**DEMURRERS AND SUMMARY OF ARGUMENT**

CVA purports to sue for breach of a settlement agreement and failure to make payments due thereunder (first and second causes of action) *and* for "fraud in the inducement" and to rescind the very same settlement agreement (third and fourth causes of action) and further causes of action resulting from the rescission.

The settlement agreement, Exhibit A to the complaint, included a mutual release of all claims, *known and unknown*, and a Civil Code § 1542 waiver. This release and waiver barred all future claims including for alleged fraud in the inducement of the same agreement, and the "underlying" claims. As the rescission claim is based on alleged fraud, rescission is also barred. The remaining claims (essentially to re-litigate the released claims) were specifically released and are equally barred.

CVA seems to argue fraud in the inducement, but all such claims were released. Moreover, the alleged fraud in the inducement was not of facts, but that Mr. Heaton allegedly entered into the agreement without intending to perform. CVA alleges no facts supporting such a claim beyond the non-performance itself, which is insufficient, and in any event such "false promise" will

not overcome the release. The complaint itself also destroys any claim for false promise, because the complaint admits Mr. Heaton made all payments under the Settlement Agreement and Note for two years, a total of over $250,000.

As a further grounds for the demurrer, while normally plaintiff may join inconsistent theories in the same pleading, however, CVA has obtained and recorded an ex parte writ of attachment on defendant and his assets. A writ of attachment is only available on a contract claim, not for fraud or rescission. By obtaining and enforcing his writ, CVA made an irrevocable election of remedies and can no longer sue for fraud in the inducement or rescission of the same contract, or claims based on said rescission.

Thus:

1. The third cause of action for fraud in the inducement of the settlement agreement is barred by the release and waiver and by CVA's election of remedies.

2. The third cause of action also fails to state facts sufficient to constitute a claim, to the extent it is based on alleged false promise.

3. The fourth cause of action for "rescission based on fraud" of the settlement agreement is barred by the release and waiver and by CVA's election of remedies.

4. The fourth cause of action also fails to state facts sufficient to constitute a claim, to the extent it is based on alleged false promise.

5. The fifth cause of action for fraud is barred by the release and waiver and by CVA's election of remedies.

6. The sixth cause of action for breach of fiduciary duty is barred by the release and waiver and by CVA's election of remedies.

7. The seventh cause of action for conversion is barred by the release and waiver and by CVA's election of remedies.

8. The eighth cause of action for "constructive trust" is barred by the release and waiver and by CVA's election of remedies.

9. The sixth cause of action for accounting is barred by the release and waiver and by CVA's election of remedies.

Nov. 15, 2009

*/s/ Saied Kashani*
Saied Kashani
Attorney for Doyle Heaton

# MEMORANDUM OF POINTS AND AUTHORITIES

## STATEMENT OF THE CASE

### A. Background

The evidence will ultimately show CVA's allegations are completely unfounded, but this demurrer takes the pleading as true, as it must. Plaintiff CVA (through its predecessor Centennial Homes Inc.) and defendant Doyle Heaton formed Atherton Ranch LLC to develop certain real property. Complaint ¶ 5. The parties had a financial dispute. CVA contended Mr. Heaton had misappropriated funds and/or that profits had not been properly distributed to the members of the LLC. Id. ¶ 6. In October 2007, CVA presented an accounting that showed that Mr. Heaton had allegedly taken an additional $2.2 million out of Atherton. Id. ¶ 8.

In October 2007, the parties met to reconcile their respective accountings. CVA does not contend that Mr. Heaton presented any incorrect information as part of this reconciliation.

### B. The Settlement Agreement and the Note

On November 25, 2007, the parties entered into a written "Settlement Agreement and Mutual Release." Id. ¶ 9. As material consideration for the agreement and release, Mr. Heaton signed a note in favor of CVA in the amount of $1,069,934 in full satisfaction of all of CVA's claims. Id. ¶ 10.

Importantly, the consideration for the settlement agreement was that Mr. Heaton *sign* the note, and thereby become personally liable to pay the $1,069,934 to CVA. Specifically, Section 2, Terms of Settlement, provided:

EXHIBIT E

4

> 2.1 Heaton... shall execute a Promissory
> Note in favor of CHI [now plaintiff CVA], a
> copy of which is attached as Exhibit B...

