Steven A. Simontacchi [#138948]
PHILLIPS, DOWNS & SIMONTACCHI LLP
55 Shaver Street, Suite 330
San Rafael, California 94901
Telephone: (415) 453-9999
Facsimile: (415) 453-6999

Attorneys for Plaintiff
CV ANTHONY II, LLC,
a California limited liability company

**FILED**

DEC 1 1 2009

KIM TURNER, Court Executive Officer
MARIN COUNTY SUPERIOR COURT
By: S. Hendryx, Deputy

SUPERIOR COURT OF CALIFORNIA

COUNTY OF MARIN

| | |
|---|---|
| CV ANTHONY II, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>DOYLE HEATON, and DOES 1-50, inclusive,<br><br>Defendants. | Case No.: CIV 095267<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEMURRER**<br><br>Date: December 28, 2009<br>Dept: H<br>Time: 8:30 a.m.<br><br>HONORABLE JOHN A. SUTRO, JR. |

BY FAX

\\\
\\\
\\\
\\\
\\\
\\\
\\\
\\\
\\\

OPP DEM.DOC

EXHIBIT F
7 OF 15

POINTS AND AUTHORITIES IN OPPOSITION TO DEMURRER

# TABLE OF CONTENTS

Table of Authorities..................................................................................ii

I. PRELIMINARY STATEMENT.................................................................1

    (1) Pre-Conditions for Effectiveness of Release NOT Satisfied....................1

    (2) The Election of Remedies Doctrine Does Not Preclude Plaintiff From Pursuing Separate And Independent Tort Causes Of Action..........1

II. BRIEF STATEMENT OF CASE................................................................1

III. FACTUAL BACKGROUND.....................................................................2

    A. The Atherton Ranch LLC and Atherton Ranch Project........................2

    B. HEATON's Conversion and/or Embezzlement of Assets of the Atherton Ranch LLC..................................................................2

    C. The Settlement Agreement and Resulting Promissory Note..................3

IV PROCEDURAL BACKGROUND............................................................4

V. LEGAL ANALYSIS...................................................................................4

    A. The Release In The Settlement Agreement Never Became Effective Because Pre-Conditions To The Release Were Not Satisfied.................4

        1. Terms and Conditions of Note Incorporated into the Settlement Agreement.......................................................................4

        2. HEATON Failed to Satisfy Other Conditions in ¶2 of Settlement Agreement.......................................................................6

    B. The Election Of Remedies Doctrine Does Not Preclude Plaintiff From Pursuing Separate And Independent Tort Causes Of Action.................6

        1. Election of Remedies Doctrine in Attachment Context as Set Forth in *Steiner* is No Longer Applicable.........................7

        2. Even Assuming the Election of Remedies Doctrine Could Possibly Apply in the Attachment Context, it Certainly Does Not Apply in the Present Case Where the Contract and Tort Claims Are Distinct and Separate and Arose at Different Times.......................8

    C. The Fraud In The Inducement And Rescission Causes Of Action Do State Facts Sufficient To Constitute a Cause of Action.................................10

VI. CONCLUSION...........................................................................................11

# TABLE OF AUTHORITIES

**STATUTES**

Code of Civil Procedure §481.010 *et seq* ..................................................................6, 7

Code of Civil Procedure §537 *et seq* ..........................................................................7

Evidence Code §452..................................................................................................2

**CASES**

*Aragon-Haas v. Family Security Ins. Services, Inc.* (1991) 231 Cal.App.3d 232...............5

*Pat Rose Associates v. Coombe* (1990) 225 Cal.App.3d 9............................................9

*Randone v. Appellate Department* (1971) 5 Cal.3d 536..........................................7, 8

*Steiner v. Rowley* (1950) 35 Cal.2d 713..................................................6, 7, 8, 9, 11

*Waffer International Corporation v. Khosandi* (1999) 69 Cal.App.4th 1261.............7, 8, 9

EXHIBIT *F*
3 OF 15

OPP DEM.DOC ii
POINTS AND AUTHORITIES IN OPPOSITION TO DEMURRER

# I. PRELIMINARY STATEMENT

Defendant DOYLE HEATON's ("HEATON") Demurrer to plaintiff CV ANTHONY II, LLC's ("plaintiff") Complaint should be overruled for the following reasons.

