# EXHIBIT A

# POST-PETITION SETTLEMENT AGREEMENT

1.  **Parties**. This Post-Petition Settlement Agreement (this "Agreement") is entered into as of March 19, 2010, by and among Doyle D. Heaton ("Heaton") and Mary K. Heaton, individual chapter 11 debtors (together, the "Debtors"), and Wells Fargo Bank, N.A. ("Wells Fargo"). The Debtors and Wells Fargo are sometimes collectively referred to herein as the "Parties" or, separately, as a "Party."

2.  **Recitals**. This Agreement is made with respect to the following facts:

    2.1  The Debtors filed a voluntary joint petition under Chapter 11 of the Bankruptcy Code on January 11, 2010 (the "Petition Date"), initiating Bankruptcy Case Number 10-40297 (the "Bankruptcy Case"), in the United States Bankruptcy Court for the Northern District of California, Oakland Division (the "Bankruptcy Court").

    2.2  Prior to the Petition Date, Wells Fargo:

    2.2.1  extended loans, which were guaranteed by Heaton, to various entities in which Heaton has an ownership interest (these "Guarantied Loans" are identified in attached Schedule 1); and

    2.2.2  extended financing directly to Heaton (these "Heaton Loans" are identified in attached Schedule 2), and with respect to one of the Heaton Loans (Loan No. 475441), Heaton and an affiliated co-borrower granted deeds of trust in certain rental properties (as described in Schedule 2 hereto, the "Heaton Collateral"). For all purposes herein, the Heaton Collateral also includes Heaton's interests in Mardel, LCC ("Mardel"), in which Wells Fargo perfected its security interest by filing a UCC-1 financing statement on March 26, 2008.

    2.3  The Guarantied Loans and the Heaton Loans are currently in default and are unpaid.

    2.4  Pursuant to a prepetition "Settlement Agreement" dated April 1, 2009 among Wells Fargo, on the one hand, and Heaton, individually and as trustee of the Heaton Family Revocable Trust dated February 6, 1986 (the "Trust"), and certain of Heaton's affiliates, on the other hand, the parties agreed, among other things, to restructure certain indebtedness under the Guarantied Loans and the Heaton Loans, and to an orderly liquidation of, and/or foreclosure on, collateral securing certain of these loans.

    2.5  In furtherance of the prepetition Settlement Agreement, Heaton:

    2.5.1  individually, and as trustee of the Trust, entered into a "Master Repayment Guaranty" dated April 1, 2009 in favor of Wells Fargo, which amended, restated and replaced the then existing guaranties of the Guarantied Loans, and which Master Repayment Guaranty was thereafter amended on August 10, 2009 (as amended, the "Repayment Guaranty"), and which among other things, required that Heaton make various payments to Wells Fargo, including a payment in the amount of $540,315 that was actually made by Heaton on December

30, 2009 (the "Pre-Petition Payment") in partial satisfaction of Heaton's guaranty obligations to Wells Fargo;

   2.5.2 entered into a "Pledge Agreement" dated April 1, 2009, pursuant to which, among other things, Heaton granted Wells Fargo a security interest in and to 99% of Heaton's economic interest in Oak Brook Partners II, LLC ("Oak Brook"), which Wells Fargo perfected by filing a UCC-1 financing statement on November 19, 2009;

   2.5.3 entered into an Assignment and Transfer of Rights to Proceeds agreement dated November 17, 2009 (the "Assignment Agreement"), whereby Heaton, among other things, assigned all of his right, title and interest in and to any proceeds (the "Oak Brook Proceeds") due or to become due to Heaton on account of his ownership interest in Oak Brook; and

   2.5.4 caused Mardel, an entity wholly-owned by Heaton, to enter into a Transfer and Assignment of Promissory Note dated June 30, 2009 (the "Transfer Agreement"), whereby Mardel assigned all of its right, title and interest in and to a loan in the principal amount of $825,000 owed to Mardel by Clover DHDA, LLC (the "Clover DHDA Loan").

