Debra I. Grassgreen (CA Bar No. 169978)
Maxim B. Litvak (CA Bar No. 215852)
PACHULSKI STANG ZIEHL & JONES, LLP
150 California Street, 15th Floor
San Francisco, California 94111-4500
Telephone: 415/263-7000
Facsimile: 415/263-7010

Attorneys for Debtors and Debtors-in-Possession

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| In re:<br><br>**DOYLE D. HEATON and MARY K. HEATON,**<br><br>Debtors. | Case No.: 10-40297 EDJ<br><br>Chapter 11<br><br>**JOINT PLAN OF LIQUIDATION PROPOSED BY THE DEBTORS**<br><br><u>Plan Confirmation Hearing</u>:<br><br>Date: ____________, 2010<br>Time: ________ __.m.<br>Place: Courtroom 215<br>1300 Clay Street<br>Oakland, CA 94612<br>Judge: Hon. Edward D. Jellen |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Case: 10-40297 Doc# 102 Filed: 03/24/10 Entered: 03/24/10 18:25:02 Page 1 of 46

TABLE OF CONTENTS

PAGE

ARTICLE 1 DEFINITIONS AND RULES OF INTERPRETATION .......... 1
1.1 Administrative Claim. .......... 2
1.2 Administrative Claim Bar Date. .......... 2
1.3 Agent. .......... 2
1.4 Allowed. .......... 2
1.5 Available Claims and/or Defenses. .......... 3
1.6 Avoidance Actions. .......... 3
1.7 Bank of Marin. .......... 3
1.8 Bank of Marin Secured Claim. .......... 3
1.9 Bankruptcy Code. .......... 3
1.10 Bankruptcy Court. .......... 3
1.11 Bankruptcy Rules. .......... 3
1.12 Bar Date. .......... 3
1.13 Cash. .......... 4
1.14 Causes of Action and Defenses. .......... 4
1.15 Chapter 11 Case. .......... 4
1.16 Claim. .......... 4
1.17 Claim Objection Deadline. .......... 4
1.18 Class. .......... 5
1.19 Confirmation. .......... 5
1.20 Confirmation Date. .......... 5
1.21 Confirmation Hearing. .......... 5
1.22 Confirmation Order. .......... 5
1.23 Creditor. .......... 5
1.24 Creditors' Committee. .......... 5
1.25 Debtors. .......... 5
1.26 Debtor Retained Assets. .......... 5
1.27 Debtor Trusts. .......... 6
1.28 Development Entities. .......... 6
1.29 Disclosure Statement. .......... 6
1.30 Disputed. .......... 6
1.31 DRG. .......... 6
1.32 Effective Date. .......... 6

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Case: 10-40297 Doc# 102 Filed: 03/24/10 Entered: 03/24/10 18:25:02 Page 2 of 46

**1.33 Estate.** .......... 6
**1.34 Estate Assets** .......... 7
**1.35 Estimated.** .......... 7
**1.36 Final Order.** .......... 7
**1.37 General Unsecured Claim** .......... 7
**1.38 Heritage Bank.** .......... 7
**1.39 Heritage Bank Interest Reserve.** .......... 7
**1.40 Heritage Bank Secured Claim.** .......... 7
**1.41 Insider** .......... 7
**1.42 Interests.** .......... 8
**1.43 Lien.** .......... 8
**1.44 Lot Line Adjustment.** .......... 8
**1.45 Miscellaneous Secured Claim.** .......... 8
**1.46 Net Proceeds** .......... 8
**1.47 Permitted Payment.** .......... 8
**1.48 Person.** .......... 8
**1.49 Petition Date** .......... 8
**1.50 Plan.** .......... 8
**1.51 Plan Representative.** .......... 9
**1.52 Priority Non-Tax Claim.** .......... 9
**1.53 Priority Tax Claim.** .......... 9
**1.54 Pro Rata.** .......... 9
**1.55 Professional.** .......... 9
**1.56 Professional Fees.** .......... 9
**1.57 Professional Fees Bar Date.** .......... 9
**1.58 Rejection Claim Bar Date.** .......... 9
**1.59 SCG.** .......... 10
**1.60 Schedules.** .......... 10
**1.61 Secured Claim.** .......... 10
**1.62 Secured Claim Against Truckee Property.** .......... 10
**1.63 Tax Refunds.** .......... 10
**1.64 Truckee Property.** .......... 10
**1.65 Trust Assets.** .......... 10
**1.66 Unsecured Deficiency Claim.** .......... 10
**1.67 Walnut Creek Property.** .......... 10
**1.68 Walnut Creek Vacant Lot.** .......... 11

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Case: 10-40297 Doc# 102 Filed: 03/24/10 Entered: 03/24/10 18:25:02 Page 3 of 46

**1.69 Wells Fargo.** ... 11
**1.70 Wells Fargo Claim.** ... 11
**1.71 Wells Fargo Settlement Agreement.** ... 11
**ARTICLE 2 TREATMENT OF UNCLASSIFIED CLAIMS** ... 11
**2.1 Unclassified Claims.** ... 11
**2.2 Administrative Claims.** ... 11
**2.3 Priority Tax Claims.** ... 12
**2.4 Claims for Professional Fees.** ... 12
**ARTICLE 3 CLASSIFICATION OF CLAIMS AND INTERESTS** ... 12
**3.1 Summary of Classification.** ... 12
**3.2 Classes Under the Plan.** ... 13
**ARTICLE 4 TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS** ... 13
**4.1 Class 1 – Priority Non-Tax Claims.** ... 13
**4.1.1 Impairment and Voting.** ... 13
**4.1.2 Treatment.** ... 13
**4.2 Class 2 – Secured Claims Against Truckee Property.** ... 14
**4.2.1 Impairment and Voting.** ... 14
**4.2.2 Treatment.** ... 14
**4.3 Class 3 – Bank of Marin Secured Claims.** ... 14
**4.3.1 Impairment and Voting.** ... 14
**4.3.2 Treatment.** ... 14
**4.4 Class 4 – Heritage Bank Secured Claims.** ... 15
**4.4.1 Impairment and Voting.** ... 15
**4.4.2 Treatment.** ... 15
**4.5 Class 5 – Miscellaneous Secured Claims.** ... 16
**4.5.1 Impairment and Voting.** ... 16
**4.5.2 Alternative Treatment.** ... 16
**(a) Abandonment or Surrender.** ... 17
**(b) Cash Payment.** ... 17
**(c) Unimpairment.** ... 17
**4.5.3 Unsecured Deficiency Claim.** ... 17
**4.6 Class 6 – Wells Fargo Claims.** ... 17
**4.6.1 Impairment and Voting.** ... 17
**4.6.2 Treatment.** ... 17
**4.7 Class 7 – General Unsecured Claims.** ... 18
**4.7.1 Impairment and Voting.** ... 18

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Case: 10-40297 Doc# 102 Filed: 03/24/10 Entered: 03/24/10 18:25:02 Page 4 of 46

4.7.2 Treatment. 18

4.8 Class 8 – Interests. 18

4.8.1 Impairment and Voting. 18

4.8.2 Treatment. 18

4.9 Nonconsensual Confirmation. 19

ARTICLE 5 IMPLEMENTATION OF THE PLAN 19

5.1 Revesting and Liquidation of Estate Assets. 19

5.2 Revesting of Debtor Retained Assets. 19

5.3 Role of Plan Representative. 19

5.4 Debtors' Powers and Authority. 20

5.4.1 Generally. 20

5.4.2 Responsibilities and Authority of Debtors. 21

5.4.3 Powers of Debtors. 21

5.4.4 Compensation of Debtors and Professionals. 22

5.5 License and Overhead. 23

5.6 Abandonment. 23

5.7 Financing. 23

5.8 Available Claims and/or Defenses. 24

5.9 Wells Fargo Settlement Agreement. 25

5.10 Debtor Trusts. 25

5.11 Death or Incapacity of Debtors. 25

5.12 Dissolution of the Creditors' Committee. 25

5.13 Final Decree. 25

ARTICLE 6 PROVISIONS GOVERNING DISTRIBUTIONS 25

6.1 Distributions Under the Plan. 25

6.2 Estimation. 26

6.3 Distributions on Account of Disputed Claims and Estimated Claims. 26

6.4 No Distributions Pending Allowance. 26

6.5 Objection Deadline. 26

6.6 Disputed and Estimated Claims Reserve. 26

6.7 Settling Disputed Claims. 27

6.8 Distributions in Cash. 27

6.9 Unclaimed Distributions. 27

6.10 Setoff. 27

6.11 Taxes. 27

6.12 De Minimis Distributions. 28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Case: 10-40297 Doc# 102 Filed: 03/24/10 Entered: 03/24/10 18:25:02 Page 5 of 46

**ARTICLE 7 EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ........ **28**

**7.1 Rejection of Executory Contracts and Unexpired Leases.** ........ **28**

**7.2 Bar Date for Rejection Damages.** ........ **29**

**ARTICLE 8 CONDITIONS PRECEDENT** ........ **29**

**8.1 Conditions to Confirmation.** ........ **29**

**8.2 Conditions to Effectiveness.** ........ **29**

**8.3 Waiver of Conditions.** ........ **30**

**ARTICLE 9 EFFECTS OF CONFIRMATION** ........ **30**

**9.1 Binding Effect.** ........ **30**

**9.2 Property Revests Free and Clear.** ........ **30**

**9.3 Discharge.** ........ **30**

**9.4 Permanent Injunction.** ........ **31**

**9.5 Exoneration and Reliance.** ........ **32**

**ARTICLE 10 RETENTION OF JURISDICTION** ........ **32**

**ARTICLE 11 AMENDMENT AND WITHDRAWAL OF PLAN** ........ **34**

**11.1 Amendment of the Plan.** ........ **34**

**11.2 Revocation or Withdrawal of the Plan.** ........ **34**

**ARTICLE 12 MISCELLANEOUS** ........ **35**

**12.1 Effectuating Documents; Further Transactions; Timing.** ........ **35**

**12.2 Exemption From Transfer Taxes.** ........ **35**

**12.3 Governing Law.** ........ **35**

**12.4 Quarterly Fees to the United States Trustee.** ........ **35**

**12.5 Notice of Confirmation.** ........ **35**

**12.6 Successors and Assigns.** ........ **36**

**12.7 Notices.** ........ **36**

**12.7.1 Notice to Claim Holders.** ........ **36**

**12.7.2 Post-Effective Date Notices.** ........ **36**

**12.8 Incorporation by Reference.** ........ **36**

**12.9 Computation of Time.** ........ **36**

**12.10 Conflict of Terms.** ........ **36**

**12.11 Severability of Plan Provisions.** ........ **37**

Case: 10-40297 Doc# 102 Filed: 03/24/10 Entered: 03/24/10 18:25:02 Page 6 of 46

Doyle D. Heaton and Mary K. Heaton, a married couple, jointly propose the following plan of liquidation under Section 1121(a) of the Bankruptcy Code for the resolution of the Debtors' outstanding Claims. All Creditors and other parties-in-interest should refer to the Disclosure Statement for a discussion of the Debtors' assets, liabilities, and events leading up to the contemplated restructuring, and for a summary and analysis of the Plan and certain related matters. ***All holders of Claims against the Debtors are encouraged to read the Plan, the Disclosure Statement, and the related solicitation materials in their entirety before voting to accept or reject the Plan.***

Pursuant to the Plan, the Debtors' assets will be administered by the Debtors for the benefit of Creditors under the supervision of the Plan Representative with the exception of certain limited and specifically identified assets that will be retained by the Debtors for their own personal benefit from and after the Effective Date of the Plan. Specifically and subject to the oversight of the Plan Representative, the Debtors will be charged with the task of maximizing recoveries out of the Estate Assets, reconciling Claims against the Estate, and making distributions to Creditors in accordance with the priorities set forth herein.

