SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
MICHAEL H. AHRENS, Cal. Bar No. 44766
ORI KATZ, Cal. Bar No. 209561
ROBERT K. SAHYAN, Cal. Bar No. 253763
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4106
Telephone: 415-434-9100
Facsimile: 415-434-3947
Email: mahrens@sheppardmullin.com
       okatz@sheppardmullin.com
       rsahyan@sheppardmullin.com

Attorneys for the Official Committee
of Unsecured Creditors

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re:<br><br>DOYLE D, HEATON and<br>MARY K. HEATON,<br><br>Debtors. | Case No. 10-40297 EDJ<br><br>Chapter 11<br><br>**FIRST AND FINAL APPLICATION OF SHEPPARD, MULLIN, RICHTER & HAMPTON LLP FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES INCURRED AS COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**<br><br>Date: September 9, 2010<br>Time: 2:30 p.m.<br>Place: United States Bankruptcy Court<br>       1300 Clay Street, Rm 215<br>       Oakland, CA 94612<br>Judge: Hon. Edward D. Jellen |

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................... 1

II. RELIEF REQUESTED AND BASIS FOR RELIEF ............................................. 3

III. GENERAL BACKGROUND AND CASE STATUS ............................................ 4

IV. RETENTION AND PRIOR COMPENSATION .................................................. 4

V. EXHIBITS TO APPLICATION ............................................................................. 5

VI. SUMMARY OF PROFESSIONAL SERVICES RENDERED ............................. 6

VII. SUMMARY BY PROJECT BILLING CODES .................................................... 6

    A.    Maintenance Of Records ............................................................................. 6

    B.    Use Of Project Billing Categories ............................................................... 6

        1.    Early Case Administration ............................................................... 7

        2.    Committee Matters/Communications ............................................ 7

        3.    Case Administration ........................................................................ 7

        4.    Service Lists .................................................................................... 8

        5.    Claims - Administration .................................................................. 8

        6.    Cash Collateral ................................................................................ 8

        7.    Plan of Reorganization .................................................................... 8

        8.    Disclosure Statement ....................................................................... 9

        9.    Plan Implementation ...................................................................... 10

        10.    Employment Benefits/Pensions .................................................... 10

        11.    Relief From Stay Litigation .......................................................... 10

        12.    Motion to Approve Compromise of Controversy ........................ 11

        13.    Professional Compensation (other than Sheppard) ...................... 11

        14.    Sheppard Employment .................................................................. 11

VIII. EXPENSE REIMBURSEMENT ......................................................................... 11

Case: 10-40297-FS1 Doc# 268 Filed: 08/19/10 Entered: 08/19/10 16:39:26 Page 2 of 16

IX. COMPLIANCE WITH GUIDELINES ................................................................................ 12

X. CONCLUSION .................................................................................................................. 13

# I.
# INTRODUCTION

This is the first and final fee application (the "Application") for allowance of compensation and reimbursement of expenses of Sheppard, Mullin, Richter & Hampton LLP ("Sheppard") in connection with its representation of the Official Committee of Unsecured Creditors (the "Committee"), in the above-captioned chapter 11 case (the "Bankruptcy Case") of Doyle D. Heaton and Mary K. Heaton (the " Debtors").

On June 24, 2010, the Court confirmed the *First Amended Joint Plan of Liquidation Proposed by the Debtors* dated May 5, 2010, as modified by the Debtors on June 17, 2010 (the "Plan"). The Plan became effective on July 15, 2010 (the "Effective Date"). The order confirming the Plan (the "Confirmation Order") fixed the deadline for the professionals employed in this Bankruptcy case to file fee applications, which is sixty days after the Effective Date. Sheppard files this Application within the period allocated to submit professional's requests for payment of fees and reimbursement of expenses incurred during the Bankruptcy Case.

In this Application, Sheppard seeks final approval of compensation for professional legal services rendered and reimbursement of expenses incurred from February 16, 2010 through July 15, 2010, i.e., the Effective Date of the Plan (the "Application Period"), totaling $116,930.67, consisting of $116,130.50 in professional fees and of $800.17 in expenses. Sheppard also seeks final approval of $6,500 (or such other amount as may be supplemented at the hearing on this Application) in connection with the preparation of, and the hearing on, this Application.