The promissory note was in favor of CVA and in the amount of $1,069,934, payable in quarterly installments of principal and monthly installments of interest. Exhibit B to complaint.

## C. The Release and Waiver

The settlement agreement contained full mutual releases of all claims, known and unknown, and a waiver of the terms of Civil Code § 1542. Section 3.1 provided:

> Upon the satisfaction of the conditions set
> forth in Paragraph 2 above, the Parties shall
> be deemed to have fully and forever released,
> discharged and dismissed all claims... known,
> unknown, contingent, accrued, inchoate or
> otherwise, which they had or may have now or
> in the future against the other Parties...
> related to or arising out of Atherton Ranch
> LLC.

Importantly, the conditions of Paragraph 2 do not include full payment of the note, but only execution of the note by Mr. Heaton. Section 2.4. The condition was only that Mr. Heaton sign the note and thereby personally assume the obligation.

Section 4 of the agreement, after quoting Civil Code § 1542, provided:

> Except as provided for under the terms of this
> Settlement Agreement, each of the Parties
> waives and relinquishes any rights and
> benefits which it may have [under] Section
> 1542... In connection with such waiver and
> relinquishment, each of the Parties hereto
> acknowledge that it is aware that it or its
> attorneys may hereafter discover claims or
> facts in addition to or different from those
> which each of them now knows or believes to
> exist... **but it is the intention of each of
> the Parties hereto to hereby fully, finally**

EXHIBIT E

5

**and forever waive said claims, whether known
or unknown, suspected or unsuspected.**

The Settlement Agreement also contained an integration clause, Section 13, which specifically disclaimed reliance on all other understandings and representations that preceded *or accompanied* the agreement:

> This Settlement Agreement contains the entire agreement between the Parties with respect to the subject matter of this Settlement Agreement, is intended as the final expression of such Parties' Agreement... **and supersedes all negotiations,** stipulations, understandings, agreements, **representations and warranties, if any,** with respect to such subject matter, **which precede or accompany the execution of this Settlement Agreement.**

The effect of the Settlement Agreement, Note, release and integration language was that all rights and claims were merged into and replaced by the Settlement Agreement and Note. Thereafter, the only claim and only enforceable obligation was payment of the note.

Importantly, the release and waiver were complete upon execution of the note and did not await or become effective upon actual payment of the Note. Again, Section 3.1 states clearly that the release is effective "upon satisfaction of the conditions set forth in Paragraph 2." Paragraph 2 includes the condition that Mr. Heaton execute the Note (in para. 2.4), but *not* that the note be fully paid. Of course, obligations created by the Settlement Agreement itself were not released, so that if Mr. Heaton failed to pay, CVA's remedy was to sue for payment of the note (which it has done).

**D. The modification agreement**

On January 19, 2009, the parties signed a Note Modification Agreement (complaint Exhibit C). Under the agreement section 4, Mr. Heaton made an advance payment of $64,000 in the form of an Aston Martin car. The monthly payment amounts were also modified.

**E. Mr. Heaton made all payments through October 2009**

CVA alleges only that Mr. Heaton missed the October 1, 2009 payment of $1,379.35. Complaint ¶ 15. CVA does not allege any other breaches of the Settlement Agreement or Note. Thus, CVA admits Mr. Heaton made all payments on the note from its execution on November 25, 2007 through October 2009, a space of two years. Mr. Heaton in fact paid over $250,000 including interest. As a result, as CVA admits, the total amount due on the note fell from $1,069,934 when signed, plus interest, to only $827,612 today.

**F. The Complaint**

Mr. Heaton missed a single payment of $1,379.35 on October 1, 2009. On October 16 (the last day of grace period), CVA sued for nine causes of action as follows:

**Counts 1 and 2: Breach of note/breach of settlement agreement.** The first and second counts are for payment of the Note and breach of the settlement agreement. The alleged breach is, primarily, failure to pay the October 1, 2009 installment of $1379.35. Based on this single late payment, CVA has purported to accelerated the note and demands immediate payment of the entire unpaid balance of $827,612.