### (1) Pre-Conditions for Effectiveness of Release NOT Satisfied

HEATON claims that the release language in the underlying Settlement Agreement bars plaintiff from bringing any cause of action against HEATON, other than for breach of the settlement agreement and the promissory note. HEATON acknowledges the release only takes effect on the satisfaction of certain conditions set forth in the Settlement Agreement, but erroneously claims that the mere execution of the original promissory note satisfies all of the pre-conditions. Specifically, HEATON quotes portions of the Settlement Agreement requiring that a promissory note be executed, but conveniently ignores and omits the settlement agreement provision that the **"terms and conditions"** of the promissory (e.g., payments) are incorporated by reference into the settlement agreement. HEATON indisputably has failed to comply with the payment provisions of the promissory note.[1]

### (2) The Election of Remedies Doctrine Does Not Preclude Plaintiff From Pursuing Separate And Independent Tort Causes Of Action

The case law relied upon by HEATON for the proposition that plaintiff is barred from pursuing tort claims due to obtaining a prejudgment writ of attachment on the promissory note is not only distinguishable but ignores more recent case law clearly allowing plaintiff to pursue separate and independent tort claims despite the prejudgment writ of attachment.

Accordingly, HEATON's demurrer should be overruled. Even assuming HEATON had proper grounds for his demurrer (which plaintiff vehemently denies), plaintiff would be allowed leave to amend the Complaint as a matter of law.

# II. BRIEF STATEMENT OF CASE

This case initially arose from HEATON's dishonesty, lack of candor in business dealings, breach of fiduciary duty, fraud and embezzlement in connection with a residential real estate

---

[1] Moreover, there are other pre-conditions to the release taking effect that have not been satisfied including, without limitation, winding up the affairs of the Atherton Ranch LLC by the end of 2008, filing a 2008 tax return, and providing a K-1.

OPP DEM.DOC 1

POINTS AND AUTHORITIES IN OPPOSITION TO DEMURRER

development project in Novato, California, involving plaintiff and HEATON. [See, Complaint, ¶5 - ¶8][2] Based upon the foregoing, a settlement agreement was entered (which resulted in a promissory note). [See, Complaint, ¶9 - ¶12]

Plaintiff subsequently discovered the full extent of HEATON's underlying fraud, embezzlement and conversion, and sued HEATON for, among other things, fraud in the inducement, rescission, intentional misrepresentation, breach of fiduciary duty, and conversion. [See, Complaint, Third through Seventh Causes of Action]

### III. FACTUAL BACKGROUND[3]

**A. The Atherton Ranch LLC and Atherton Ranch Project**

In or about January 2000, HEATON (through his company Mardel LLC) and Centennial Homes, Inc., a California corporation (hereafter "Centennial"), as predecessor in interest to plaintiff, formed Atherton Ranch, LLC, a California limited liability company (hereafter "Atherton Ranch LLC") to develop a residential subdivision project in Novato, Marin County, California (hereafter "Atherton Ranch Project"). [See, Complaint, ¶2 and ¶5]

HEATON, through his ownership and control of Mardel LLC, served as the managing member of Atherton Ranch LLC and was exclusively responsible for managing the financial affairs of Atherton Ranch LLC and the Atherton Ranch Project. [See, Complaint, ¶5]

**B. HEATON's Conversion and/or Embezzlement of Assets of the Atherton Ranch LLC**

In 2007, HEATON, in his fiduciary capacity as the manager of the Atherton Ranch Project, provided plaintiff with a purported final accounting for the Atherton Ranch Project costs and income due to the respective owners, HEATON and plaintiff. [See, Complaint, ¶6] Plaintiff disputed HEATON's accounting methodology; particularly an unauthorized and improper management fee claimed by HEATON, interest charges to the Atherton Ranch LLC for HEATON's personal debt service, unauthorized cash payments to third parties, and the sale of a home within the Atherton Ranch Project to HEATON's son at a substantial discount. *Id.*

---

[2] Plaintiff respectfully request that the court take judicial notice of the Complaint filed in this action pursuant to Evidence Code ¶452.
[3] All of the following facts are alleged in the Complaint and must be deemed true for purposes of the demurrer.