 2.6 In addition to the Guarantied Loans and the Heaton Loans, Wells Fargo:

   2.6.1 made two loans to an entity in which Heaton has an ownership interest that were guaranteed by Heaton pursuant to guaranties that are separate and distinct from the Repayment Guaranty. These two loans were made after entry into the pre-petition Settlement Agreement (the "Post-Settlement Loans") and are, together with Heaton's guaranties thereof (the "Post-Settlement Guaranties"), identified in attached Schedule 3; and

   2.6.2 made a loan to Oak Brook (the "Oak Brook Loan"), which is secured by a deed of trust on a storage facility and is guaranteed by Heaton pursuant to a guaranty that is separate and distinct from the Repayment Guaranty (the "Oak Brook Guaranty"). The Oak Brook Loan is identified in attached Schedule 4.

 2.7 Wells Fargo understands from Heaton that the owners of Oak Brook are in the process of determining the value of their respective interests in Oak Brook through arbitration proceedings, with a disposition of Oak Brook's assets to follow.

 2.8 Subject to the terms and conditions contained herein, Wells Fargo has agreed to liquidate and settle its claims with respect to Heaton's and the Trust's obligations under the Repayment Guaranty, the Post-Settlement Guaranties, the guaranties identified in the attached Schedules 1 - 4, and the Oak Brook Guaranty (together, the "Guaranties"), the prepetition Settlement Agreement, and the repayment obligations under the Heaton Loans. Notwithstanding anything to the contrary contained in this Agreement, nothing in this Agreement is intended to nor shall affect Wells Fargo's, Wachovia Bank, N.A.'s ("Wachovia's"), and/or each of the other Wells Released Parties' (as defined below) other rights and remedies, all of which are reserved as set forth in section 6 below.

 NOW, THEREFORE, for mutual consideration, which is hereby acknowledged, the Parties agree as follows:

3. Satisfaction of Certain Obligations.

3.1 Upon the occurrence of the Effective Date (as defined below), any and all obligations of Heaton and the Trust under the Guaranties and the prepetition Settlement Agreement, and Heaton's repayment obligations under the Heaton Loans, shall be satisfied and released.

3.2 The "Effective Date" of this Agreement shall be the first business day after the fourteenth day following entry of an order of the Bankruptcy Court approving this Agreement provided that, unless waived by each Party in writing, the operation or effect of such order has not been stayed, reversed or amended, and the time to appeal or seek review or rehearing has expired, and no appeal or petition for review or rehearing was filed, or if filed, remains pending, and provided further that:

3.2.1 Heaton shall be determined to have irrevocably paid Wells Fargo the Pre-Petition Payment, which payment Wells Fargo acknowledges having received in full;

3.2.2 The Oak Brook Proceeds shall be determined to have been irrevocably assigned by Heaton to Wells Fargo, consistent with the Assignment Agreement, and Heaton shall be required to irrevocably pay Wells Fargo the entirety of any Oak Brook Proceeds due or to become due to Heaton, which pursuant to section 9 below, the Parties intend will be made directly to Wells Fargo as assignee after notice to the appropriate obligor party; and

3.2.3 The Clover DHDA Loan shall be determined to have been irrevocably assigned by Mardel to Wells Fargo, consistent with the terms of the Transfer Agreement.

3.2.4 Included as part of the order approving this Agreement, the Debtors shall have obtained an affirmative finding from the Bankruptcy Court as to each of the determinations described in subsections 3.2.1 through 3.2.3 above.