Subject only to the restrictions on modifications set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtors expressly reserve the right to alter, amend or modify the Plan.

## ARTICLE 1

## DEFINITIONS AND RULES OF INTERPRETATION

For purposes of this Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined herein have the meanings ascribed to them in this Article 1 of the Plan. Any term used in the Plan that is not defined herein but is defined in the Bankruptcy Code or the Bankruptcy Rules retains the meaning specified for such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable. Whenever the context requires, each of the terms defined herein includes the plural as well as the singular, the masculine gender includes the feminine gender, and the feminine gender includes the masculine gender.

As used in this Plan, the following terms have the meanings specified below:

**1.1 Administrative Claim.** A Claim for any expense of administration of the Chapter 11 Case under Section 503(b) of the Bankruptcy Code and entitled to priority under Section 507(a)(2) of the Bankruptcy Code, including, without limitation: (a) actual and necessary costs and expenses incurred in the ordinary course of the Debtors' business, including the value of any goods received by the Debtors within 20 days before the Petition Date in the ordinary course of business for purposes of Section 503(b)(9) of the Bankruptcy Code; (b) actual and necessary costs and expenses of preserving the Estate or administering the Chapter 11 Case; (c) all Professional Fees; and (d) all fees payable under 28 U.S.C. § 1930.

**1.2 Administrative Claim Bar Date.** The date established under the Confirmation Order, which is expected to be approximately thirty (30) days following the Effective Date, by which certain entities asserting an Administrative Claim (excluding Professional Fee Claims) against the Debtors must have filed a request for payment with the Bankruptcy Court under Section 503(a) of the Bankruptcy Code, or be forever barred from asserting an Administrative Claim against the Debtors and/or sharing in any distribution under the Plan.

**1.3 Agent.** Any shareholder, director, officer, employee, partner, member, agent, attorney, accountant, advisor or other representative of any person or entity (solely in their respective capacities as such, and not in any other capacity).

**1.4 Allowed.** With respect to Claims: (a) any Claim, proof of which, request for payment of which, or application for allowance of which, was filed on or before the Bar Date, Administrative Claim Bar Date, or Professional Fees Bar Date, as applicable, for Claims of such type against the Debtors; (b) any Claim, if no proof of Claim is filed, which has been or is listed by the Debtors in the Schedules as liquidated in amount and not disputed or contingent; or (c) any Claim that is expressly allowed by the Plan or under any agreement entered into in connection with the Plan; provided, however, that with respect to any Claim described in clauses *(a)* or *(b)* above, such Claim shall be considered Allowed only if either (i) no objection to the allowance thereof has been interposed by the Claims Objection Deadline, or (ii) an objection to the Claim has been interposed and a Final Order has been entered allowing the Claim for distribution purposes, or (iii) the Debtors have agreed to settle and allow the Claim, without the need for Bankruptcy Court approval, in

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Case: 10-40297 Doc# 102 Filed: 03/24/10 Entered: 03/24/10 18:25:02 Page 8 of 46

accordance with the Plan. The term "Allowed," when used to modify a reference in the Plan to any Claim or Class of Claims means a Claim (or any Claim in any such Class) that is so allowed. The term "Allowed Claim," will not, for purposes of computing distributions under the Plan, include interest on such claim from and after the Petition Date, other than as permitted under the Bankruptcy Code.

**1.5 Available Claims and/or Defenses.** Except as otherwise set forth in the Plan, all Causes of Action and Defenses held by the Debtors or the Estate against any Person.

**1.6 Avoidance Actions.** All causes of action of the Estate under Sections 506(c), 506(d), 510, 542, 543, 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code, and any state law fraudulent transfer claims, whether or not such actions seek an affirmative recovery or are raised as a defense to, or offset against, the allowance of a Claim.

**1.7 Bank of Marin.** Bank of Marin, and any successors or assigns thereof.

**1.8 Bank of Marin Secured Claim.** A Secured Claim held by Bank of Marin against any Estate Assets.

**1.9 Bankruptcy Code.** Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended from time to time and as applicable to the Chapter 11 Case.

**1.10 Bankruptcy Court.** The United States Bankruptcy Court for the Northern District of California having jurisdiction over the Chapter 11 Case.

**1.11 Bankruptcy Rules.** Collectively, the Federal Rules of Bankruptcy Procedure as promulgated under 28 U.S.C. § 2075 and any Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Case.

**1.12 Bar Date.** The date or dates fixed by the Bankruptcy Court by which all Persons (except holders of Claims that appear in the Schedules and are *not* scheduled as disputed, contingent or unliquidated, or holders of Claims that are otherwise Allowed pursuant to the Plan) asserting a Claim against the Debtors (except Administrative Claims) must file a proof of claim or be forever barred from asserting a Claim against the Debtors or their property, voting on the Plan, and sharing in distributions under the Plan.

Case: 10-40297 Doc# 102 Filed: 03/24/10 Entered: 03/24/10 18:25:02 Page 9 of 46

**1.13 Cash.** Currency, checks drawn on a bank insured by the Federal Deposit Insurance Corporation, certified checks, money orders, negotiable instruments, and wire transfers of immediately available funds.

**1.14 Causes of Action and Defenses.** Any and all claims, causes of action, cross-claims, counterclaims, third-party claims, indemnity claims, contribution claims, defenses, demands, rights, actions, debts, damages, judgments, remedies, Liens, indemnities, guarantees, suits, obligations, liabilities, accounts, offsets, recoupments, rights of subordination or subrogation, powers, privileges, licenses, and franchises of any kind or character whatsoever, known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, disputed or undisputed, foreseen or unforeseen, direct or indirect, choate or inchoate, held by the Debtors or the Estate, whether arising before, on or after the Petition Date, including through the Effective Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law. For the avoidance of doubt, the term "Causes of Action and Defenses" shall include, but not be limited to: (a) all rights of setoff, counterclaim, or recoupment and claims on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to Claims; (c) all claims pursuant to Section 362 of the Bankruptcy Code, (d) all Avoidance Actions; and (e) such claims and defenses as fraud, mistake, duress, and usury and any other defenses set forth in Section 558 of the Bankruptcy Code.

**1.15 Chapter 11 Case.** The case under Chapter 11 of the Bankruptcy Code in which the Debtors are joint debtors and debtors-in-possession pending before the Bankruptcy Court.

**1.16 Claim.** A claim as defined in Section 101(5) of the Bankruptcy Code, including, without limitation: (a) any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, arising at any time before the Effective Date; or (b) any right to an equitable remedy arising at any time before the Effective Date for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

**1.17 Claim Objection Deadline.** The last day by which the Debtors may file objections to Claims, which day shall be the later of (a) 180 days after the Effective Date, (b) 60 days after the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

filing of a proof of claim for, or request for payment of, such Claim, or (c) such other date as the Bankruptcy Court may order. The filing of a motion to extend the Claims Objection Deadline by any party shall automatically extend the Claims Objection Deadline until a Final Order is entered on such motion. In the event that such motion to extend the Claims Objection Deadline is denied by the Bankruptcy Court, or approved by the Bankruptcy Court and reversed on appeal, the Claims Objection Deadline shall be the later of the then current Claims Objection Deadline (as previously extended, if applicable) or 30 days after entry of a Final Order denying the motion to extend the Claims Objection Deadline.

**1.18 Class.** A category of holders of Claims or Interests which are substantially similar in nature to the Claims or Interests of other holders placed in such category, as designated in Article 3 of this Plan.

**1.19 Confirmation.** Entry of the Confirmation Order by the Bankruptcy Court.

**1.20 Confirmation Date.** The date on which the Bankruptcy Court enters the Confirmation Order.

**1.21 Confirmation Hearing.** The hearing or hearings to consider confirmation of the Plan under Section 1129 of the Bankruptcy Code, as such hearing(s) may be adjourned from time to time.

**1.22 Confirmation Order.** The order of the Bankruptcy Court confirming the Plan.

**1.23 Creditor.** Has the meaning set forth in Section 101(10) of the Bankruptcy Code.

**1.24 Creditors' Committee.** The Official Committee of Unsecured Creditors appointed by the United States Trustee in the Chapter 11 Case in accordance with Section 1102(a)(1) of the Bankruptcy Code, as it may be reconstituted from time to time.

**1.25 Debtors.** Doyle D. Heaton and Mary K. Heaton, as joint debtors.

**1.26 Debtor Retained Assets.** Collectively, the following assets: (a) the Walnut Creek Property (held through the Doyle D. Heaton Qualified Personal Residence Trust Walnut Creek and the Mary K. Heaton Qualified Personal Residence Trust Walnut Creek); (b) the Truckee Property (held through the Doyle D. Heaton Qualified Personal Residence Trust Truckee); (c) the Debtors' rights and interests in SCG; (d) the Debtors' rights and interests in DRG; (e) the Debtors' rights and interests in a Class B, California Contractor's License No. 386387; (f) the Debtors' rights and

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Case: 10-40297 Doc# 102 Filed: 03/24/10 Entered: 03/24/10 18:25:02 Page 11 of 46

interests in the Doyle D. Heaton and Mary K. Heaton Irrevocable Trust dated May 28, 1991; (g) the sum of $55,000 in Cash out of assets previously held in the Doyle D. Heaton Alaska Trust; and (h) all retirement and pension benefits and household goods, vehicles, jewelry, artwork, clothing, and other personal items of the Debtors or the Estate, including all property claimed as exempt in the Schedules and the Debtors' interests in a boat and trailer listed in the Schedules.