As will be set forth in more detail in this Application, Sheppard's efforts on behalf of the Committee have resulted in significant benefit to the estate and its creditors in a significantly short period of time. When the Bankruptcy Case was filed, the estates' liabilities painted a bleak picture for the unsecured creditors. They gave rise to the possibility that the encumbered assets of the estate and those of the affiliates of the Debtors (the "Development Entities") would be surrendered to the secured claimants or liquidated at

-1-

fire sale prices and any remaining free assets would be swallowed up by monstrous deficiency claims.  Under such scenario, the unsecured creditors' recovery, if any, was anticipated to be negligible at best.

Sheppard, on behalf of the Committee, sought to preserve the unsecured creditors' interests and enhance the likelihood of a meaningful recovery on account of their claims. Immediately after the Committee was appointed and retained Sheppard, Sheppard worked with the Debtors and their counsel with respect to those matters and communicated various questions, proposals, observations and recommendations about the administration of the estate.  At the request of the Committee, Sheppard took steps to perform its due diligence and analyze and protect the assets of the estate.  This included weighing in immediately on pending motions covering use of cash collateral, employment and compensation of ordinary course professionals, relief from stay motions regarding several of the Debtors' rental properties, the estate's tax refunds, and litigation against the Debtors (which involved two members of the committee who recused themselves from all Committee meetings related to the review and analysis of the litigation and the related settlement).

Sheppard turned its attention next to the plan process.  The plan in its initial form was not acceptable to the Committee because it was, in the Committee's view, too generous to the Debtors and lacked the necessary safeguards.  Sheppard discussed these issues and engaged in extensive negotiations with the Debtors to arrive to a consensual plan that addresses the Committee's concerns and provides the unsecured creditors with concrete opportunity for a recovery on their claims.  As part of this process, Sheppard held face-to-face meetings with the Debtors, their counsel and financial advisor, reviewed the liquidation analysis prepared in support of the Plan, and prepared drafts and redrafts of significant parts of the Plan incorporating the provisions that the Committee supported. Such efforts resulted in a confirmable chapter 11 plan, which was embodied in the terms of the Plan.

## II.

## RELIEF REQUESTED AND BASIS FOR RELIEF

Sheppard seeks an order of the Court granting allowance and approval on a final basis of payment for all attorney's fees and expenses incurred by Sheppard in its representation of the Committee during the Application Period. Specifically, Sheppard seeks an order from the Court granting final approval of (a) compensation for professional legal services and reimbursement of expenses incurred during the Application Period totaling $116,930.67, consisting of $116,130.50 in professional fees and of $800.17 in expenses; and (b) $6,500 (or such other amount as may be supplemented at the hearing on this Application) estimated to be incurred in connection with this Application.

The source of the payment of the amounts sought in this Application is from the estate's available funds. Sheppard understands that there are sufficient funds in the estate for the payment of the fees and expenses sought in this Application.

In view of the time expended, the responsibilities assumed, and the reputation and skill of Sheppard in the field of bankruptcy and commercial law, Sheppard respectfully submits that the foregoing represents the reasonable value of the services rendered in this case. Sheppard believes that the services rendered were necessary, and that the attorney's fees requested constitute reasonable and necessary fees expended on behalf of the estate.

Sheppard's request for relief is based on this Application, the notice (the "Notice") of the hearing on the Application, the declaration of Ori Katz filed in support of the Application, and all related declarations and pleadings previously filed, or that may be filed, prior to the hearing on this matter.

This Application is made pursuant to the provisions of Bankruptcy Rule 2016 and Section 330 of title 11 of the United States Code (the "Bankruptcy Code"). Except as otherwise noted in the pages that follow, the Application conforms with the United States Trustee's guidelines for compensation and expense reimbursement for professionals (the "UST Guidelines") and the Guidelines for Compensation and Expense Reimbursement of Professionals and Trustee's for the United States Bankruptcy Court, Northern District of

California ("District Guidelines"). The UST Guidelines and the District Guidelines are referred to together as the "Guidelines" in this Application.