Mr. Heaton's defenses to counts 1 and 2 are factual in nature and not the subject of this demurrer.

**Count 3: "Fraud in the inducement"** CVA claims it was

fraudulently induced to enter into the Settlement Agreement. However, CVA does *not* allege that Mr. Heaton misrepresented any facts, such as the financial status of Atherton or amounts due. Instead, CVA alleges only (complaint ¶ 25):

> When Heaton made the representations and promises to Morgan **that he would pay plaintiff the agreed sums...** Heaton knew the representations and promises were false.

In other words, the only "fraud" alleged is "promissory fraud" or "false promise," i.e., that Mr. Heaton signed the note without present intention to perform. CVA alleges no facts whatsoever to support this claim. Indeed, the complaint belies this claims, as it admits Mr. Heaton faithfully paid the note for two years, total payments over $250,000, until Mr. Heaton's financial losses rendered him unable to pay further. CVA claims that it entered into the settlement agreement based on this alleged false promise.

**Count 4: "Rescission Based on Fraud in the inducement"** CVA asks to set aside the Settlement Agreement based on the "fraud in the inducement" alleged in Count 3. Again, the sole "fraud" is the alleged false promise, or promise to pay made without intention to perform. CVA does not allege any factual misrepresentations.

**Count 5: "Fraud"** The fraud alleged against Mr. Heaton in the fifth cause of action is the alleged "underlying" fraud relating to the operations of Atherton Ranch LLC. This, of course, is the same alleged fraud that is resolved and released in the Settlement Agreement and Mutual Release (Exhibit A).

**Counts 6, 7 and 8: "Breach of Fiduciary Duty", "Conversion"**

and **"Constructive Trust."** The torts alleged here are the underlying claims relating to the operation of Atherton Ranch. These claims were also released in the Settlement Agreement.

**Count 9: "Accounting"** This cause of action prays for an accounting of the affairs of Atherton Ranch LLC. Again, this is a claim that was resolved and released in the Settlement Agreement.

G. **CVA sought and obtained an ex parte writ of attachment against Mr. Heaton and his assets.**

On October 20, 2009, in this case, CVA sought and obtained an ex parte Right to Attach Order and Writs of Attachment against Mr. Heaton and his assets. See Exhibit 1, attached. Within 48 hours, CVA served the writs on Mr. Heaton's property and on Mr. Heaton personally. Exhibit 2 (notice of attachment). In addition to causing Mr. Heaton great distress, the writs constituted a lien on Mr. Heaton's property.

An attachment is not available on a tort claim. To obtain the writ, CVA relied entirely upon the Note and Settlement Agreement. See CVA's Ex Parte Application for Writ of Attachment (exhibit 3). In its papers, CVA stated that it had accelerated the note and demanded an attachment in the accelerated note amount of $827,612 plus interest, fees and costs, for a total of $902,226.22 Exhibit 1. The application made clear that attachment was sought on the *note*. Exh. 3, second page, part 8.

**ANALYSIS**

## I. CVA RELEASED AND WAIVED THE THIRD THROUGH NINTH CAUSES OF ACTION IN THE SETTLEMENT AGREEMENT.

In the Settlement Agreement, CVA expressly waived all claims, known or unknown, arising in the past, present or future, arising out of or related to Atherton Ranch. CVA also waived the operation of Civil Code § 1542 dealing with unknown claims. The only claims preserved were those created by the Settlement Agreement itself, i.e., payment of the Note. Any claims CVA might have had before, were merged into and replaced by the Settlement Agreement and Note.

CVA's fifth through ninth causes of action for underlying fraud, breach of fiduciary duty, conversion, constructive trust and accounting, all arose out of Atherton Ranch. These claims were all waived. CVA cannot bring these claims. To do so, is itself a breach of the Settlement Agreement.

CVA's third and fourth causes of action are for "false promise" fraud and "rescission" based on said fraud. Both claims "arise out of or are related to" Atherton Ranch LLC. Depending on one's point of view, these claims either arose when the Settlement Agreement was signed or afterwards, when the monthly payment was missed, but either way, these claims were waived. The Settlement waived present *and future* claims, known and unknown.