OPP DEM.DOC 2

In October 2007, plaintiff provided HEATON with its own accounting recap for the project costs and the distribution due to HEATON and plaintiff. [See, Complaint, ¶7] At that time, plaintiff contended that HEATON was taking, or had improperly taken, a total of approximately $2.2 million from the Atherton Ranch Project. *Id.* Plaintiff has since discovered that the total amount is significantly higher such that plaintiff has been damaged in the amount of approximately $2,347,912. *Id.*

Plaintiff, through its representative Daniel Morgan ("Morgan"), and HEATON met in November 2007 to review and discuss the disputed final accounting provided by HEATON. [See, Complaint, ¶8] Morgan provided HEATON with the accounting reconciliation prepared by plaintiff's accounting staff and made demand upon HEATON that he adjust the final accounting to allocate and return the approximate $2.2 million. *Id.* HEATON responded that he would make the adjustments. *Id.*

### C. The Settlement Agreement and Resulting Promissory Note

On or about November 25, 2007, a "Settlement Agreement and Mutual Release" (hereafter "Settlement Agreement") was entered into between HEATON, Mardel LLC, Delco Builder's & Developers, Inc., and plaintiff's predecessor in interest Centennial. [See, Complaint, ¶9] The Settlement Agreement is attached as Exhibit A to the Complaint.

On or about December 5, 2007, as part of the Settlement Agreement, a "Promissory Note Secured by Deed of Trust" ("Original Note") in the amount of $1,069,934 was executed by HEATON. [See, Complaint, ¶10] The Original Note is attached as Exhibit B to the Complaint.

The "terms and conditions" of the Original Note (e.g., payment) were "expressly incorporated by reference into the Settlement Agreement". [See, Complaint, ¶10] "The release of claims contained in ¶3.1 of the Settlement Agreement was expressly conditioned upon satisfaction **of the terms and conditions set forth in the Original Note**." (emphasis added) [See, Complaint, ¶10][4]

---

[4] A "Note Modification Agreement" was subsequently executed. [See, Complaint, ¶11] The Note Modification Agreement and Original Note will be referred to hereafter as the "Note".

**D. HEATON Defaults On Note and Breaches Settlement Agreement**

In October 2009, HEATON breached the terms of the Note by failing to make required payments. [See, Complaint, ¶15] HEATON also breached the terms of the Settlement Agreement by, amongst other things, failing to wind up the affairs of the Atherton Ranch LLC by the end of 2008, file a 2008 tax return, and provide a K-1 as required by ¶2.3 of the Settlement Agreement. [See, Complaint, ¶20]

## IV. PROCEDURAL BACKGROUND

In or about October of 2009, plaintiff discovered the full extent of HEATON's underlying fraud, misappropriation of funds, embezzlement and/or conversion, and on October 16, 2009, plaintiff filed its Complaint for Breach of Contract, Fraud in the Inducement, Rescission, Intentional Misrepresentation, Breach of Fiduciary Duty, Conversion, Constructive Trust, and Accounting.

On October 20, 2009, plaintiff obtained an Ex Parte Order Right to Attach Order and Order for Issuance of Writ of Attachment ("Attachment Order"). HEATON now brings the pending demurrer.

## V. LEGAL ANALYSIS

**A. The Release In The Settlement Agreement Never Became Effective Because Pre-Conditions To The Release Were Not Satisfied**

HEATON acknowledges that the release set forth in ¶3 of the Settlement Agreement **only** takes effect "upon the satisfaction of the conditions set forth in Paragraph 2" of the Settlement Agreement. (See, HEATON's Demurrer, page 6:21-23] HEATON then proceeds to erroneously claim that all conditions set forth in paragraph 2 of the Settlement Agreement have been satisfied. Specifically, HEATON claims that that *the mere execution* of the Note satisfied all of the pre-conditions set forth in paragraph 2. This argument fails for the following two *separate and distinct reasons*.