4. Release. Upon the Effective Date and subject to the terms of this Agreement, the Debtors, their bankruptcy estate, and the Trust, on behalf of themselves and their respective successors and assigns, hereby forever release Wells Fargo and Wachovia, and their predecessors, successors, parents, subsidiaries, and affiliates, and their respective assigns, officers, directors, employees, agents, shareholders, attorneys and any person acting on their behalf, and each of their respective successors and assigns (together, the "Wells Released Parties"), from any and all claims, demands, causes of action, debts, controversies, and liabilities of any kind whatsoever both known and unknown, matured or unmatured, liquidated and unliquidated, both in law and equity, whether before a local, state, or federal court, or state or federal administrative agency or commission, or any mediation or arbitration panel, which the Debtors, their bankruptcy estate or the Trust have or may have had at any time on or prior to the date of this Agreement, including but not limited to those arising out of or in any way relating to (i) the Bankruptcy Case, (ii) the Guaranteed Loans, (iii) the Heaton Loans, (iv) the Heaton Collateral, (v) the Oak Brook Loan, (vi) the Pledge Agreement, (vii) the Transfer Agreement, (viii) the Assignment Agreement, (ix) the Pre-Petition Payment, (x) the liquidation of Oak

Brook, (xi) the Post-Settlement Loans, (xii) the Guaranties, and/or (xiii) the Bankruptcy Code, including but not limited to sections 547, 548, 549 and 550 therein.

5. This Agreement is intended to effect a complete release of claims and potential claims that the Debtors, their bankruptcy estate and/or the Trust may have against the Wells Released Parties. Each of the Debtors, their bankruptcy estate and the Trust accepts the risk that he, she or it is releasing claims that may exist as of the date of this Agreement and of which each is currently unaware. With respect to the matters released and waived in section 4 above, the Debtors, their bankruptcy estate and the Trust expressly waive and relinquish the benefits of California Civil Code section 1542, and each of the Debtors, their bankruptcy estate and the Trust acknowledges that said section 1542 provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

6. Reservation of Rights. Except for the purpose of resolving the Guaranties, the repayment rights against Heaton arising under the Heaton Loans, and Heaton's obligations under the prepetition Settlement Agreement, nothing in this Agreement shall affect any other right of Wells Fargo or any of the other Wells Released Parties, including but not limited to (A) any right of the Wells Released Parties to assert any and all other claims any of them may have against the Debtors and/or the Trust, including but not limited to claims that arise from obligations arising under deposit accounts, credit card agreements, mortgage loans, investment accounts, automobile financings, or any other claim or obligation not specifically released herein, which claims if asserted shall be made via timely filed proofs of claim, (B) Wells Fargo's rights and remedies as a secured party in and to the Heaton Collateral, including but not limited to foreclosing on that collateral, which rights shall be non-recourse as to the Debtors or the Trust, (C) excluding the Debtors and the Trust, Wells Fargo's rights against the borrowers and any collateral under any of the loans identified in the attached Schedules 1, 3 and 4, and against the co-borrower and collateral identified in attached Schedule 2, and against any co-guarantor of those loans, (D) Wells Fargo's rights as a secured party and as an assignee of and to the Oak Brook Proceeds, and Wells Fargo's rights as an assignee to the Clover DHDA Loan, other than clarifying that the Trust, the Debtors and their estate, have herein released any right to avoid any transfer to Wells Fargo related to the Oak Brook Proceeds and the Clover DHDA Loan, or (E) any other right or remedy not expressly resolved under section 3 above, it being understood and agreed that all such rights and remedies of any of the Wells Released Parties are expressly reserved.

7. Remedies; Debtor Cooperation.

7.1 Notwithstanding anything to the contrary herein, in the event that (i) the Debtors or the Trust challenge, impede or delay (a) any remedies that Wells Fargo may pursue as to the Heaton Collateral, (b) any remedies that Wells Fargo may have against any non-Debtor entities in which Heaton has a controlling interest, (c) any foreclosure by Wells Fargo contemplated by the prepetition Settlement Agreement, or (d) any recovery by Wells Fargo of the Oak Brook Proceeds or the Clover DHDA Loan; or (ii) the Debtors or the Trust otherwise