**1.27 Debtor Trusts.** The Doyle D. Heaton Alaska Trust, the Mary K. Heaton Alaska Trust, and the Heaton Family Revocable Trust dated February 6, 1986. For the avoidance of doubt, the term "Debtor Trusts" shall *not* include the Doyle D. Heaton Qualified Personal Residence Trust Walnut Creek, the Doyle D. Heaton Qualified Personal Residence Trust Truckee, the Mary K. Heaton Qualified Personal Residence Trust Walnut Creek, and the Doyle D. Heaton and Mary K. Heaton Irrevocable Trust dated May 28, 1991.

**1.28 Development Entities.** The various real estate partnerships, limited liability companies or other entities created, owned or controlled by the Debtors, excluding DRG and SCG, as set forth on **Exhibit A** hereto.

**1.29 Disclosure Statement.** The disclosure statement relating to the Plan including, without limitation, all exhibits and schedules to such disclosure statement, in the form approved by the Bankruptcy Court under Section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017.

**1.30 Disputed.** With respect to Claims, means any Claim that is not an Allowed Claim or Estimated Claim. The term "Disputed," when used to modify a reference in the Plan to any Claim or Class of Claims, means a Claim (or any Claim in any such Class) that is so disputed.

**1.31 DRG.** DRG Builders, Inc., an entity which provides staff and overhead for the Debtors' real estate development activities.

**1.32 Effective Date.** The first day after the Confirmation Date immediately following the first day upon which all of the conditions to the occurrence of the Effective Date have been satisfied or waived in accordance with the Plan.

**1.33 Estate.** The estate of the Debtors created in the Chapter 11 Case in accordance with Sections 541 and 1115 of the Bankruptcy Code or otherwise.

Case: 10-40297 Doc# 102 Filed: 03/24/10 Entered: 03/24/10 18:25:02 Page 12 of 46

**1.34 Estate Assets.** All property of the Estate under Sections 541 and 1115 of the Bankruptcy Code, including the Trust Assets, but excluding the Debtor Retained Assets.

**1.35 Estimated.** With respect to Claims, means any Claim that has been estimated by the Bankruptcy Court pursuant to Section 502(c) of the Bankruptcy Code or by agreement of the Debtors and the holder of such Claim.

**1.36 Final Order.** An order or judgment of the Bankruptcy Court that has been entered upon the docket in the Chapter 11 Case and: (a) as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending; or (b) in the event that an appeal, writ of certiorari, reargument or rehearing has been sought, such order or judgment shall have been affirmed by the highest court to which such order or judgment was appealed, or certiorari has been denied, or from which reargument or rehearing was sought, and the time to take any further appeal, petition for certiorari, or move for reargument or rehearing shall have expired; provided that, the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure or any analogous rule under the Bankruptcy Rules may be filed with respect to such order or judgment shall not cause such order or judgment not to be a "Final Order."

**1.37 General Unsecured Claim.** Any Claim against the Debtors that is *not* (a) an Administrative Claim, (b) a Priority Tax Claim, (c) a Priority Non-Tax Claim, (d) a Secured Claim, or (e) a Wells Fargo Claim. For the avoidance of doubt, the term "General Unsecured Claim" shall include any Claim against the Debtors arising under Section 502(h) of the Bankruptcy Code.

**1.38 Heritage Bank.** Heritage Bank of Commerce, and any successors or assigns thereof.

**1.39 Heritage Bank Interest Reserve.** The non-interest bearing reserve account held at Heritage Bank in the name of the Heaton Family Revocable Trust dated February 6, 1986, designated account number 223003401.

**1.40 Heritage Bank Secured Claim.** A Secured Claim held by Heritage Bank against any Estate Assets.

**1.41 Insider.** Has the meaning set forth in Section 101(31) of the Bankruptcy Code.

Case: 10-40297 Doc# 102 Filed: 03/24/10 Entered: 03/24/10 18:25:02 Page 13 of 46

**1.42 Interests.** The rights and interests of the Debtors in the Estate Assets and the Debtor Retained Assets immediately before the Effective Date.

**1.43 Lien.** A lien as defined in Section 101(37) of the Bankruptcy Code, but not including a lien to the extent that it has been avoided in accordance with Sections 506(d), 510, 544, 545, 546, 547, 548, 553, or 549 of the Bankruptcy Code.

**1.44 Lot Line Adjustment.** The real property previously included within the Walnut Creek Vacant Lot that was made a part of the Walnut Creek Property pursuant to, and as described in, the grant deeds recorded with the County of Contra Costa, California on October 15, 2009.

**1.45 Miscellaneous Secured Claim.** A Secured Claim that has not been released or satisfied prior to the Effective Date, excluding Secured Claims Against Truckee Property, Bank of Marin Secured Claims, Heritage Bank Secured Claims, and Wells Fargo Claims.

**1.46 Net Proceeds.** The funds available from liquidation of any Estate Asset after payment of any necessary fees and expenses incurred by the Debtors with respect to such Estate Asset from and after the Effective Date and after payment of the management and success fees to the Debtors in accordance with Section 5.4.4 of the Plan.

**1.47 Permitted Payment.** A payment on account of an obligation arising prior to the Petition Date made by the Debtors during the Chapter 11 Case with the permission of the Bankruptcy Court.

**1.48 Person.** Any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated association or organization, or other "person" as defined in Bankruptcy Code § 101, as well as any governmental agency, governmental unit or associated political subdivision.

**1.49 Petition Date.** January 11, 2010, the date when the Debtors commenced the Chapter 11 Case.

**1.50 Plan.** This Chapter 11 plan of liquidation, either in its present form or as it may be amended, supplemented or modified from time to time, including all of its annexed exhibits and schedules.

**1.51 Plan Representative.** The Person selected to fill the role of Plan Representative in accordance with Section 5.3 of this Plan.

**1.52 Priority Non-Tax Claim.** A Claim (or portion of such Claim) against the Debtors entitled to priority under Sections 507(a)(3), (a)(4), (a)(5) or (a)(7) of the Bankruptcy Code.

**1.53 Priority Tax Claim.** A Claim (or portion of such Claim) of a governmental unit against the Debtors entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

**1.54 Pro Rata.** With respect to Claims within the same Class, the proportion that the Claim bears to the sum of all Claims within such Class.

**1.55 Professional.** Each Person: (a) employed in accordance with an order of the Bankruptcy Court under Sections 327 or 1103 of the Bankruptcy Code and to be compensated for services under Sections 327, 328, 329, 330, 331 and 504 of the Bankruptcy Code, or (b) for which compensation or reimbursement is requested under Section 503(b)(2)-(b)(6) of the Bankruptcy Code.

**1.56 Professional Fees.** A Claim by a Professional for compensation for services rendered and reimbursement for expenses submitted in accordance with Sections 330, 331, or 503(b) of the Bankruptcy Code for fees and expenses incurred after the Petition Date and prior to and including the Effective Date.

**1.57 Professional Fees Bar Date.** The date fixed under the Confirmation Order, which is expected to be approximately sixty (60) days following the Effective Date, by which any Professional seeking an award of Professional Fees must have filed an application with the Bankruptcy Court under Section 330(a) of the Bankruptcy Code, or be forever barred from an award of Professional Fees against the Debtors and/or sharing in any distribution under the Plan.

**1.58 Rejection Claim Bar Date.** The date fixed under the Confirmation Order, which is expected to be approximately thirty (30) days following the Effective Date, by which any Person asserting a Claim for damages arising from the rejection of an executory contract or unexpired lease under this Plan must have filed a proof of Claim with the Bankruptcy Court under Section 502(g) of the Bankruptcy Code, or be forever barred from asserting such Claim against the Debtors and/or sharing in any distribution under the Plan.

**1.59 SCG.** SCG Builders, Inc., an entity which holds the contractor license for the Debtors' real estate development activities.

**1.60 Schedules.** The schedules of assets and liabilities and the statement of financial affairs filed by the Debtors in the Chapter 11 Case, under Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules, lists, and statements may have been or may be supplemented or amended from time to time.

**1.61 Secured Claim.** A Claim against the Debtors secured by a valid, perfected and enforceable Lien that is not subject to avoidance under bankruptcy or non-bankruptcy law, equal to the lesser of: (a) the Allowed amount of such Claim; or (b) the value, as determined by the Bankruptcy Court pursuant to Sections 506(a) and 1129(b) of the Bankruptcy Code and Bankruptcy Rule 3012, of: (i) the interest of the holder of such Claim in the property of the Debtors securing such Claim, or (ii) the amount subject to setoff under Section 553 of the Bankruptcy Code.

**1.62 Secured Claim Against Truckee Property.** A Secured Claim that is collateralized by the Truckee Property.

**1.63 Tax Refunds.** Any tax refunds or credits available or owed to the Debtors by any federal, state or local governmental unit as of the Effective Date.

**1.64 Truckee Property.** Fifty-five percent (55%) of the interests in real property and improvements located at 12916 Falcon Point Place, Truckee, California. Title to the Truckee Property is currently held in the name of Heaton Enterprises III, LLC, which is wholly owned by the Doyle D. Heaton Qualified Personal Residence Trust Truckee.

**1.65 Trust Assets.** The assets held in or by the Debtor Trusts.

**1.66 Unsecured Deficiency Claim.** A Claim by a Person holding a Secured Claim to the extent the value of such Creditor's collateral, as determined in accordance with Section 506(a) of the Bankruptcy Code, is less than the Allowed amount of such Creditor's Claim as of the Petition Date, after taking into account any election made pursuant to Section 1111(b) of the Bankruptcy Code.

**1.67 Walnut Creek Property.** The real property and improvements located at 2960 Cherry Lane, Walnut Creek, California. Title to the Walnut Creek Property is currently held in the name of: (a) Heaton Enterprises I, LLC, which is wholly owned by the Doyle D. Heaton Qualified Personal

Residence Trust Walnut Creek, and (b) Heaton Enterprises II, LLC, which is wholly owned by the Mary K. Heaton Qualified Personal Residence Trust Walnut Creek.