In support of the Application, Sheppard respectfully represents as follows:

## III.

## GENERAL BACKGROUND AND CASE STATUS

The voluntary chapter 11 petition initiating this Bankruptcy Case was filed by the Debtors on January 11, 2010. On February 10, 2010, the United States Trustee filed its initial notice of appointment of the Committee. The following day, the United States filed its amended notice appointing the following members to the Committee: Andrea and John Barella, Donna Goldberg, CV Anthony, LLC, Gonzalves & Santucci, Inc., and Meadow Creek Group, LLC.

On May 5, 2010, the Debtors filed the Plan, which was confirmed by the Court at a hearing held on June 24, 2010. As noted above, the Effective Date of the Plan took place on July 15, 2010.

Sheppard understands that a more detailed background discussion regarding the Debtors and the status of the case will be contained in the contemporaneously filed fee application of Debtors' counsel, Pachulski, Stang, Ziehel & Jones LLP ("PSZJ"). Although Sheppard and the Committee have not reviewed PSZJ's fee application prior to filing this Application, Sheppard will rely on PSZJ's background and case status discussion for the purposes contemplated under District Guideline, I.2. and in order to reduce the fees that would otherwise be incurred by Sheppard in drafting what might otherwise be a repetitive discussion of the case.

## IV.

## RETENTION AND PRIOR COMPENSATION

On March 9, 2010, the Court entered its order (the "Employment Order") approving Sheppard's employment as counsel for the Committee effective February 16, 2010.

This is Sheppard's first and final application for payment of fees and reimbursement of costs in this case. Sheppard has not received payments to date on account of work performed during the Application Period.

Sheppard is a limited liability partnership, including professional corporations, each of whose partners and associates who rendered services in the Bankruptcy Case is an attorney at law duly licensed to practice law in the State of California and is a member of the bar of this State. There is no agreement or understanding between Sheppard and any other person, other than members of Sheppard, for the sharing of compensation and expense reimbursement to be received for services rendered and costs incurred in this Bankruptcy Case.

## V.

## EXHIBITS TO APPLICATION

The exhibits attached to this Application are as follows:

A copy of the Employment Order is attached as <u>Exhibit A</u>.

A detailed statement (the "Statement") of the services Sheppard performed and the out-of-pocket expenses Sheppard incurred during the Application Period are set forth on <u>Exhibit B</u>. The Statement sets forth Sheppard's time and expense records as kept in the ordinary course of Sheppard's business, and contains the following information: the names of each attorney or paralegal performing services, the description of the services, and the amount of time incurred for their services. The Statement is organized in chronological order, separated by billing categories for each task or matter (each a "Project Billing Category") as required by the Guidelines. A summary of the professional fees incurred by each attorney or paralegal performing services, the hourly rate, the amount of time spent and related fees, is set forth on Exhibit B at page. A summary of Sheppard's expenses is set forth on Exhibit B at page 20.

The "summary sheet" required under Section (b)(3) of the Guidelines is attached as <u>Exhibit C</u>.

-5-

1    A copy of Sheppard's letter to the Committee Chairperson inviting discussion,
2    questions, comments, concerns or objections to the Application, is attached as <u>Exhibit D</u>.

## VI.

## SUMMARY OF PROFESSIONAL SERVICES RENDERED

Sheppard's attorneys spent 262.50 hours in performing the services described in the Application, at an average hourly billing rate of $442.40. Partner Ori Katz and associate Robert Sahyan performed the majority of the work in this case. A copy of Sheppard's "summary sheet" is attached to this Application as Exhibit C and provides a synopsis of the information required under the Guidelines.

## VII.

## SUMMARY BY PROJECT BILLING CODES

### A.   Maintenance Of Records

In compliance with the Guidelines, Sheppard maintained its time records on a "Project Billing Category" basis. Exhibit C provides a summary of the Project Billing Categories, the total professional hours spent in each category and the total fees requested for each category.