Nor can CVA rely on some "extrinsic" fraud. First, any such claim was released in the general release and waiver of unknown claims. Second, the integration clause states that the obligations of the Settlement Agreement itself replaces any "warranties or representations" made prior to *or accompanying* the Agreement. CVA contends that in connection with the agreement,

Heaton allegedly represented he would pay without intention to pay. Query whether this is even a valid claim (see below). But even if it were, this representation "accompanied" the agreement. Per the integration clause, the Settlement Agreement itself replaced all such representations. Again, thereafter CVA's only remedy was to sue to enforce the Note and Settlement Agreement.

As explained above, the release and waiver were complete when the Settlement Agreement was signed, and did not require or await full payment under the Note. Thus CVA's sole remedy at this time is to sue on the note, as it did in its first and second causes of action.

**II. THE CLAIM OF FALSE PROMISE OR PROMISSORY FRAUD IS NOT AND CANNOT BE SUFFICIENTLY PLED BECAUSE MR. HEATON PERFORMED AND PAID FOR TWO YEARS.**

Promissory or "false promise" fraud must be alleged with particularity. Generalized and conclusory allegations, for example the unsupported and undifferentiated allegation that defendant "made the promise without intending to perform" is insufficient. Robinson Helicopter Co. v. Dana Corp., 34 Cal. 4th 979, 994 (2004). The policy of "liberal construction of the pleadings" will not save a complaint that is defective in this respect. Id.

In addition, to allege false promise fraud, "something more than nonperformance is required to prove the defendant's intent not to perform his promise." Tenzer v. Superscope Inc., 39 Cal. 3d 18, 30 (1985). "If plaintiff adduces no further evidence of fraudulent intent than proof of nonperformance of an oral promise, he will never reach a jury." Id. In Tenzer, the Supreme Court disapproved prior cases that suggested that nonperformance, alone,

could establish false promise. Id. at 31. If that were true, every breach of contract would automatically become a fraud case by simply alleging intent not to perform.

CVA has alleged nothing more than Mr. Heaton did not perform. This is insufficient to plead promissory fraud.

Even this allegation is patently false based on the complaint itself, and thus cannot be cured by amendment. The complaint admits Mr. Heaton made payments for two years, until October 2009, and paid the note down from $1,069,934 plus interest to $827,612. So far from "not performing," Mr. Heaton performed and paid for two years. All Mr. Heaton did was miss a single payment of $1,379.35, two years after signing the note. Given that Mr. Heaton performed for two years, CVA cannot plead a lack of intention to perform when the agreement was signed.

Because the promissory fraud/rescission counts fail, to the extent CVA hopes to rescind the Settlement Agreement and escape the release based on these counts, this attempt also fails. Therefore, counts five through nine remain released and waived under the Settlement Agreement.

**III. THE THIRD THROUGH NINTH CAUSES OF ACTION ARE ALSO BARRED BY THE DOCTRINE OF ELECTION OF REMEDIES BECAUSE CVA SUED ON THE CONTRACT AND ALSO SOUGHT, OBTAINED AND SERVED A WRIT OF ATTACHMENT BASED ON THE CONTRACT.**

In this case, CVA sued for both breach and damages of the Settlement Agreement, and for rescission of the very same agreement based on fraud. The remaining counts for fraud in the underlying Atherton project, in turn, depended on said rescission, because otherwise all such claims were waived in the Settlement Agreement. Thus, CVA's claims are plainly inconsistent: The

first and second causes of action are for breach of the Settlement Agreement. The remaining causes of action are for rescission of the same agreement and tort claims made possible only by said rescission.

"A party induced to enter into a transaction by fraud, affirms the transaction when he brings an action for damages and because of the affirmance loses any right to disaffirm subsequently." Bancroft v. Woodward, 183 Cal. 99, 101-102 (1920). CVA has sued for payment under the contract (first and second causes of action), and may not now sue to rescind the same contract. If rescission (third and fourth counts) fail, the remaining counts also fail.

CVA may contend it is entitled to plead in the alternative. CVA lost that right, and elected its remedy, when it obtained the ex parte writ of attachment. A writ of attachment is only available on a direct *contractual* claim for a sum of money. CCP § 483.010; Bank of America v. Salinas Nissan, 207 Cal. App. 3d 260, 271 (1989). It is not available on a tort claim, such as for fraud, and is obviously not available if the plaintiff rescinds the contract.