**1. Terms and Conditions of Note Incorporated into the Settlement Agreement**

HEATON's quotation of ¶2.4 (erroneously referenced as ¶2.1) of the Settlement Agreement conveniently ignores and omits the portion of that paragraph incorporating the *terms*

*and conditions* of the Note into the Settlement Agreement. Paragraph 2.4 of the Settlement Agreement provides as follows:

> "Heaton, on behalf of Mardel, Inc., Delco Builder's & Developers, Inc., Atherton Ranch, LLC and himself individually, shall execute a Promissory Note in favor of CHI, a copy of which is attached hereto as Exhibit 'B' ***and the terms and conditions of which are incorporated herein by reference.***" (emphasis added)

HEATON has indisputably failed to comply with the **terms and conditions** of the Note by failing to make required payments (which led to the Court's issuance of the October 20, 2009 Attachment Order). Accordingly, the release contained in ¶3 of the Settlement Agreement never took effect as the release was explicitly conditioned upon satisfaction of all conditions set forth in ¶2 of the Settlement Agreement (including making payments on the Note).

Any argument *of interpretation* by HEATON that the incorporation of the terms and conditions of the Note into the Settlement Agreement did not mean that payment on the Note was a condition for the release to take effect (i.e., HEATON only required to execute the Note) is not appropriate at the demurrer stage. If an agreement set forth in a Complaint (or attached as an exhibit) is ambiguous, plaintiff's interpretation **must** be accepted as correct for purposes of demurrer. [See, *Aragon-Haas v. Family Security Ins. Services, Inc.* (1991) 231 Cal.App.3d 232, 239]. As stated in *Aragon-Haas*:

> "a general demurrer to the complaint admits not only the contents of the instrument but also any pleaded meaning to which the instrument is reasonably susceptible. (citation omitted) While plaintiff's interpretation of the contract ultimately may prove invalid, it was improper to resolve the issue against her solely on her own pleading. 'In ruling on a demurrer, the likelihood that the pleader will be able to prove his allegations is not the question.' (citation omitted)

Plaintiff's Complaint alleges that "[t]he release of claims contained in ¶3.1 of the Settlement Agreement **was expressly conditioned upon <u>satisfaction of the terms and conditions set forth in the Original Note</u>**." (emphasis added) (See, Complaint, ¶10, page 3:26 – 4:2)

Accordingly, for purposes of demurrer, the Court must accept plaintiff's interpretation of the Settlement Agreement (e.g., payment on Note required for release to be effective) as true.

EXHIBIT F
___ OF ___
Case: 10-40297   Doc# 83-8   Filed: 03/05/10   Entered: 03/05/10 14:23:40   Page 8 of 15

Therefore, HEATON's demurrer based upon an alleged release in the Settlement Agreement must be overruled.

### 2. HEATON Failed to Satisfy Other Conditions in ¶2 of Settlement Agreement

As mentioned, HEATON acknowledges that the release is only effective upon satisfaction of the conditions set forth in ¶2 of the Settlement Agreement. [See, HEATON's Demurrer, page 6:21-23] Paragraph 2.2 of the Settlement Agreement states:

> "Mardel shall make the adjustments after January 1, 2008 which shall result in an increase in each partners' capital account of $1,194,934 so that each partners will receive a K-1 in the same amount in 2009. Mardel shall cause the partnership affairs to be wound up at the end of 2008 and file a final return."

HEATON has failed to comply with ¶2.2 of the Settlement Agreement. Specifically, plaintiff's Complaint alleges that HEATON "failed to wind up the affairs of the Atherton Ranch LLC by the end of 2008, file a 2008 tax return, and provide a K-1 as required by ¶2.2 of the Settlement Agreement." (See, Complaint, ¶20, page 5:24-26)[5] These allegations must be deemed true for purposes of demurrer. Accordingly, based upon the allegations in the Complaint, the release never took effect because HEATON failed to satisfy the explicitly required pre-condition in ¶2.2 of the Settlement Agreement.

For the foregoing two *separate and distinct reasons*, HEATON's argument that the Third through Ninth Causes of Action are barred by the release language in the Settlement Agreement must fail as a matter of law because the release was explicitly conditioned, and would not take effect, until *all* conditions in ¶2 of the Settlement Agreement were satisfied.