fail to comply with any term of this Settlement Agreement, then Wells Fargo shall have the right to provide written notice to the Debtors, and if after three business days of such notice the failure to perform complained of by Wells Fargo is not satisfactorily remedied, then in addition to any other remedies it may have, the Debtors agree that Wells Fargo shall be entitled to move for *ex parte* injunctive and/or other appropriate relief (on twenty-four hours' notice to the Debtors), and that all reasonable attorneys' fees and other costs and fees incurred by Wells Fargo in connection with the enforcement of this Agreement, or in otherwise addressing the items described in items (i) and (ii) above (including but not limited to moving for stay relief in any bankruptcy case), and any damages awarded by the Bankruptcy Court or other reviewing court to Wells Fargo in connection with same, shall survive the Bankruptcy Case as a personal obligation of the Debtors.

7.2 The Debtors shall reasonably cooperate with Wells Fargo in carrying out the terms of this Agreement, in connection with Wells Fargo exercising its rights and remedies against its collateral and against any non-Debtor entities affiliated with Heaton, and in enforcing any of the rights assigned by Heaton or by any non-Debtor entity affiliated with Heaton to Wells Fargo. Heaton shall devote reasonable time and energy, as may be requested by Wells Fargo, to maintain and maximize the value of the Heaton Collateral and any assets owned by a non-Debtor affiliate of Heaton in which Wells Fargo asserts an interest, provided that Heaton shall not be obligated to incur and pay any expenses associated with such effort.

7.3 Provided that the Debtors are not required to advance any of their own funds in satisfaction of the following obligations, and subject to the rights of any lenders senior to Wells Fargo on the Properties referenced below, the Debtors covenant and agree that pending disposition of the assets in which Wells Fargo asserts an interest, whether by foreclosure or otherwise, the Debtors shall:

7.3.1 maintain each "Property" that secures the loans identified in the attached Schedules 1 through 3 in substantially the condition as of the date of this Agreement;

7.3.2 not take any action that may have an adverse effect upon any Property;

7.3.3 cause the borrowers under the applicable loan numbers to take all commercially reasonable efforts to complete, market and sell (pursuant to the applicable loan documents) all houses currently under construction under Loan Nos. 103701, 103608, 104261, 101932 and 103070;

7.3.4 cause the applicable borrowers to pay all amounts owing to the contractors or other approved third parties with respect to the construction contemplated by subsection 7.3.3. above or other matters pertaining to each Property;

7.3.5 cause each borrower identified in attached Schedules 1 and 3 to receive in trust and promptly remit to Wells Fargo all refunds received by such borrower in respect of its ownership or operation of the Property, including without limitation all refunds of any deposits and any reimbursement payments from third parties; and

7.3.6 ensure that the borrowers identified in attached Schedules 1 through 3 do not enter into any contracts or other agreements, or apply for or amend any permits, relating to any Property without first obtaining the express written consent of Wells Fargo.

8. Support for Chapter 11 Plan. From and after execution of this Agreement by the Parties, Wells Fargo shall support a chapter 11 plan proposed by the Debtors in the Bankruptcy Case that incorporates and is consistent with this Agreement, including submitting a ballot or ballots in support of the plan; provided, however, that such support shall not require Wells Fargo to expend any monies beyond what is reasonable and customary for a creditor to vote on a chapter 11 plan, or to prepare or file any motions or other pleadings, and provided further that such support shall not be required to the extent doing so would require that Wells Fargo take a position that is contrary to the interests of any of the Wells Released Parties in the Bankruptcy Case.

9. Notification of Assignment. The Debtors consent to Wells Fargo providing notice to the members of Oak Brook or to any other appropriate obligor party of the assignment of the Oak Brook Proceeds to Wells Fargo and that payment of the Oak Brook Proceeds is to be made to Wells Fargo rather than to Heaton. The Debtors agree to cooperate in providing that notice.

10. Means of Implementation. This Agreement shall be implemented as follows:

10.1 The Debtors shall file a motion with the Bankruptcy Court seeking approval of this Agreement by no later than March 30, 2010, and shall give notice of such motion as required by applicable law and rules.