**1.68 Walnut Creek Vacant Lot.** The real property located at 2962 Cherry Lane, Walnut Creek, California.

**1.69 Wells Fargo.** Wells Fargo Bank, National Association, and any successors or assigns thereof.

**1.70 Wells Fargo Claim.** Any Claim asserted by Wells Fargo against the Debtors that is identified and resolved in subsection 3.1 of the Wells Fargo Settlement Agreement. The Wells Fargo Claim shall be Allowed. The Wells Fargo Claim shall not include any Claim of Wells Fargo, Wachovia Bank, National Association, or any of their respective predecessors, successors, parents, subsidiaries, affiliates or assigns that are not explicitly resolved under the Wells Fargo Settlement Agreement, with all such reserved Claims, if any, to be asserted by the Bar Date and treated under the appropriate Class.

**1.71 Wells Fargo Settlement Agreement.** The *Post-Petition Settlement Agreement* dated as of March 19, 2010, between the Debtors and Wells Fargo. The Wells Fargo Settlement Agreement was approved by order of the Bankruptcy Court dated ___________, 2010.

## ARTICLE 2

## TREATMENT OF UNCLASSIFIED CLAIMS

**2.1 Unclassified Claims.** As provided in Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims against the Debtors are not classified for purposes of voting on, or receiving distributions under, the Plan. Holders of such Claims are not entitled to vote on the Plan. All such Claims are instead treated separately in accordance with this Article 2 and in accordance with the requirements set forth in Section 1129(a)(9) of the Bankruptcy Code.

**2.2 Administrative Claims.** Each Allowed Administrative Claim (except for Professional Fees, which shall be treated as set forth in Section 2.4 of the Plan) shall, unless the holder of such Claim shall have agreed to different treatment of such Claim, be paid in full in Cash by the Debtors on the latest of: (a) the Effective Date, or as soon thereafter as practicable; (b) such date as may be fixed by the Bankruptcy Court, or as soon thereafter as practicable; (c) the fourteenth day after such

Claim is Allowed, or as soon thereafter as practicable; (d) such date as the holder of such Claim and the Debtors may agree; and (e) the date such Claim is otherwise due according to its terms. All requests for payment of Administrative Claims (except with respect to Professional Fees, which instead shall be subject to the Professional Fees Bar Date) must be filed by the Administrative Claim Bar Date or the holders thereof shall be forever barred from asserting such Administrative Claims against the Debtors and the Estate and/or from sharing in any distribution under the Plan.

**2.3    Priority Tax Claims.** Each Allowed Priority Tax Claim shall, unless the holder of such Claim shall have agreed to different treatment of such Claim, be paid in full in Cash by the Debtors on the latest of: (a) the Effective Date, or as soon thereafter as practicable; (b) such date as may be fixed by the Bankruptcy Court, or as soon thereafter as practicable; (c) the fourteenth day after such Claim is Allowed, or as soon thereafter as practicable; (d) such date as the holder of such Claim and the Debtors may agree; and (e) the date such Claim is otherwise due according to its terms.

**2.4    Claims for Professional Fees.** Each Professional seeking an award by the Bankruptcy Court of Professional Fees: (a) must file its final application for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date on or before the Professional Fees Bar Date; and (b) if the Bankruptcy Court grants such an award, each such Person will be paid in full in Cash by the Debtors as to Allowed Professional Fees against the Estate in such amounts as are allowed by the Bankruptcy Court as soon as practicable following the first day after such order has been entered by the Bankruptcy Court and is not stayed. All final applications for allowance and disbursement of Professional Fees must be in compliance with all of the terms and provisions of any applicable order of the Bankruptcy Court, including the Confirmation Order.

## ARTICLE 3

## CLASSIFICATION OF CLAIMS AND INTERESTS

**3.1    Summary of Classification.** In accordance with Section 1123(a)(1) of the Bankruptcy Code, all Claims of Creditors (except those Claims receiving treatment as set forth in Article 2) and

the Debtors' Interests are placed in the Classes described in Section 3.2 below for all purposes, including voting on, confirmation of, and distribution under, the Plan.

**3.2 Classes Under the Plan.**

| | | |
|---|---|---|
| Class 1 | Priority Non-Tax Claims | Unimpaired, deemed to accept |
| Class 2 | Secured Claims Against Truckee Property | Unimpaired, deemed to accept |
| Class 3 | Bank of Marin Secured Claims | Impaired, entitled to vote |
| Class 4 | Heritage Bank Secured Claims | Impaired, entitled to vote |
| Class 5 | Miscellaneous Secured Claims (each secured creditor in a separate class identified as Class 5A, Class 5B, etc.) | Impaired, entitled to vote |
| Class 6 | Wells Fargo Claims | Impaired, entitled to vote |
| Class 7 | General Unsecured Claims | Impaired, entitled to vote |
| Class 8 | Interests | Not entitled to vote |

## ARTICLE 4

## TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

**4.1 Class 1 – Priority Non-Tax Claims.**

**4.1.1 Impairment and Voting.** Class 1 is unimpaired under the Plan. Holders of Priority Non-Tax Claims are deemed to have accepted the Plan under Section 1126(f) of the Bankruptcy Code and are not entitled to vote on the Plan.

**4.1.2 Treatment.** Each holder of an Allowed Priority Non-Tax Claim shall, unless the holder of such Claim shall have agreed to different treatment of such Claim, receive from the Debtors, in full and final satisfaction, settlement, release, and discharge of, and exchange for, such Allowed Priority Non-Tax Claim, a Cash payment in an amount equal to the difference between: (a) such Allowed Non-Tax Claim, and (b) the amount of any Permitted Payments made to the holder of such Claim, on the latest of: (i) the Effective Date, or as soon thereafter as practicable; (ii) such date as may be fixed by the Bankruptcy Court, or as soon thereafter as practicable; (iii) the fourteenth day after such Claim is Allowed, or as soon thereafter as practicable; and (iv) such date as the holder of such Claim and the Debtors may agree.

**4.2 Class 2 – Secured Claims Against Truckee Property.**

**4.2.1 Impairment and Voting.** Class 2 is unimpaired under the Plan. Holders of Secured Claims Against Truckee Property are deemed to have accepted the Plan under Section 1126(f) of the Bankruptcy Code and are not entitled to vote on the Plan.

**4.2.2 Treatment.** From and after the Effective Date, all rights of the holders of Allowed Secured Claims Against Truckee Property shall be unimpaired in accordance with Section 1124(2) of the Bankruptcy Code. As soon as practicable following the Effective Date, the Debtors shall cure any and all defaults with respect to the Allowed Secured Claims Against Truckee Property and compensate the holders of such Claims for any damages with respect thereto to the extent and in the manner required by Section 1124(2) of the Bankruptcy Code. Unless otherwise agreed by the Debtors and the holders of the Allowed Secured Claims Against Truckee Property, the maturity and terms of such Claims shall be reinstated on the Effective Date pursuant to Section 1124(2) of the Bankruptcy Code and shall be obligations of the Debtors from and after the Effective Date. For the avoidance of doubt, the Debtors shall be permitted to retain ownership and control of the Truckee Property as a Debtor Retained Asset from and after the Effective Date, subject to the Allowed Secured Claims Against Truckee Property.

**4.3 Class 3 – Bank of Marin Secured Claims.**

**4.3.1 Impairment and Voting.** Class 3 is impaired under the Plan. Holders of Bank of Marin Secured Claims are entitled to vote on the Plan.

**4.3.2 Treatment.** On or as soon as practicable following the Effective Date, in full and final satisfaction and release of the Allowed Bank of Marin Secured Claims: (a) the Debtors shall retain their interests in the Walnut Creek Vacant Lot, subject to the Lot Line Adjustment and any existing Liens (including the Bank of Marin Secured Claims), solely for the purpose of liquidating such asset and distributing the proceeds thereof to the holders of any Liens thereon; (b) Bank of Marin's Liens against the Walnut Creek Vacant Lot shall be deemed to be modified consistent with the Lot Line Adjustment and such Liens shall be released as to the real property covered by the Lot Line Adjustment; (c) the Debtors shall pay the sum of $55,000 to the holder of the Bank of Marin Secured Claims out of the Debtor Retained Assets on account of the Lot Line

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Case: 10-40297 Doc# 102 Filed: 03/24/10 Entered: 03/24/10 18:25:02 Page 20 of 46

Adjustment and such payment shall be made no later than seven (7) days following the Effective Date; (d) the holder of the Bank of Marin Secured Claims shall retain any and all Liens and Claims against any Person other than the Debtors; and (e) the holder of the Bank of Marin Secured Claims shall retain its Liens against the Debtors' interests in Corona Road Associates, LLC and Adobe Partners, LLC, such that the Debtors will pay to the holder of the Bank of Marin Secured Claims the proceeds of any distributions out of these entities that become available to the Debtors. For the avoidance of doubt, Bank of Marin shall retain its Liens and Claims against the Walnut Creek Vacant Lot to the same extent, validity and priority as such Liens existed as of the Petition Date, but such Liens and Claims in favor of Bank of Marin shall be non-recourse as to the Debtors and the Estate. Bank of Marin shall not be entitled to any Unsecured Deficiency Claim with respect to the Walnut Creek Vacant Lot against the Debtors or the Estate, but shall retain any other available General Unsecured Claims against the Estate, which shall be treated in Class 7 under the Plan.

**4.4 Class 4 – Heritage Bank Secured Claims.**

**4.4.1 Impairment and Voting.** Class 4 is impaired under the Plan. Holders of Heritage Bank Secured Claims are entitled to vote on the Plan.