### B.   Use Of Project Billing Categories

A narrative discussion of the work Sheppard performed in each Project Billing Category is set forth in the paragraphs that follow. It is inevitable that not all matters fit precisely into one category, or that some items fit appropriately into more than one category. Additionally, as in the case of telephone conferences or meetings where more than one subject is discussed, a time entry dealing with more than one subject must occasionally be placed in only one category. Thus, while Sheppard has diligently attempted to segregate its time into the appropriate category, there may be some overlap between and among categories. In some instances where an attorney assigns a project to another attorney, or discusses the status of a project with another attorney, only one of the attorneys will bill for that time.

A discussion of the work performed in the Project Billing Categories follows below.

**1. Early Case Administration**

The services rendered under this Project Billing Category are related to the work undertaken by Sheppard early in its employment to conduct its due diligence review and analysis of the case and the main issues involved, the estate's assets, and the Debtors' strategy in the case. Sheppard reviewed and analyzed the Schedules of Assets and Liabilities, the Statement of Financial Affairs, and background documents, met and conferred with the Debtors' counsel and their financial advisor, and followed up with respect to the items on the Committee's the preliminary agenda.

Sheppard spent a total of 16.40 hours and incurred fees totaling $7,470.00 during the Application Period on this Project Billing Category, as summarized on Exhibit B, p. 6.

**2. Committee Matters/Communications**

Sheppard's activities in this category were primarily related to Sheppard's preparation for and participation in multiple Committee calls and conferences to provide updates to the Committee, discuss and resolve outstanding issues, and prepare for the next step in the case. Sheppard kept the Committee apprised on the progress of the Bankruptcy Case, the motions for relief from stay filed with respect to the rental properties, the status of the litigation and the settlements, and the status of the development of and confirmation of the chapter 11 plan. Sheppard responded to inquiries from the Committee regarding these matters and prepared memorandum and summaries as appropriate to keep the Committee informed. Sheppard communicated constantly with the Committee, and always kept the Committee apprised of the matters pending in the case and the suggested next steps.

Sheppard spent a total of 23.30 hours and incurred fees totaling $9,652.50 during the Application Period on this Project Billing Category, as summarized on Exhibit B, p. 5.

**3. Case Administration**

Throughout the Application Period, Sheppard performed general case administrative tasks typically required of committee counsel, including reviewing pleadings filed in the case, communicating and meeting with counsel for the Debtors regarding the progress of the case, updating the Committee and preparing for the next step in the case.

Sheppard spent a total of 16.10 hours and incurred fees totaling $8,361.50 during the Application Period on this Project Billing Category, as summarized on Exhibit B, p. 3.

### 4. Service Lists

Sheppard reviewed the docket and special requests for notice filed in the case and updated its service list.

Sheppard spent a total of 1.30 hours and incurred fees totaling $474.50 during the Application Period on this Project Billing Category, as summarized on Exhibit B, p. 7.

### 5. Claims - Administration

Sheppard reviewed and analyzed the claims filed against the estate and the matters related to addressing the claims, including the motions resolving some of these claims, the Debtors' motion to estimate the guaranty claims, and the claims analysis prepared by the Debtors.

Sheppard spent a total of 9.80 hours and incurred fees totaling $4,407.00 during the Application Period on this Project Billing Category, as summarized on Exhibit B, p. 8.

### 6. Cash Collateral

Sheppard prepared for and attended the hearing on the Debtors' motion for authority for the use of the cash collateral.

Sheppard spent a total of 2.40 hours and incurred fees totaling $1,156.00 during the Application Period on this Project Billing Category, as summarized on Exhibit B, p. 8.

### 7. Plan of Reorganization

The bulk of Sheppard's efforts during the Application Period was devoted to the preparation of a chapter 11 plan that enjoyed the full support of the Committee and provided the unsecured creditors with a concrete chance for recovery on their claims. Much of Sheppard's time was spent negotiating with the Debtors and their counsel, redrafting and revising the main terms of the Plan, and thereafter supporting the confirmation of the Plan.