In Steiner v. Rowley, 35 Cal. 2d 713 (1950), Steiner like CVA, pled causes of action for money had and received (a contractual claim) and for fraud and punitive damages related to the same transaction and sum of money. Steiner obtained a writ of attachment against Rowley. The court thereafter sustained a demurrer to the tort claims without leave to amend.

The Supreme Court affirmed. Having obtained the writ of attachment, which is only available on a contract claim, Steiner

could not thereafter sue in tort (35 Cal. 2d at 720):

> Concerning the effect of the writ of attachment obtained by the Steiners, the doctrine of election of remedies is based upon the principle of estoppel. "Whenever a party entitled to enforce two remedies either institutes an action upon one of such remedies or performs any act in pursuit of such remedy, whereby he has gained any advantage over the other party, . . . he will be held to have made an election of such remedy, and will not be entitled to pursue any other remedy for the enforcement of his right."
>
> . . .
>
> An action for tort in which exemplary damages are sought is inconsistent with one for money had and received. ( Civ. Code, § 3294.) The Steiners were therefore required to make a timely election of remedies. Pleading the two causes of action in the alternative did not constitute an election because inconsistent counts are permissible and an election cannot be forced by demurrer. **But the Steiners also obtained an attachment. This was a positive act of a plaintiff "in pursuit of . . . [the contractual remedy] . . . whereby he has gained . . . advantage over the other party. . . ."** ( *DeLaval Pac. Co.* v. *United C. & D. Co.*, 65 Cal.App. 584, 586 [224 P. 766].) **The Steiners were thereafter estopped to allege a cause of action in tort, and the demurrer as to the fourth count was properly sustained.**

[internal citations omitted]

The instant case is even stronger. CVA sues on the contract, and then sues in tort to rescind the same contract. Pleading in the alternative is permitted. But CVA's writ of attachment is only available on the contract claim. CVA cannot obtain a writ on the contract, to Mr. Heaton's great detriment, and then continue to sue to rescind that same contract (and also bring tort claims resulting from rescission).

EXHIBIT  E    14
Case: 10-40297   Doc# 837   Filed 03/05/10   Entered: 03/05/10 14:23:40   Page 17 of 20

CVA has elected its remedy. The tort claims (third through ninth causes of action) should be dismissed on this grounds as well.

**IV. AMENDMENT IS NOT POSSIBLE.**

The defects cannot be cured by amendment. The release and waiver will not go away. CVA already obtained and served the writ of attachment. The lien and detriment caused cannot be undone even if the lien were subsequently lifted.

**CONCLUSION**

This is now exclusively a case for breach of contract and failure to pay the note. The demurrer to the remaining causes of action should be sustained without leave to amend.

DATED: November 16, 2009

*/s/ Saied Kashani*
Saied Kashani
Attorney for Doyle Heaton

REQUEST TO TAKE JUDICIAL NOTICE

Demurring party Doyle Heaton requests this Court to take judicial notice of the following papers from this case:

1. Ex parte right to attach order, issued October 16, 2009.
2. Notice of Attachment and levy of attachment served by plaintiff CVA (with cover letter)
3. CVA's ex parte application for right to attach order.

DATED: November 16, 2009

*Saied Kashani*
—————————————————
Saied Kashani
Attorney for Doyle Heaton

EXHIBIT E

16

PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California.
I am over the age of 18 and not a party to the within action.

On **November 16, 2009**, I served the following documents:

**DEMURRERS TO COMPLAINT**

__X__  by placing copies thereof enclosed in sealed envelopes addressed as follows:

Steven A. Simontacchi
Phillips, Downs & Simmontacchi
55 Shaver Street, Suite 330
San Rafael, CA  94901

___  by telecopy to (415) 781-2635

__X__  By mail: I deposited the envelope, with postage thereon, into the United States mails at Los Angeles, California.

__x__  Executed on **Nov. 16, 2009** at Los Angeles, California.

__x__  I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Louis Valentine

EXHIBIT __E__       17