**B.    The Election Of Remedies Doctrine Does Not Preclude Plaintiff From Pursuing Separate And Independent Tort Causes Of Action**

HEATON cites the 1950 case of *Steiner v. Rowley* (1950) 35 Cal.2d 713 for the proposition that plaintiff is barred from pursuing its Third through Ninth Causes of Action based upon the election of remedies doctrine. The *Steiner* case was decided well before the 1974 attachment statutes (CCP §481.010 *et seq.*) and is not applicable.

---

[5] HEATON's claim that "CVA does not allege any other breaches of the Settlement Agreement" (see, Demurrer, page 7:8-10) is blatantly erroneous.

### 1. Election of Remedies Doctrine in Attachment Context as Set Forth in *Steiner* is No Longer Applicable

A brief historical background since the *Steiner* case illustrates its current inapplicability. Prior to the attachment statutes (CCP §481.010 *et. seq.*) being enacted in 1974, the California Supreme Court held that the attachment laws in effect at that time (CCP §537 *et. seq.*) were unconstitutional. [See, *Randone v. Appellate Department* (1971) 5 Cal.3d 536] In sum, former CCP 537 *et. seq.* provided for automatic issuance of a writ of attachment by a court clerk, without judicial involvement, merely upon the plaintiff's submittal of a declaration, in violation of due process rights. "It was in this legal climate [pre-*Randone* cases] that courts began applying the doctrine of election of remedies to insulate defendants from tort liability if attachment remedies were pursued." [See, *Waffer International Corporation v. Khosandi* (1999) 69 Cal.App.4th 1261, 1270]

Subsequent to the *Randone* decision, the 1974 attachment statutes were enacted to provide procedural safeguards to defendants, and the doctrine of election of remedies now has little or no application in the context of attachments. [See, *Waffer, supra*] "There has been a steady trend reducing the use of the judge-made election of remedies doctrine to penalize the use of the statutory remedy of attachment." [See, *Waffer, supra* at 1278] The *Waffer* case specifically addressed the election of remedies doctrine in the context of attachments. As stated in *Waffer*:

> "Even before this metamorphosis in attachment law, the more expansive applications of the election doctrine were falling into disrepute. After the metamorphosis, case law has continued the trend of narrowing the election of remedies defense **in favor of deciding tort claims on their merits**...Since the current attachment statutes carefully protect a defendant's rights and allow attachment only upon prior court order in limited circumstances, **it is doubtful that attachment today <u>can ever</u> be said to result in an inequity justifying an estoppel.** Instead, the election doctrine now appears simply outmoded in the attachment context due to the extensive revisions in the attachment statutes." (emphasis added)

In considering the underlying issue of whether the election doctrine "survives at all" in the attachment context, the *Waffer* court stated:

> "Although we cannot predict with complete accuracy unusual facts which might possibly arise, **we find that it is unlikely that much, if any, room remains for the application of the election doctrine in the attachment context.**" (emphasis added)

In fact, the *Waffer* court specifically addresses the *Steiner* case and questions whether the decision would be the same if that case were brought after the 1974 attachment statutes were enacted. Specifically, the Waffer court stated:

> "*Steiner* predates *Randone* and the comprehensive revision of the attachment statutes. **Whether it would be decided the same way today is questionable.**" (emphasis added) *Waffer, supra* at 1278, fn 17)

The *Waffer* court further states that "the doctrine of election of remedies is simply an application of equitable estoppel" and states that "[a]pplication of an equitable estoppel may have been justified during a time when unilateral seizure of a defendant's property could summarily be effected under pre-*Randone* law, but those days are gone." [*Waffer, supra* at 1280] The *Waffer* court goes further and states that:

> "Conceivably a court might justifiably find such an "inequity" if, for example, a plaintiff were to obtain and levy an attachment by filing knowingly false declarations… Even in such a hypothetical case, the Legislature has provided remedies (citation omitted), **and in addition has specifically preserved common law theories of recovery** (citation omitted), <u>which could offset a plaintiff's tort claim even in the absence of an election of remedies</u>." (emphasis added) [*Waffer, supra* at 1279, fn 20]

Accordingly, there is no ground for any equitable estoppel because HEATON can certainly seek any appropriate credit/offset for any payment and/or pre-judgment collection on the Note, against any tort recovery obtained by plaintiff.