10.2 Upon the Effective Date, Wells Fargo shall have, without further court order other than the order approving this Agreement, relief from the automatic stay of Bankruptcy Code section 362(a) for all purposes with respect to the Heaton Collateral, and without need for filing a proof of claim, an allowed claim with respect to the Oak Brook Proceeds as described in subsection 3.2.2 above.

11. Proof of Claim. Notwithstanding anything to the contrary in this Agreement, Wells Fargo may file a proof of claim on account of any claim it may have with respect to the matters settled by it in this Agreement, which proof of claim will be deemed withdrawn upon the Effective Date. Nothing in this section 11 shall be deemed to affect the reserved rights of the Wells Released Parties under section 6 above.

12. No Assignment. Other than the pledge, assignment and agreed transfer to Wells Fargo, Heaton covenants not to assign, encumber, pledge or transfer his interest in the Oak Brook Proceeds.

13. Choice of Law. This Agreement shall be governed by the laws of the State of California and the United States Bankruptcy Code.

14. Advice of Counsel. Each Party acknowledges and agrees that such party has given careful thought to this Agreement, has reviewed or has had the opportunity to review this Agreement independently with legal counsel of his, her or its choice, and/or has the requisite experience and sophistication to understand, interpret, and agree to the particular language of the

provisions in this Agreement. In the event of an ambiguity in, or controversy or claim arising out of, or relating to, the interpretation, application, or enforcement of, this Agreement, the Parties agree that no one will resolve any ambiguity in, or controversy or claim arising out of, or relating to, interpretation, application, or enforcement of, this Agreement by any rule providing for interpretation against the Party who causes the ambiguity to exist or against the draftsman.

15. <u>Waiver, Modification and Amendment</u>. The Parties may not waive any provision of this Agreement except by a written agreement that each of the Parties has signed. A waiver of any provision of this Agreement will not constitute a waiver of any other provision. The Parties may modify or amend this Agreement only by a written agreement that each of the Parties has signed.

16. <u>Titles and Captions</u>. The Parties have inserted the section titles in this Agreement only as a matter of convenience and for reference, and such titles in no way define, limit, extend, or describe the scope of this Agreement or the intent of the Parties in including any particular provision in this Agreement.

17. <u>No Third-Party Beneficiaries</u>. This Agreement does not constitute a contract for the benefit of any third parties, any prior creditors or claimants of the Parties, or any nonparty, except the other parties released in the release contained in <u>section 4</u> of this Agreement.

18. <u>Continuing Effect</u>. This Agreement and the order approving its terms shall continue in full force and effect regardless of the conversion of the Bankruptcy Case to a case under chapter 7, and the Agreement may not be modified by any plan of reorganization or liquidation, or otherwise, without the written consent of Wells Fargo.

19. <u>Integration</u>. This Agreement contains the entire agreement of the Parties with respect to the matters covered by this Agreement and no promise or representation made by any Party or by an officer, attorney, or agent of any party that is not expressly contained in this Agreement shall be binding or valid. Additionally, any modification of any provision of this Agreement, to be effective, must be in writing and signed by the Party or Parties to be charged.

20. <u>Execution of Additional Documents</u>. The Parties agree to execute and deliver any and all additional papers, documents, instruments, and other assurances, and shall do any and all acts and things reasonably necessary in connection with the performance of their obligations hereunder and to carry out the intent of the Parties.

21. <u>Execution of this Agreement</u>. The Parties may execute this Agreement in one or more counterparts, each of which constitutes an original, and all of which constitute one and the same Agreement. A facsimile, .pdf or copy of this Agreement executed by the Parties, whether complete or in counterparts, will constitute sufficient evidence of the executed original of this Agreement for all purposes.

22. <u>Attorneys' Fees</u>. In the event of any litigation arising out of a breach of this Agreement, the prevailing Party shall be entitled to recover his, her or its reasonable attorneys' fees, expenses, and costs.