**4.4.2 Treatment.** On or as soon as practicable following the Effective Date, in full and final satisfaction and release of the Allowed Heritage Bank Secured Claims: (a) the Debtors shall retain their interests in the real property and improvements collateralizing the Heritage Bank Secured Claims, subject to any existing Liens (including the Heritage Bank Secured Claims), solely for the purpose of liquidating such assets (excluding the Walnut Creek Property) and distributing the proceeds thereof to the holders of any Liens thereon; (b) the Debtors shall cure any and all defaults with respect to the Heritage Secured Claims comprised solely of the first priority Lien against the Walnut Creek Property and the terms of such Claims shall be reinstated and shall be obligations of the Debtors from and after the Effective Date (except that the maturity date of such Claims shall be extended for a period of three years beyond their existing maturity date on an interest-only basis); (c) the Debtors shall abandon their interests in the Heritage Bank Interest Reserve to Heritage Bank, to the extent not already abandoned, and such reserve shall be applied to reduce the Heritage Bank Secured Claims; (d) the Debtors shall abandon, and agree to turnover, to Heritage Bank (after

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Case: 10-40297 Doc# 102 Filed: 03/24/10 Entered: 03/24/10 18:25:02 Page 21 of 46

payment of any applicable maintenance expenses, taxes, and first lien lender claims) any rental proceeds in the Debtors' custody, possession or control received for the period from and after the Petition Date on account of the assets collateralizing the Heritage Bank Secured Claims and such proceeds shall be applied to reduce the Heritage Bank Secured Claims; (e) Heritage Bank shall be entitled to an Unsecured Deficiency Claim against the Estate which shall be treated as an Allowed General Unsecured Claim in Class 7 in an amount equal to the lesser of (i) $400,000, and (ii) the amount, if any, of Heritage Bank's actual deficiency claim after the Debtors complete the liquidation of the properties collateralizing the Heritage Bank Secured Claims (excluding the Walnut Creek Property); (f) except as set forth in clauses (a)-(e) hereof, the Debtors shall have no further obligations on account of the Heritage Bank Secured Claims; and (e) upon completion of the Debtors' obligations contemplated in clauses (a), (c) and (d) above, Heritage Bank shall release its second priority Lien against the Walnut Creek Property. For the avoidance of doubt, Heritage Bank shall retain its Liens and Claims against the Debtors' real property and improvements to the same extent, validity and priority as such Liens existed as of the Petition Date, but all such Liens and Claims in favor of Heritage Bank shall be non-recourse as to the Debtors and the Estate (except as to Heritage Bank's the first priority Lien against the Walnut Creek Property). The Debtors shall be permitted to retain ownership and control of the Walnut Creek Property as a Debtor Retained Asset from and after the Effective Date, subject to the Heritage Bank Secured Claims as set forth above.

**4.5 Class 5 – Miscellaneous Secured Claims.**

**4.5.1 Impairment and Voting.** Class 5 is unimpaired under the Plan. Holders of Miscellaneous Secured Claims are entitled to vote on the Plan. For purposes of distributions under the Plan, each holder of a Miscellaneous Secured Claim in Class 5 is considered to be in its own separate subclass within Class 5, and each such subclass is deemed to be a separate Class for purposes of the Plan.

**4.5.2 Alternative Treatment.** On or as soon as practicable following the Effective Date, the Debtors shall select, in their discretion, one of the following alternative treatments for each Allowed Miscellaneous Secured Claim in Class 5, which treatment shall be in full and final

satisfaction, settlement, release, and discharge of, and exchange for, such Allowed Miscellaneous Secured Claim:

(a) Abandonment or Surrender. The Debtors will abandon or surrender to the holder of such Claim the property securing such Claim, in full satisfaction and release of such Claim.

(b) Cash Payment. The Debtors will pay to the holder of such Claim Cash equal to the amount of such Claim, or such lesser amount to which the holder of such Claim and the Debtors shall agree, in full satisfaction and release of such Claim.

(c) Unimpairment. The Debtors will leave the rights of the holder of such Claim unimpaired or provide for such other treatment as necessary to otherwise satisfy the requirements of the Bankruptcy Code.

**4.5.3 Unsecured Deficiency Claim.** Any Unsecured Deficiency Claim asserted by a holder of an Allowed Miscellaneous Secured Claim in Class 5 shall be filed with the Bankruptcy Court within thirty (30) days following the date of the abandonment or surrender of such Creditor's collateral or such Creditor's receipt of its distribution under the Plan. Any such Allowed Unsecured Deficiency Claim shall be treated in accordance with Section 4.7 of the Plan.

**4.6 Class 6 – Wells Fargo Claims.**

**4.6.1 Impairment and Voting.** Class 6 is impaired under the Plan. The holder of the Wells Fargo Claims is entitled to vote on the Plan.

**4.6.2 Treatment.** On or as soon as practicable following the Effective Date, the holder of Allowed Wells Fargo Claims shall receive, in full and final satisfaction, settlement, release, and discharge of, and exchange for, such Allowed Wells Fargo Claims, the rights and benefits set forth in the Wells Fargo Settlement Agreement.

In addition to the foregoing treatment, on or as soon as practicable following the Effective Date, (a) subject to Wells Fargo's rights under the Wells Fargo Settlement Agreement, the Debtors shall retain their interests in the real property and improvements collateralizing certain of the Wells Fargo Claims (as identified in schedule 2 to the Wells Fargo Settlement Agreement), subject to any existing Liens (including the Wells Fargo Claims), solely for the purpose of

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

liquidating such assets and distributing the proceeds thereof to the holders of any Liens thereon, all without compensation to the Debtors or the Estate; (b) the Debtors shall abandon, and agree to turnover, to Wells Fargo (after payment of any applicable maintenance expenses, taxes, and first lien lender claims) any rental proceeds in the Debtors' custody, possession or control received for the period from and after the Petition Date on account of the assets collateralizing the Wells Fargo Claims; and (c) except as set forth above, the Debtors and the Estate shall have no further obligations on account of the Wells Fargo Claims. For the avoidance of doubt, Wells Fargo shall not be entitled to any Unsecured Deficiency Claim on account of the Wells Fargo Claims against the Debtors or the Estate. Wells Fargo shall retain its Liens and Claims against certain of the Development Entities to the same extent, validity and priority that such Liens and Claims existed as of the Petition Date and, as set forth in clauses (a) and (b) above, Wells Fargo shall retain its Liens against the Debtors' real property and improvements, but all such Liens and Claims in favor of Wells Fargo shall be non-recourse as to the Debtors.

**4.7 Class 7 – General Unsecured Claims.**

**4.7.1 Impairment and Voting.** Class 7 is impaired under the Plan. Holders of General Unsecured Claims are entitled to vote on the Plan.

**4.7.2 Treatment.** On or as soon as practicable following the Effective Date, each holder of an Allowed General Unsecured Claim shall receive a Pro Rata share of the Net Proceeds of the Estate Assets that remain available after taking into account the treatment of Claims in Classes 1-6 above. Such distribution shall be in full and final satisfaction, settlement, release, and discharge of, and exchange for, all Allowed General Unsecured Claims held by such holder.

**4.8 Class 8 – Interests.**

**4.8.1 Impairment and Voting.** Although Class 8 is impaired under the Plan, the Debtors are not entitled to vote on the Plan.

**4.8.2 Treatment.** From and after the Effective Date, in accordance with Section 1129(b)(2)(B)(ii) of the Bankruptcy Code, the Debtors shall retain the Debtor Retained Assets and the right to earn fees and compensation as set forth in the Plan. For the avoidance of doubt, any

income earned by the Debtors from and after the Effective Date unrelated to the Estate Assets or to the extent permitted in the Plan shall be excluded from distributions to Creditors under the Plan.

**4.9 Nonconsensual Confirmation.** The Debtors hereby request confirmation of the Plan pursuant to Section 1129(b) of the Bankruptcy Code in the event that not all impaired classes of Claims vote to accept the Plan in accordance with Section 1126 of the Bankruptcy Code.

## ARTICLE 5

## IMPLEMENTATION OF THE PLAN

The Plan shall be implemented on the Effective Date. In addition to the provisions set forth elsewhere in the Plan regarding means of execution, the following shall constitute the principal means for the implementation of the Plan.

**5.1 Revesting and Liquidation of Estate Assets.** On the Effective Date and subject to the provisions of the Plan and the oversight of the Plan Representative, the Debtors shall be vested with all right, title and interest in the Estate Assets for the benefit of Creditors, free and clear of all Claims, Liens, charges, other encumbrances and Interests, except as set forth in the Plan. The Debtors will effectuate an orderly liquidation of the Estate Assets for the benefit of Creditors in accordance with the Plan and subject to the oversight of the Plan Representative. The Debtors shall segregate the Estate Assets separate from the Debtor Retained Assets and shall not commingle the Estate Assets with the Debtors' personal assets.

**5.2 Revesting of Debtor Retained Assets.** On the Effective Date and subject to the provisions of the Plan, the Debtors shall be vested (for their own personal benefit) with the Debtor Retained Assets free and clear of all Claims, Liens, charges, other encumbrances and Interests, except as set forth in the Plan.

**5.3 Role of Plan Representative.** From and after the Effective Date, the Plan Representative shall monitor the status and progress of the Debtors' efforts to effectuate the terms of the Plan. The Plan Representative shall meet and consult periodically with the Debtors and keep himself or herself apprised of the Debtors' affairs as they relate to the Estate Assets and the objectives of the Plan. The Debtors shall be obligated to provide full and complete access and disclosure to the Plan Representative to monitor the Debtors' activities under the Plan and to ensure

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Case: 10-40297 Doc# 102 Filed: 03/24/10 Entered: 03/24/10 18:25:02 Page 25 of 46

that the Debtors comply with the terms of the Plan. To the extent contemplated by the Plan, the Debtors shall be required to consult with the Plan Representative, and to obtain input from the Plan Representative, reasonably in advance of taking action under the Plan. The Plan Representative shall have standing to petition the Bankruptcy Court for relief to the extent that the Debtors fail to provide information to the Plan Representative or to otherwise comply with the terms of the Plan. The Plan Representative shall respond to Creditor inquiries, but shall not be required to prepare formal or regular reports to Creditors. The Plan Representative shall have no fiduciary duties to Creditors. The Plan Representative's role shall be limited to the rights and obligations set forth in this Plan and the Plan Representative shall be entitled to any and all immunities otherwise available to representatives or trustees appointed by the Bankruptcy Court. The Plan Representative shall not be bonded or required to carry insurance with respect to the Chapter 11 Case. The identity of the initial Plan Representative shall be disclosed in a filing with the Bankruptcy Court at least seven (7) days prior to the deadline for objections to confirmation of the Plan. In the event that the Plan Representative dies or otherwise becomes permanently disabled, the Debtors may request that the Bankruptcy Court appoint a successor. If the Plan Representative wishes to resign, he or she must petition the Bankruptcy Court to appoint a successor. The Plan Representative shall be compensated from the Estate Assets for services rendered in the Chapter 11 Case at his or her customary hourly rate, plus reimbursement of expenses reasonably incurred. The Plan Representative shall not be required to file a fee application to receive compensation. The Plan Representative shall be permitted to employ counsel only to the extent necessary to petition the Bankruptcy Court as provided herein, and such counsel shall be compensated out of the Estate Assets. The Plan Representative shall not be permitted to employ any other Agents, unless otherwise ordered by the Bankruptcy Court. The role of the Plan Representative shall terminate upon distribution of substantially all Estate Assets.