When the Debtors filed their initial chapter 11 plan on March 24, 2010, that first plan was not acceptable to the Committee as it provided an immediate discharge to the

-8-

Debtors and, in the Committee's view, was overly generous to the Debtors and did not include necessary safeguards for their creditors. Sheppard promptly worked on drafting the key provisions that addressed these issues and which were ultimately incorporated into the final form of the Plan.

In order to accomplish this, Sheppard engaged in extensive negotiations and face-to-face meetings with the Debtors and their professionals over the course of several weeks, made extensive redrafts and revisions to the Plan, and brainstormed and devised terms for the Plan that provided for additional recovery for the unsecured claims from the Debtors' exempt assets and their future income.

As a result of these efforts, the resulting Plan, filed on May 6, 2010, provided for several benefits to the unsecured creditors, including the establishment of a Plan Committee to monitor the implementation of the Plan, the delay of the Debtors' discharge from the claims of the unsecured creditors, access to $175,000 of the Debtors' exempt assets that otherwise would be out of reach, and providing for a potential "pot" for the benefit of the unsecured creditors to be funded over the next five years from the Debtors' post-confirmation earnings that exceed certain thresholds.

Additionally, Sheppard on behalf of the Committee supported the confirmation of the Plan, which involved reviewing and analyzing the Debtors' confirmation brief, the supporting documents and the ballots casted on the Plan, preparing a statement in support of confirmation, and preparing for and attending the confirmation hearing. The Plan was thereafter confirmed at the scheduled confirmation hearing on June 24, 2010.

Sheppard spent a total of 116.20 hours and incurred fees totaling $50,538.50 during the Application Period on this Project Billing Category, as summarized on Exhibit B, p. 15.

**8.     Disclosure Statement**

Sheppard reviewed and analyzed the disclosure statement to the Plan (the "Disclosure Statement") and the adequacy of the information contained in it. As part of this review, Sheppard reviewed and analyzed a variety of reports and information, including the lists of estate assets and the exempt assets, reports regarding the estate's indirect interests in

various real estate developments, and the liquidation analysis prepared in support of the Plan. Sheppard also prepared a statement on behalf of the Committee in support of approving the Disclosure Statement, and prepared for and appeared at the hearing on the Disclosure Statement.

Sheppard spent a total of 19.60 hours and incurred fees totaling $8,657.50 during the Application Period on this Project Billing Category, as summarized on Exhibit B, p. 9.

### 9. Plan Implementation

The services rendered under this Project Billing Category are related to the tasks performed with respect to the implementation of the Plan, including reviewing the notice of the effective date of the Plan and related deadlines and attending to the matters relevant to establishment of the Plan Committee.

Sheppard spent a total of 9.10 hours and incurred fees totaling $4,203.50 during the Application Period on this Project Billing Category, as summarized on Exhibit B, p. 10.

### 10. Employment Benefits/Pensions

The Debtors' Schedules listed several millions of dollars in exempt assets. Sheppard reviewed and analyzed whether the assets were correctly exempt under non-bankruptcy law. Sheppard spent a total of 6.00 hours and incurred fees totaling $4,080.00 during the Application Period on this Project Billing Category, as summarized on Exhibit B, p. 2.

### 11. Relief From Stay Litigation

Several motions for relief from the automatic stay were filed in the Bankruptcy Case, including those by CV Anthony, LLC, a member of the Committee, and the secured lenders with respect to some of the rental properties. As previously disclosed, with respect to the litigation between CV Anthony and the Debtors, the Committee formed a working group with no participation by CV Anthony to analyze that litigation. Sheppard reviewed the motion pleadings, conferred with the Debtors' counsel regarding the relief from stay motions, and apprized the Committee on the progress of the motions.

Sheppard spent a total of 9.10 hours and incurred fees totaling $3,601.50 during the Application Period on this Project Billing Category, as summarized on Exhibit B, p. 16.

### 12. Motion to Approve Compromise of Controversy

During the Bankruptcy Case, the Debtors entered into settlements, including those with CV Anthony, and Wells Fargo Bank and Bank of Marin. Sheppard reviewed and analyzed these settlements and their implications on the estate's assets and the recovery of the unsecured creditors. In addition, Sheppard a statement a no opposition to the settlement with CV Anthony and a statement in support of the settlement with Wells Fargo as the Wells Fargo settlement entailed a waiver of an estimated $36 million deficiency claims against the estate.