In sum, the *Steiner* case is outdated and now inapplicable, and it is questionable whether the election of remedies doctrine could ever properly apply in the attachment context.

**2.  Even Assuming the Election of Remedies Doctrine Could Possibly Apply in the Attachment Context, it Certainly Does Not Apply in the Present Case Where the Contract and Tort Claims Are Distinct and Separate and Arose at Different Times**

To the extent the election of remedies doctrine has any applicability in the attachment context, the *Waffer* court reaffirmed a "sweeping limitation" when differing operative facts are

OPP DEM.DOC     8

POINTS AND AUTHORITIES IN OPPOSITION TO DEMURRER

EXHIBIT F
11 OF 15

Case: 10-40297  Doc# 83-8  Filed: 03/05/10  Entered: 03/05/10 14:23:40  Page 11 of 15

involved in the contract and tort claims. [See, *Waffer, supra* at 1278] As stated by the *Waffer* court:

> "This is a far-reaching limitation on the doctrine, since a claim of fraud (or any other tort) will almost **necessarily involve elements differing from a contract claim**....Nor is a tort claim forfeited by election of remedies if the facts material to the contract claim **arise at a different time** than those material to the tort claim (citation omitted), nor if the contract and tort claims **arise out of different rights and duties** (citation omitted) These restrictions largely eliminate the application of the doctrine in the attachment context, because-with the possible exception of circumstances like those presented in *Steiner v. Rowley*...a contractual obligation is different than a tort duty."

In *Steiner*, the plaintiff buyers were suing their real estate broker who had allegedly taken a secret profit of $2,000. The plaintiffs sued in four counts, *each of which sought disgorgement of the secret profit.* (First cause of action for breach of contract; second cause of action for money had and received; third cause of action for secret profit; and fourth cause of action for fraud). As stated in *Waffer*, "[t]hus each of the four counts pleaded identical facts; they differed only in the legal characterization attached to the facts" and it was **only** the claim for punitive damages that was found barred by the election of remedies doctrine. [See, *Waffer, supra* at 1276, fn 15)

In the present case, plaintiff's contract claims and tort claims are based upon a completely separate and distinct set of operative facts, and in the words of the *Waffer* court, "*arise at a different time*" and "*arise out of different rights and duties*". [See also, *Pat Rose Associates v. Coombe* (1990) 225 Cal.App.3d 9, 18 (election of remedies does not preclude a plaintiff from pursuing two causes of action, as breach of contract and fraud, where each action arose out of different obligations and different operative facts)]

Specifically, plaintiff's tort claims arise out of, among other things, misappropriation of funds involving the Atherton Ranch Project and HEATON's fraud and breach of fiduciary duty in connection therewith, and alleged fraud in the inducement to enter into the Settlement Agreement, which all occurred late **2007**. [See, Complaint, ¶6 – ¶7] The breach of contract claim is an entirely different claim based upon HEATON's failure to make payments pursuant to the terms of the Note (which stands on its own as a separate and distinct legal obligation). The breach of contract occurred in October **2009**. [See, Complaint, ¶15 and ¶20]

For all of the foregoing reasons, HEATON's claim that plaintiff is barred from bringing tort claims based upon the election of remedies doctrine is not supported by law (particularly in the context of a demurrer).

### C. The Fraud In The Inducement And Rescission Causes Of Action Do State Facts Sufficient To Constitute a Cause of Action

HEATON argues that the Third Cause of Action for Fraud in the Inducement (and therefore the Fourth Cause of Action for Rescission) must fail because: **(1)** a generalized and conclusory allegation that HEATON made a promise without intending to perform is insufficient (see, Demurrer, page 11:18-25; and **(2)** "something more than nonperformance is required to prove the defendant's intent not to perform his promise" and "if plaintiff adduces no further evidence of fraudulent intent than proof of nonperformance..., he will never reach a jury" (see, Demurrer, page 11:26 – 12:6). HEATON then boldly concludes that plaintiff "has alleged nothing more than Mr. Heaton did not perform" (see, Demurrer, page 12:9-10).