DOCS_SF:69987.10

7

23. <u>Notice</u>. Any notice provided under this Agreement shall be delivered via e-mail or overnight delivery service (such as Federal Express or UPS) at the following addresses, or such other address as each Party may hereafter designate for itself in writing to the other Party, and all such notices shall be deemed to have been given and received upon the earlier of (i) the day of e-mail transmission if such day is a business day and transmission is made prior to 5:00 p.m. Pacific Time, or otherwise, on the next immediate business day, and (ii) one business day after deposit with an overnight delivery service.

        Notices to the Debtors:

        Doyle D. Heaton
        3480 Buskirk Avenue, Suite 260
        Pleasant Hill, CA 94523
        E-mail: doyle@delcobuilders.com

        With a copy to:

        Maxim Litvak, Esq.
        Pachulski Stang Ziehl & Jones LLP
        150 California Street, 15th Floor
        San Francisco, CA 94111-4500
        E-mail: mlitvak@pszjlaw.com

        Notices to Wells Fargo:

        Ryan W. Starck
        Wells Fargo Bank
        Real Estate Management Asset Group
        550 California Street, 4th Floor
        San Francisco, CA 94104
        E-mail: starckw@wellsfargo.com

        With a copy to:

        Robert Trodella, Esq.
        Jones Day
        555 California Street, 26th Floor
        San Francisco, CA 94104
        E-mail: rtrodella@jonesday.com

24. <u>Continuing Jurisdiction of Bankruptcy Court</u>. This Agreement is subject to and contingent upon the approval of the Bankruptcy Court. The Bankruptcy Court shall have exclusive jurisdiction to determine as a core proceeding any dispute or controversy with respect to the interpretation or enforcement of this Agreement.

25. <u>Binding on Successors and Assigns</u>. This Agreement shall be binding upon and inure to the benefit of the respective successors, predecessors, heirs, assigns, officers, directors,

shareholders, employees, agents, and attorneys of the Parties to the extent provided by law, including without limitation, any subsequently appointed trustee.

26. <u>Time of the Essence</u>. Time is of the essence. In the event that the Bankruptcy Court does not approve this Agreement on or before May 31, 2010 (or such later date as the Parties shall agree in writing), this Agreement shall be null and void and Wells Fargo shall be entitled to assert the entirety of all claims it has against the Debtors and the Trust.

IN WITNESS WHEREOF, the Parties hereto have duly executed this Agreement as of the date first written above.

DEBTORS

By: _____
Doyle D. Heaton, individually, and in his capacity as
a chapter 11 debtor and as trustee of the Heaton Revocable
Trust dated February 6, 1986

By: _____
Mary K. Heaton, individually, and in her capacity as
a chapter 11 debtor and as trustee of the Heaton Revocable
Trust dated February 6, 1986

WELLS FARGO BANK, N.A.

By: _____/s/_____
Name: Ryan W. Starck
Title: Vice President

SF1-632863v2

DOCS_SF:69987.10                                  9

Case: 10-40297    Doc# 100-1    Filed: 03/24/10    Entered: 03/24/10 14:51:42    Page 10 of 15

shareholders, employees, agents, and attorneys of the Parties to the extent provided by law, including without limitation, any subsequently appointed trustee.

26.     <u>Time of the Essence</u>.  Time is of the essence. In the event that the Bankruptcy Court does not approve this Agreement on or before May 31, 2010 (or such later date as the Parties shall agree in writing), this Agreement shall be null and void and Wells Fargo shall be entitled to assert the entirety of all claims it has against the Debtors and the Trust.

IN WITNESS WHEREOF, the Parties hereto have duly executed this Agreement as of the date first written above.

DEBTORS

By: _____
Doyle D. Heaton, individually, and in his capacity as
a chapter 11 debtor and as trustee of the Heaton Revocable
Trust dated February 6, 1986

By: _____
Mary K. Heaton, individually, and in her capacity as
a chapter 11 debtor and as trustee of the Heaton Revocable
Trust dated February 6, 1986

WELLS FARGO BANK, N.A.