**5.4 Debtors' Powers and Authority.**

**5.4.1 Generally.** From and after the Effective Date and subject to the oversight of the Plan Representative, the Debtors' principal objectives and responsibilities under the Plan shall be to: (a) maximize the value of the Estate Assets for the benefit of Creditors; (b) minimize Claims that

Case: 10-40297 Doc# 102 Filed: 03/24/10 Entered: 03/24/10 18:25:02 Page 26 of 46

may be asserted against the Debtors and the Estate; (c) reconcile Claims against the Debtors; and (d) make distributions to Creditors in accordance with the terms of the Plan. On the Effective Date and subject to the oversight of the Plan Representative, the Debtors shall be deemed to have been appointed as the representatives of the Estate by the Bankruptcy Court pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code for purposes of the Estate Assets. The powers, authority, responsibilities and duties of the Debtors shall be governed by the Plan and the Confirmation Order. The Debtors may execute, deliver, file or record such documents, instruments, releases and other agreements, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**5.4.2 Responsibilities and Authority of Debtors.** Subject to the oversight of the Plan Representative, the responsibilities and authority of the Debtors from and after the Effective Date shall include: (a) effectuating a liquidation of the Estate Assets (including the assets of the Development Entities) in a manner that maximizes value for the benefit of Creditors and minimizes Claims that may be asserted against the Estate, including deficiencies that may exist as to Claims against the assets of the Development Entities; (b) reviewing, reconciling, and if appropriate, objecting to Claims against the Estate; (c) pursuing, collecting and retaining any Tax Refunds available to the Estate (including filing and prosecuting any necessary or appropriate motions under Section 505 of the Bankruptcy Code to determine the finality of any Tax Refunds received by the Debtors or the Estate); (d) analyzing and, if appropriate, pursuing any Available Claims and/or Defenses, in any court of competent jurisdiction; (e) calculating and implementing all distributions from the Estate Assets in accordance with the Plan; (f) retaining and paying at normal and customary rates, or on a contingency fee basis, professionals in connection with the Debtors' duties under the Plan; and (g) such other responsibilities as may be vested in the Debtors pursuant to the Plan or the Confirmation Order or as may be necessary and proper to carry out the provisions of the Plan.

**5.4.3 Powers of Debtors.** Subject to the oversight of the Plan Representative, the powers of the Debtors to administer the Estate Assets from and after the Effective Date shall, without any need for approval of the Bankruptcy Court in each of the following instances, include *inter alia*, (a) the power to invest funds in, and withdraw, make distributions and pay taxes and other

obligations owed by the Debtors from the Estate Assets in accordance with the Plan, (b) the power to engage and compensate without prior Bankruptcy Court order or approval employees and professionals to assist the Debtors with respect to their responsibilities under the Plan, (c) the power to prosecute, compromise and settle the Available Claims and/or Defenses on behalf of the Estate, and (d) such other powers as may be vested in or assumed by the Debtors pursuant to the Plan or order of the Bankruptcy Court, or as may be necessary and proper to carry out the provisions of the Plan. Subject to the oversight of the Plan Representative, the Debtors shall have absolute discretion from and after the Effective Date to pursue or not to pursue any and all Available Claims and/or Defenses, as the Debtors determine is in the best interests of Creditors and consistent with the purposes of the Plan, and the Debtors shall have no liability for the outcome of their decision, other than those decisions constituting gross negligence or willful misconduct. The Debtors may incur any reasonable and necessary expenses in liquidating and converting the Estate Assets to Cash.

**5.4.4 Compensation of Debtors and Professionals.** From and after the Effective Date, the Debtors shall be compensated (for their own personal benefit) for their efforts to effectuate the provisions of the Plan in the form of a management fee out of the Estate Assets in the amount of $25,000 per month for a period of one (1) year following the Effective Date and, to the extent beneficial to the Estate and approved by the Plan Representative, up to $10,000 per month for one (1) year following the one (1) year anniversary of the Effective Date. As an additional incentive to the Debtors for implementing the Plan, the Debtors shall be compensated (for their own personal benefit) in the form of a success fee equal to 20% of any distributions realized by the Estate on account of the Debtors' interests in Clover DHDA, LLC. The Debtors shall not be required to file a fee application to receive compensation. The Debtors shall have the right to retain the services of attorneys, accountants, and other professionals and agents in the discretion of the Debtors, including those parties who acted as Professionals for the Debtors and the Estate during the Chapter 11 Case, to assist and advise the Debtors in the performance of their duties and to compensate such professionals from the Estate Assets to the extent such Professionals are retained by the Debtors for purposes of effectuating the terms of the Plan for the benefit of Creditors.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Case: 10-40297 Doc# 102 Filed: 03/24/10 Entered: 03/24/10 18:25:02 Page 28 of 46

**5.5    License and Overhead.**  From and after the Effective Date, the Debtors shall retain ownership and control of, and shall be permitted to utilize, the contractor license held by SCG and the staff and overhead available to DRG.  The Debtors shall fund the operations of DRG out of Estate Assets in the amount of $15,000 per month for a period of one (1) year following the Effective Date for purposes of reimbursing DRG for services performed consistent with the objectives of the Plan in maximizing the value of Estate Assets and/or reducing Creditor deficiency claims arising out of the Development Entities.  The Debtors also shall be permitted to utilize SCG and DRG for purposes outside of the Plan provided that such use does not conflict with the terms of the Plan and no Estate Assets are used to fund SCG or DRG for such purpose.

**5.6    Abandonment.**  From and after the Effective Date and subject to the oversight of the Plan Representative, the Debtors may, in their discretion, abandon an Estate Asset or cause a Development Entity to abandon its property to the extent that such asset or property is burdensome or of inconsequential value to the Estate, subject to the consent of any applicable lenders with liens against such property.  In addition, the Debtors may, in their discretion, permit or allow a creditor with security interests in the assets of any Development Entity to foreclose on its collateral to the extent that such assets are burdensome or of inconsequential value to the Estate, it being understood that pursuant to the Wells Fargo Settlement Agreement, the Debtors have agreed not to challenge, impede or delay any such foreclosures sought by Wells Fargo.

**5.7    Financing.**  From and after the Effective Date and subject to the oversight of the Plan Representative, the Debtors may, in their discretion, cause a Development Entity to incur credit as may be necessary to maximize recoveries available to such Development Entity.  Any excess funds remaining after payment of debts of any applicable Development Entity shall be distributed to the Debtors and made available to Creditors as Estate Assets under the Plan, except as otherwise set forth in the Plan.  Notwithstanding the foregoing, the Debtors shall not personally guarantee or become obligated to pay any new loans provided to or for the benefit of any Development Entity from and after the Effective Date.  In addition, from and after the Effective Date and subject to the oversight of the Plan Representative, the Debtors shall be permitted to obtain advances that Bank of Marin, Heritage Bank and/or Wells Fargo agree to make with respect to real property and

improvements that the Debtors are liquidating under the Plan for the benefit of such Creditors. Any advances from Bank of Marin, Heritage Bank and/or Wells Fargo shall be payable solely out of the proceeds of asset sales and shall be non-recourse to the Debtors and the Estate.

**5.8 Available Claims and/or Defenses.** Unless any Available Claim and/or Defense is expressly waived, relinquished, released, compromised, or settled in the Plan, the Wells Fargo Settlement Agreement, or any Final Order (including, without limitation, the Confirmation Order), the Debtors expressly reserve for the benefit of Creditors any Available Claims and/or Defenses for later adjudication. The Available Claims and/or Defenses specifically include, without limitation, any and all Avoidance Actions not expressly waived, relinquished, released, compromised, or settled in the Plan, the Wells Fargo Settlement Agreement, or any Final Order, including claims to avoid the transfers identified in the Schedules, all of which are expressly preserved and may be pursued by the Debtors against such parties or any subsequent transferees. Creditors are urged to review the Schedules, which identify the specific transfers, including names of transferees and dates and amounts of transfers, that may be the subject of an Avoidance Action. The reservation set forth in this Section 5.8 shall include, without limitation, any Available Claims and/or Defenses not specifically identified in the Plan or Disclosure Statement, or of which the Debtors presently may be unaware, or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances that may change or be different from those the Debtors now believe to exist and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise), or laches will apply to such Available Claims and/or Defenses upon or after the Confirmation of the Plan based on the Disclosure Statement, the Plan or the Confirmation Order, except where such claims and/or defenses have been expressly waived, relinquished, released, compromised, or settled in the Plan, the Wells Fargo Settlement Agreement, or by Final Order. Following the Effective Date and subject to the oversight of the Plan Representative, the Debtors (on behalf of Creditors) may assert, compromise or dispose of the Available Claims and/or Defenses without further notice to Creditors or authorization of the Bankruptcy Court.

Case: 10-40297 Doc# 102 Filed: 03/24/10 Entered: 03/24/10 18:25:02 Page 30 of 46

**5.9 Wells Fargo Settlement Agreement.** The Plan implements and effectuates the terms of the Wells Fargo Settlement Agreement. From and after the Effective Date, the Debtors shall be obligated to observe and perform any and all obligations required under the Wells Fargo Settlement Agreement.

**5.10 Debtor Trusts.** The Estate Assets include all assets owned by the Debtors and the Debtor Trusts, excluding only the Debtor Retained Assets. To the extent not terminated prior to the Effective Date, the Debtor Trusts shall be terminated as of the Effective Date and all assets of the Debtor Trusts shall revert to the Debtors and constitute Estate Assets, excluding only the Debtor Retained Assets.

**5.11 Death or Incapacity of Debtors.** In the event that one or the both of the Debtors dies or otherwise becomes permanently incapacitated prior to final disposition of the Estate Assets and entry of a final decree closing the Chapter 11 Case, the obligations of the Debtors under the Plan shall become the responsibility either of: (a) the surviving and able Debtor; or (b) a representative appointed by the Bankruptcy Court upon motion by the Plan Representative or any party-in-interest on reasonable notice to all Creditors.

**5.12 Dissolution of the Creditors' Committee.** On the Effective Date, the Creditors' Committee shall be dissolved and the members of the Creditors' Committee shall be released and discharged from any further authority, duties, responsibilities, liabilities and obligations related to, or arising from, the Chapter 11 Case, except that the Creditors' Committee shall continue in existence and have standing and capacity to prepare and prosecute applications for the payment of fees and reimbursement of expenses incurred by the Creditors' Committee or its Professionals.

**5.13 Final Decree.** At any time following the Effective Date and subject to the approval of the Plan Representative, the Debtors shall be authorized to file a motion for the entry of a final decree closing the Chapter 11 Case pursuant to Section 350 of the Bankruptcy Code.