Sheppard spent a total of 9.20 hours and incurred fees totaling $4,184.00 during the Application Period on this Project Billing Category, as summarized on Exhibit B, p. 17.

### 13. Professional Compensation (other than Sheppard)

The services rendered under this Project Billing Category are related to the analysis of the ordinary course professional motion and the terms of the their compensation.

Sheppard spent a total of 0.70 hour and incurred fees totaling $353.50 during the Application Period on this Project Billing Category, as summarized on Exhibit B, p. 17.

### 14. Sheppard Employment

Sheppard prepared its application for Court approval of its retention by the Committee and the form of order approving Sheppard's employment. Sheppard also supplemented its employment application initially in response to the request by the United States Trustee and during the course of the case as it learned of new matters and connections to parties in interest.

Sheppard spent a total of 23.30 hours and incurred fees totaling $8,990.50 during the Application Period on this Project Billing Category, as summarized on Exhibit B, p. 18.

## VIII.
## EXPENSE REIMBURSEMENT

Sheppard seeks expense reimbursement for costs totaling $800.17. A summary of expenses advanced by Sheppard and a detailed statement of costs advanced by Sheppard are set forth on the attached Exhibit B, at page 20. These costs include overnight mail,

postage, photocopying, computerized legal research, facsimile and long distance telephone calls, filing fees and transportation. Such expenses are billed to the debtors' estate at the actual cost to Sheppard.

Although Sheppard charges some of its non-bankruptcy clients for secretarial overtime, word processing costs and incoming faxes, Sheppard has not sought recovery of those costs from the debtors' estate and those items have been not been included on Exhibit B.

Sheppard uses the services of Xerox Corporation ("Xerox") for its in-house photocopy services. Sheppard has billed the estate at a rate of 20¢ per page for copies, which represents a discount to the cost that Sheppard charges its non-bankruptcy clients. Sheppard sends photocopying and mailing projects to outside vendors when such vendors are capable of providing service more efficiently and economically than Sheppard's in-house service providers. Sheppard bills the estate for such projects at the actual cost to Sheppard, and at a cost that is always at or below 20¢ per page.

## IX.

## COMPLIANCE WITH GUIDELINES

Sheppard has prepared this Application to comply with the Guidelines as authorized under Local Bankruptcy Rule 9029-1 as set forth above. Sheppard has not entered into any agreement, written or oral, express or implied, with any other party-in-interest or any attorney for any party-in-interest in the Bankruptcy Case for the purpose of fixing the amount of an fee or compensation to be paid from the assets of the Debtors' estate.

All compensation and expense reimbursement requested by Sheppard have been billed at rates in accordance with practices no less favorable than those customarily employed by Sheppard and generally accepted by Sheppard's clients.

Pursuant to the Guidelines, Sheppard will contemporaneously serve a true and correct copy of the Application on the Committee, along with a transmittal correspondence addressed to the Committee Chair, John Barella, inviting discussion questions, comments, concerns or objections to the Application. A true and correct copy of the correspondence

dated August 19, 2010, from Sheppard to the Chairman of the Committee, is attached as Exhibit D to this Application.

## X.
## CONCLUSION

WHEREFORE, Sheppard prays that the Court enter an order:

(1) Granting final allowance and approval of aggregate compensation sought in the Application totaling $116,930.67, consisting of $116,130.50 in professional fees and of $800.17 in expenses, which amounts were incurred in the Application Period;

(2) Granting final allowance and approval of $6,500 (or such other amount as may be supplemented at the hearing on this Application) in fees estimated to be incurred in connection with this Application.

(3) Authorizing and directing the Debtors to make immediate payment to Sheppard of all allowed amounts requested in this Application and approved by the Court; and

(4) Granting such other and further relief as the Court may deem just and proper.

Dated: August 19, 2010

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By  */s/ Ori Katz*
ORI KATZ

Attorneys for the for Official Committee of Unsecured Creditors