HEATON has blatantly ignored ¶25 of the Complaint which alleges as follows:

> "When HEATON made the representations and promises to Morgan that he would pay plaintiff the agreed sums, as alleged hereinabove, and as reflected in the Settlement Agreement, the Original Note and the Note Modification Agreement (sometimes refereed to collectively as the "Notes"), **HEATON knew that those representations and promises were false. The true facts were that HEATON's undisclosed agenda was to dissuade plaintiff from suing him to collect the then calculated $2.2 million debt (such amount is now calculated at $2,347,912), to position himself to pay plaintiff as little as possible while forestalling a formal suit by plaintiff, to later default on the Notes once he had reorganized his broader financial affairs, and then, if necessary, seek to discharge the obligations owed to plaintiff through bankruptcy.** (emphasis added)

These allegations must be deemed true for purposes of demurrer and therefore HEATON's Demurrer to the Third Cause of Action for Fraud in the Inducement and the Fourth Cause of Action for Rescission (based on failure to state facts sufficient to state a cause of action) must be overruled.

Even if HEATON were successful on any of his demurrer grounds (which plaintiff vehemently denies), plaintiff would have the right to amend the Complaint as a matter of law.

## VI. CONCLUSION

The release language in the Settlement Agreement does not bar plaintiff's claims because the release was expressly conditioned on satisfaction of certain conditions including, without limitation, payment of the Note, winding up the affairs of the Atherton Ranch LLC by the end of 2008, filing a 2008 tax return, and providing a K-1. Plaintiff's Complaint alleges that HEATON failed to accomplish any of the foregoing conditions (which must be deemed true for purposes of demurrer), and therefore the release never took effect.

The election of remedies doctrine in the attachment context is essentially nonexistent based on the current state of the law. The *Steiner* case is no longer applicable, and even if *Steiner* was still good case law, it is distinguishable. Plaintiff's contract and tort claims are based upon different operative facts and are completely separate and distinct obligations which arose at different times (approximately two years apart).

HEATON's claim that it is inequitable to allow plaintiff to proceed on tort claims after obtaining an attachment is simply not supported by the current state of the law. And, in fact, the equities favor plaintiff. Plaintiff should not be prevented from full recovery from HEATON especially when the underlying Settlement Agreement arose out of an admitted misappropriation of funds.

For the foregoing reasons, plaintiff respectfully requests that the court overrule HEATON's demurrer. If the Court were to grant any portion of the demurrer, it must be with leave for plaintiff to amend the Complaint.

DATED: December 11, 2009     PHILLIPS, DOWNS & SIMONTACCHI LLP

By: _____
Steven A. Simontacchi
Attorneys for Plaintiff CV ANTHONY II, LLC,
a California limited liability company

## PROOF OF SERVICE

I, the undersigned, under penalty of perjury, declare that I am a citizen of the United States, over the age of 18 years and not a party to the within entitled cause of action. My business address is 55 Shaver Street, Suite 330, San Rafael, CA 94901, and I am employed in Marin County, California. On the date last written herein, I served a true copy of:

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEMURRER**

on:

Saied Kashani
800 West First Street, Suite 400
Los Angeles, CA 90012

____ **By facsimile machine (FAX)** by personally transmitting a true copy thereof via an electronic facsimile machine between the hours of 9:00 a.m. and 5:00 p.m.

____ **By First Class Mail** by depositing sealed envelopes in the United States mail at San Rafael, California, with postage fully prepaid.

____ **By Overnight U.S. Mail** by depositing in a sealed envelope and delivering to the U.S. Post Office at San Rafael, California with all charges fully prepaid.

✓ **By Overnight Courier Service** by placing the document(s) listed above in a sealed envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a Federal Express or similar next-day courier service agent (or drop box by the deadline for next-day delivery) for delivery as set forth above or on the attached Service List.

____ **By Messenger** by depositing in a sealed envelope and delivering to the courier with all charges fully prepaid.

____ **By Personal Service** by personally delivering a true copy thereof to the addressee(s) listed herein, at the location(s) listed herein.

____ **(Federal)** I declare I am employed in the office of a member of the bar of this Court at whose direction the service was made.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on December 11, 2009, at San Rafael, California.

*Barbara Campbell*
Barbara Campbell

EXHIBIT F