By: _____
Name:
Title:

SFI-632863v2

DOCS_SF:69987.10                                          9

Case: 10-40297    Doc# 100-1    Filed: 03/24/10    Entered: 03/24/10 14:51:42    Page 11 of 15

# SCHEDULE 1

## Guarantied Loans

| | Loan # | Guaranties | Borrower |
|---|---|---|---|
| 1. | 102375 | Full Repayment Guaranty<br>Hazardous Materials Indemnity Agreement<br>Cost and Completion Guaranty | Mardel, LLC |
| 2. | 103070 | Full Repayment Guaranty<br>Hazardous Materials Indemnity Agreement<br>Cost and Completion Guaranty | Mardel, LLC |
| 3. | 103659 | Full Repayment Guaranty<br>Hazardous Materials Indemnity Agreement<br>Cost and Completion Guaranty | Mardel, LLC |
| 4. | 104261 | Full Repayment Guaranty<br>Hazardous Materials Indemnity Agreement<br>Cost and Completion Guaranty | Mardel, LLC |
| 5. | 2957TOH | Limited Repayment Guaranty | Mardel, LLC |
| 6. | 1000202 | Limited Repayment Guaranty | Mardel, LLC |
| 7. | 101492 | Full Repayment Guaranty<br>Hazardous Materials Indemnity Agreement<br>Cost and Completion Guaranty | Southgate Partners, LLC |
| 8. | 101932 | Full Repayment Guaranty<br>Hazardous Materials Indemnity Agreement<br>Cost and Completion Guaranty | Southgate Partners, LLC |
| 9. | 103091 | Full Repayment Guaranty<br>Hazardous Materials Indemnity Agreement<br>Cost and Completion Guaranty | Sonoma-Napa Partners, LLC |
| 10. | 103701 | Full Repayment Guaranty<br>Hazardous Materials Indemnity Agreement<br>Cost and Completion Guaranty | Sonoma-Napa Partners, LLC |
| 11. | 103015 | Full Repayment Guaranty<br>Hazardous Materials Indemnity Agreement<br>Cost and Completion Guaranty | Sonoma-Napa Partners, LLC |
| 12. | 103608 | Full Repayment Guaranty<br>Hazardous Materials Indemnity Agreement<br>Cost and Completion Guaranty | Sonoma-Napa Partners, LLC |

## SCHEDULE 2
### Heaton Loans

|   | Loan # | Borrower | Heaton Collateral |
|---|--------|----------|-------------------|
| 1. | 105101 | Doyle Heaton | N/A |
| 2. | 475441 | Petaluma Ventures LLC & Doyle Heaton | Deeds of Trust on the following properties: (i) 1632 Oak Park Blvd., Pleasant Hill, CA, (ii) 1636 Oak Park Blvd., Pleasant Hill, CA, (iii) 1640 Oak Park Blvd., Pleasant Hill, CA, (iv) 1477 Woodside Circle, Petaluma, CA, (v) 18 Village Square Pl., Pleasant Hill, CA, (vi) 22 Village Square Pl., Pleasant Hill, CA |

## SCHEDULE 3

### Post-Settlement Guaranties

|    | Loan #  | Guaranties                                                                                  | Borrower                  |
|----|---------|---------------------------------------------------------------------------------------------|---------------------------|
| 1. | 1001556 | Full Repayment Guaranty<br>Hazardous Materials Indemnity Agreement<br>Cost and Completion Guaranty | Mardel, LLC               |
| 2. | 1001555 | Full Repayment Guaranty<br>Hazardous Materials Indemnity Agreement<br>Cost and Completion Guaranty | Sonoma-Napa Partners, LLC |

## SCHEDULE 4

## Oak Brook Guaranty

| Loan #, #26 | Guaranty | Borrower |
|---|---|---|
| 6488222684 | Full Repayment Guaranty | Oak Brook Partners II, LLC |