## ARTICLE 6

## PROVISIONS GOVERNING DISTRIBUTIONS

**6.1 Distributions Under the Plan.** Subject to the oversight of the Plan Representative, the Debtors shall administer Claims and make distributions in respect of Allowed Claims against the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Case: 10-40297 Doc# 102 Filed: 03/24/10 Entered: 03/24/10 18:25:02 Page 31 of 46

Debtors. Distributions to be made by the Debtors may be made by any Person designated or retained by the Debtors to serve as disbursing agent without the need for any further order of the Bankruptcy Court.

**6.2 Estimation.** In order to establish appropriate reserves under the Plan and avoid undue delay in the administration of the Chapter 11 Case, the Debtors shall have the right to seek an order of the Bankruptcy Court pursuant to Section 502(c) of the Bankruptcy Code, estimating the amount of any Claim.

**6.3 Distributions on Account of Disputed Claims and Estimated Claims.** Except as otherwise provided in a Final Order or as agreed by the relevant parties, distributions on account of Disputed Claims and Estimated Claims that become Allowed after the Effective Date shall be made by the Debtors at such periodic intervals as the Debtors determine to be reasonably prudent.

**6.4 No Distributions Pending Allowance.** Notwithstanding anything herein to the contrary: (a) no distribution shall be made with respect to any Disputed Claim or Estimated Claim until such Claim becomes an Allowed Claim, and (b) unless determined otherwise by the Debtors in consultation with the Plan Representative, no distribution shall be made to any Person that holds both an Allowed Claim and either a Disputed Claim or an Estimated Claim until such Person's Disputed Claims and Estimated Claims have been resolved by settlement or Final Order.

**6.5 Objection Deadline.** The Debtors shall file all objections to Disputed Claims, and shall file all motions to estimate Claims under Section 502(c) of the Bankruptcy Code, on or before the Claims Objection Deadline.

**6.6 Disputed and Estimated Claims Reserve.** On and after the Effective Date, the Debtors shall maintain in reserve such Cash as the Debtors estimate to be reasonably necessary to satisfy the distributions that could be required to be made under the Plan. For the avoidance of doubt, distributions by the Debtors to any Person holding a Disputed Claim or Estimated Claim against the Debtors that becomes an Allowed Claim after the Effective Date shall be made together with any payments or other distributions that would have been made to such Person had its Disputed Claim or Estimated Claim become an Allowed Claim on or prior to the Effective Date.

**6.7 Settling Disputed Claims.** Subject to the oversight of the Plan Representative, the Debtors shall be authorized to settle, or withdraw any objections to, any Disputed Claims following the Effective Date without need for approval of the Bankruptcy Court.

**6.8 Distributions in Cash.** The Debtors shall make any required Cash payments to the holders of Allowed Claims: (a) in U.S. dollars by check, draft or warrant, drawn on a domestic bank selected by the Debtors, or by wire transfer from a domestic bank, at the Debtors' option, and (b) by first-class mail (or by other equivalent or superior means as determined by the Debtors).

**6.9 Unclaimed Distributions.** Any entity which fails to claim any Cash within one hundred twenty (120) days from the date upon which a distribution is first made to such entity shall forfeit all rights to any distribution under the Plan and the Debtors shall be authorized to cancel any distribution that is not timely claimed. Pursuant to Section 347(b) of the Bankruptcy Code, upon forfeiture, such Cash (including interest thereon, if any) shall revert to the pool of Estate Assets otherwise available to Creditors. Upon forfeiture, the claim of any Creditor with respect to such funds shall be discharged and forever barred notwithstanding any federal or state escheat laws to the contrary, and such Creditor shall have no claim whatsoever against the Debtors, the Estate, or any holder of an Allowed Claim to whom distributions are made by the Debtors.

**6.10 Setoff.** Except as otherwise provided in the Wells Fargo Settlement Agreement, nothing contained in this Plan shall constitute a waiver or release by the Debtors or the Estate of any right of setoff or recoupment that the Debtors or the Estate may have against any Creditor. To the extent permitted by applicable law, the Debtors may, but are not required to, set off or recoup against any Claim, and the payments or other distributions to be made under the Plan in respect of such Claim, those offsetting claims of any nature whatsoever that arose before the Petition Date that the Debtors or the Estate may have against the holder of such Claim.

**6.11 Taxes.** Pursuant to Section 346(f) of the Bankruptcy Code, the Debtors shall be entitled to deduct any federal, state or local withholding taxes from any Cash payments made with respect to Allowed Claims, as appropriate. The Debtors shall be authorized to take all actions necessary to comply with applicable withholding and recording requirements. Notwithstanding any other provision of the Plan, each holder of an Allowed Claim that has received a distribution of Cash

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Case: 10-40297 Doc# 102 Filed: 03/24/10 Entered: 03/24/10 18:25:02 Page 33 of 46

under the Plan shall have sole and exclusive responsibility for the satisfaction or payment of any tax obligation imposed by any governmental unit, including income, withholding and other tax obligation, on account of such distribution. For tax purposes, distributions received in respect of Allowed Claims will be allocated first to the principal amount of such Claims, with any excess allocated to unpaid accrued interest.

**6.12 De Minimis Distributions.** If any interim distribution under the Plan to the holder of an Allowed Claim would be less than $100.00, the Debtors may withhold such distribution until a final distribution is made to such holder. If any final distribution under the Plan to the holder of an Allowed Claim would be less than $25.00, the Debtors may cancel such distribution. Any unclaimed distributions pursuant to this Section 6.12 shall be treated as unclaimed property under Section 6.9 of the Plan. Notwithstanding any other provision of this Plan, at the point when the remaining Net Proceeds (other than any such proceeds reserved on account of Disputed Claims) consist of an amount impracticable to distribute not to exceed $25,000, the Debtors, with the consent of the Plan Representative, may donate such Cash to a nonprofit organization or organizations that are exempt pursuant to section 501(c) of the Internal Revenue Code (Title 26 of the United States Code); provided that any donations made pursuant to this provision shall be made to nonprofit organizations that fund or perform community-based services primarily in or around the metropolitan areas served by the Bankruptcy Court.

## ARTICLE 7

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**7.1 Rejection of Executory Contracts and Unexpired Leases.** Except for any executory contracts or unexpired leases of the Debtors: (a) that previously were assumed or rejected by an order of the Bankruptcy Court, pursuant to Section 365 of the Bankruptcy Code; (b) as to which a motion for approval of the assumption or rejection of such contract or lease has been filed and served prior to Confirmation; or (c) that constitute contracts of insurance in favor of, or that benefit, the Debtors or the Estate, each executory contract and unexpired lease entered into by the Debtors prior to the Petition Date that has not previously expired or terminated pursuant to its own terms shall be deemed rejected pursuant to Section 365 of the Bankruptcy Code as of the Effective Date.

Case: 10-40297 Doc# 102 Filed: 03/24/10 Entered: 03/24/10 18:25:02 Page 34 of 46

The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejection, pursuant to Section 365 of the Bankruptcy Code, as of the Effective Date. For the avoidance of doubt, any insurance policy acquired for the benefit of the Debtors before or after the Petition Date shall remain in full force and effect after the Effective Date according to its terms.

**7.2 Bar Date for Rejection Damages.** If the rejection of an executory contract or unexpired lease pursuant to the Plan or otherwise gives rise to a Claim by the other party or parties to such contract or lease, such Claim shall be forever barred and shall not be enforceable against the Debtors or the Estate, unless a proof of Claim is filed with the Bankruptcy Court and served on the Debtors by the Rejection Claim Bar Date.

## ARTICLE 8

## CONDITIONS PRECEDENT

**8.1 Conditions to Confirmation.** The following are conditions precedent to confirmation of this Plan:

(a) The Bankruptcy Court shall have entered a Final Order approving a Disclosure Statement with respect to this Plan in form and substance satisfactory to the Debtors; and

(b) The Confirmation Order shall be in a form and substance reasonably acceptable to the Debtors.

**8.2 Conditions to Effectiveness.** The following are conditions precedent to the occurrence of the Effective Date:

(a) The Confirmation Date shall have occurred;

(b) The Confirmation Order shall be a Final Order;

(c) No request for revocation of the Confirmation Order under Section 1144 of the Bankruptcy Code has been made, or if made, remains pending; and

(d) The Debtors shall have determined that all Disputed Claims and Estimated Claims have been sufficiently resolved or estimated so as to reserve for such Claims in accordance with Section 6.6 of the Plan.

**8.3 Waiver of Conditions.** Conditions to Confirmation and the Effective Date may be waived, in whole or in part, by the Debtors at any time without notice, an order of the Bankruptcy Court, or any further action other than proceeding to Confirmation and consummation of the Plan.

## ARTICLE 9

## EFFECTS OF CONFIRMATION

**9.1 Binding Effect.** The rights afforded under the Plan and the treatment of all Claims and Interests under the Plan shall be the sole and exclusive remedy on account of such Claims against the Debtors and the Estate Assets, including any interest accrued on such Claims from and after the Petition Date or interest which would have accrued but for the commencement of the Chapter 11 Case. The distributions made pursuant to the Plan shall be in full and final satisfaction, settlement, release and discharge of the Allowed Claims on account of which such distributions are made. Confirmation of the Plan shall bind and govern the acts of the Debtors and all holders of Claims against the Debtors, whether or not: (a) a proof of Claim is filed or deemed filed pursuant to Section 501 of the Bankruptcy Code; (b) a Claim is allowed pursuant to Section 502 of the Bankruptcy Code, or (c) the holder of a Claim has accepted the Plan.

**9.2 Property Revests Free and Clear.** As also set forth in Section 5.1 of the Plan, upon the Effective Date, title to all Estate Assets of the Debtors shall vest in the Debtors for the benefit of Creditors and for the purposes contemplated under the Plan. Except as otherwise provided in the Plan, upon the Effective Date, all Estate Assets shall be free and clear of all Claims and Interests, including Liens, charges or other encumbrances of Creditors of the Debtors. As also set forth in Section 5.2 of the Plan, upon the Effective Date, title to the Debtor Retained Assets shall vest in the Debtors for their own personal benefit, subject to terms of the Plan. Except as otherwise provided in the Plan, upon the Effective Date, all Debtor Retained Assets shall be free and clear of all Claims and Interests, including Liens, charges or other encumbrances of Creditors of the Debtors.

**9.3 Discharge.** *Upon the Effective Date and except as provided in the Plan or the Confirmation Order, (a) the rights afforded under the Plan and the treatment of Claims under the Plan are in exchange for and in complete satisfaction, discharge, and release of, all Claims, including, without limitation, any interest or fees accrued on the Wells Fargo Claims and/or General*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

*Unsecured Claims from the Petition Date; and (b) confirmation of the Plan shall discharge the Debtors from all Claims or other debts that arose at any time before the Confirmation Date, and all debts of the kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not: (i) a proof of claim based on such debt is filed or deemed filed under Section 501 of the Bankruptcy Code; (ii) a Claim based on such debt is Allowed under Section 502 of the Bankruptcy Code; or (iii) the holder of a Claim has accepted the Plan.*

**9.4 Permanent Injunction.** *Except as provided in the Plan or in the Confirmation Order, as of the Confirmation Date, all Persons that have held, currently hold or may hold a Claim or other debt or liability that is stayed, impaired, discharged or terminated pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions either (x) against the Debtors, the Estate, or their property on account of all or such portion of any such Claims, Interests, debts or liabilities that are stayed, impaired or terminated, or (y) against any Person with respect to any Available Claim and/or Defense, which is waived, released or exclusively retained under the Plan: (a) commencing or continuing, in any manner or in any place, any action or other proceeding; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order, (c) creating, perfecting or enforcing any lien or encumbrance; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due; and (e) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan. To avoid any doubt, nothing in the Plan shall be construed or is intended to affect, enjoin, modify, release or waive any claims, rights, and actions that a third party may have against a person other than the Debtors or the Debtors. Unless otherwise provided in the Plan or the Confirmation Order, all injunctions and stays provided for in the Chapter 11 Case pursuant to Sections 105 and 362 of the Bankruptcy Code or otherwise in effect on the Confirmation Date, shall remain in full force and effect until the Effective Date. From and after the Effective Date, except as provided in the Plan or in the Confirmation Order, all Persons are permanently enjoined from, and restrained against, commencing or continuing in any court any suit, action or other proceeding, or otherwise asserting any claim or interest, (a) seeking to hold (i)*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

*the Debtors or the Estate, or (ii) the property of the Debtors or the Estate, liable for any Claim, obligation, right, interest, debt or liability that has been addressed or released pursuant the Plan.*

**9.5 Exoneration and Reliance.** The Debtors, and each of their respective Agents, shall not be liable, other than for gross negligence or willful misconduct, to any holder of a Claim or Interest or any other entity with respect to any action, omission, forbearance from action, decision, or exercise of discretion taken at any time after the Petition Date in connection with the Chapter 11 Case or the negotiation, formulation, development, proposal, disclosure, Confirmation or implementation of the Plan. The Debtors, and each of their respective Agents may reasonably rely upon the opinions of their respective counsel, accountants, and other experts and professionals and such reliance, if reasonable, shall conclusively establish good faith and the absence of gross negligence or willful misconduct; provided however, that a determination that such reliance is unreasonable shall not, by itself, constitute a determination or finding of bad faith, gross negligence or willful misconduct.

**ARTICLE 10**

**RETENTION OF JURISDICTION**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Case after the Effective Date to the extent legally permissible, including, without limitation, jurisdiction to:

(a) Allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the allowance or priority of Claims;

(b) Grant or deny any applications for allowance of compensation or reimbursement of expenses authorized under the Bankruptcy Code or the Plan;

(c) Resolve any matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which the Debtors is a party and to hear, determine and, if necessary, liquidate, any Claims arising from, or cure amounts related to, such assumption or rejection;

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Case: 10-40297 Doc# 102 Filed: 03/24/10 Entered: 03/24/10 18:25:02 Page 38 of 46

(d) Ensure that distributions to holders of Allowed Claims are accomplished in accordance with the Plan;

(e) Decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters and grant or deny any applications or motions involving the Debtors that may be pending on the Effective Date;

(f) Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

(g) Resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Plan or any Person's obligations incurred in connection with the Plan;

(h) Modify the Plan before or after the Effective Date under Section 1127 of the Bankruptcy Code or modify the Disclosure Statement or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Disclosure Statement; or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created in connection with the Plan and the Disclosure Statement, in such manner as may be necessary or appropriate to consummate the Plan, to the extent authorized by the Bankruptcy Code;

(i) Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

(j) Determine any other matters that may arise in connection with or related to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order, except as otherwise provided in the Plan;

(k) Hear and determine the Available Claims and/or Defenses commenced by the Debtors to the extent the Bankruptcy Court otherwise has jurisdiction over such claims;

(l) Enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation or enforcement of the Plan, except as otherwise provided in the Plan; and

(m) Enter an order closing the Chapter 11 Case at the appropriate time.

## ARTICLE 11

## AMENDMENT AND WITHDRAWAL OF PLAN

**11.1 Amendment of the Plan.** At any time before the Confirmation Date, and except as otherwise set forth in the Wells Fargo Settlement Agreement, the Debtors may alter, amend, or modify the Plan, subject only to the restrictions on modifications set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019. After the Confirmation Date, the Debtors may, under Section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, or as otherwise may be necessary to carry out the purposes and effects of the Plan so long as such proceedings do not materially and adversely affect the treatment of holders of Claims under the Plan; provided, however, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or applicable order of the Bankruptcy Court.

**11.2 Revocation or Withdrawal of the Plan.** The Debtors reserve the right to revoke or withdraw this Plan. If the Plan is withdrawn or revoked, then the Plan shall be deemed null and void, and nothing contained in the Plan shall be deemed a waiver of any Claims by or against the Debtors or any other Person in any further proceedings involving the Debtors or an admission of any sort, and this Plan and any transaction contemplated by this Plan shall not be admitted into evidence in any proceeding.

## ARTICLE 12

## MISCELLANEOUS

**12.1 Effectuating Documents; Further Transactions; Timing.** The Debtors shall be authorized and directed to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents, and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. All transactions required to occur on the Effective Date under the terms of the Plan shall be deemed to have occurred simultaneously.

**12.2 Exemption From Transfer Taxes.** In accordance with Section 1146(c) of the Bankruptcy Code, the making, delivery, or recording of a deed or other instrument of transfer under the Plan shall not be subject to any stamp tax or similar tax and the appropriate state or local government officials or agents shall be directed to forego the collection of any such tax and to accept for filing or recordation any of the foregoing instruments or other documents without the payment of any such tax.

**12.3 Governing Law.** Except to the extent that the Bankruptcy Code or other federal law is controlling, the rights, duties and obligations of the Debtors, the Plan Representative, and any other Person arising only under the Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of California, without giving effect to California's choice of law provisions.

**12.4 Quarterly Fees to the United States Trustee.** All fees payable under 28 U.S.C. § 1930(a)(6) shall be paid by the Debtors in the amounts and at the times such fees may become due up to and including the Effective Date. Thereafter, the Debtors shall continue to pay all fees payable under 28 U.S.C. § 1930(a)(6) out of Estate Assets until the Chapter 11 Case is closed, dismissed or converted. Upon the Effective Date, the Debtors shall be relieved from the duty to make the reports and summaries required under Bankruptcy Rule 2015(a).

**12.5 Notice of Confirmation.** As soon as practicable following the Effective Date, the Debtors shall file and serve a notice of the entry of the Confirmation Order in the manner required under Bankruptcy Rule 2002(f). The notice shall further identify the Effective Date and shall set

forth the Administrative Claim Bar Date, the Professional Fees Bar Date, the Rejection Claim Bar Date and any other deadlines that may be established under the Plan or the Confirmation Order.

**12.6 Successors and Assigns.** The Plan is binding upon and will inure to the benefit of the Debtors and their Agents, successors, and assigns, including, without limitation, any bankruptcy trustees or estate representatives.

**12.7 Notices.** Except as otherwise provided in the Plan, any notice or other communication required or permitted under the Plan will be in writing and deemed to have been validly served, given, delivered, and received upon the earlier of: (a) the first day after transmission by facsimile or hand delivery or deposit with an overnight express service or overnight mail delivery service; or (b) the third calendar day after deposit in the United States mail, with proper first class postage prepaid.

**12.7.1 Notice to Claim Holders.** Notices to Persons holding a Claim will be sent to the addresses set forth in such Person's proof of Claim or, if none was filed, at the address set forth in the Schedules.

**12.7.2 Post-Effective Date Notices.** Except as expressly set forth herein, following the Effective Date, notices will be served only on the Office of the United States Trustee and those Persons who file with the Court and serve upon the Debtors a request, which includes such Person's name, contact person, address, telephone number and facsimile number, that such Person receive notice of post-Effective Date matters. Persons who had previously filed with the Court requests for special notice of the proceedings and other filings in the Chapter 11 Case will not receive notice of post-Effective Date matters unless such Persons file a new request in accordance with this Section 12.7.2.

**12.8 Incorporation by Reference.** All exhibits, schedules and supplements to the Plan are incorporated and are made a part of the Plan as if set forth in full in the Plan.

**12.9 Computation of Time.** In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply. Any reference to "day" or "days" shall mean calendar days, unless otherwise specified herein.

**12.10 Conflict of Terms.** In the event of a conflict between the terms of the Plan and the Disclosure Statement, the terms of the Plan will control.

Case: 10-40297 Doc# 102 Filed: 03/24/10 Entered: 03/24/10 18:25:02 Page 42 of 46

**12.11 Severability of Plan Provisions.** If, prior to Confirmation, any non-material term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.

[signature page follows]

Case: 10-40297 Doc# 102 Filed: 03/24/10 Entered: 03/24/10 18:25:02 Page 43 of 46

Dated: March 24, 2010

By: */s/ Doyle D. Heaton*
Doyle D. Heaton

Dated: March 24, 2010

By: */s/ Mary K. Heaton*
Mary K. Heaton

Respectfully submitted by,

PACHULSKI STANG ZIEHL & JONES LLP

By: */s/ Maxim B. Litvak*
Debra I. Grassgreen
Maxim B. Litvak
Attorneys for Debtors and Debtors in Possession

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

38
JOINT PLAN OF LIQUIDATION
35604-001\DOCS_SF:69127.6

Case: 10-40297 Doc# 102 Filed: 03/24/10 Entered: 03/24/10 18:25:02 Page 44 of 46

## ***LIST OF EXHIBITS TO PLAN***

**Exhibit A:** Development Entities

Case: 10-40297 Doc# 102 Filed: 03/24/10 Entered: 03/24/10 18:25:02 Page 45 of 46

**EXHIBIT A**

**DEVELOPMENT ENTITIES**


Adobe Partners, LLC
Cherry Lane & Associates, Ltd.
Clover DHDA LLC
Corona Road Associates LLC
Delco Builders & Developers, Inc.
DG & H Developers LLC
HWR LLC
Mardel LLC
Oak Brook Partners II LLC
Sonoma-Napa Partners, LLC
Southgate Partners LLC
Walden Park Associates, LLC
Washington Associates, LLC
Windsor Lofts LLC